### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CYRUS II, L.P., | § | **(Chapter 7)** |
| BAHAR DEVELOPMENT, INC., | § | **Jointly Administered** |
| and MONDONA RAFIZADEH, | § | **CASE NO. 05-39857-H1-7** |
| | § | |
| Debtors. | § | |
| | § | |
| | § | |
| RODNEY D. TOW, AS THE CHAPTER | § | |
| TRUSTEE FOR CYRUS II, L.P., *ET AL* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | **ADVERSARY NO. 07-03301** |
| | § | |
| SCHUMANN RAFIZADEH, *ET AL* | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFFS' OBJECTION TO SCHUMANN
### RAFIZADEH'S MOTION FOR SEPARATE TRIAL
#### (Related to docket no. 457)

Plaintiffs, Rodney D. Tow, Chapter 7 Trustee of the above-referenced, jointly-administered bankruptcy cases (the "Trustee") and ORIX Capital Markets, LLC, as the Special Servicer for the Trust for the Certificateholders of the Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-Through Certificates, Series 1999-C, on behalf of the Trust and in the name of Wells Fargo Bank, N.A., National Association, as Trustee for the Trust, creditor ("ORIX") (collectively, the "Plaintiffs") file this Objection to Schumann Rafizadeh's Motion for Separate Trial on Discovery Rule and Equitable Tolling Issues (Document No. 457, the "Bifurcation Motion"). In support of this Objection to the Bifurcation Motion, the Plaintiffs would respectfully show the Court as follows:

# I.
## SUMMARY

1.　　Defendant Rafizadeh's Bifurcation Motion asks the Court to conduct a separate trial on his limitations defense, suggesting that it will be both dispositive of all affirmative claims and easily (cost-effectively) tried.  Bifurcation Motion at ¶ 23.  Neither assumption is correct.  On the contrary, the Bifurcation Motion asks this Court to disregard (1) the fact that the Trustee, in addition to ORIX, has other unsecured creditors of the Estates with claims on whose behalf he can invoke the discovery rule; (2) the substantial overlap of evidence relating both to defenses to claims by the defendants and the affirmative claims asserted by the Plaintiffs which negates any benefit from separate trials; and (3) that even if Mr. Rafizadeh succeeded on his limitations defense, a speculative assertion that the Plaintiffs vigorously contest, the Plaintiffs' other claims would still need to be tried, including breach of fiduciary duty, participatory liability and equitable claims.  As such, Mr. Rafizadeh has failed to establish any grounds for bifurcation under the standards set forth in Federal Rule of Civil Procedure 42(b).

# II.
## PROCEDURAL BACKGROUND

2.　　On June 25, 2005, Cyrus II, L.P. ("Cyrus II"), Bahar Development, Inc. ("BDI") and Mondona Rafizadeh ("MR") (collectively, the "Debtors") filed their voluntary chapter 7 petitions.

3.　　On June 21, 2007, Plaintiffs filed this adversary proceeding.  The Plaintiffs filed their Supplemental Complaint on October 29, 2007 and then filed their Second Supplemental Complaint on April 11, 2008.

4.　　On January 16, 2008, Schumann Rafizadeh filed the Bifurcation Motion.

5.      On April 4, 2008, the Court lifted its January 31, 2008 abatement order, and the parties agreed that the Plaintiffs' Objection to the Bifurcation Motion would be filed by April 24, 2008.

## III.
### ARGUMENT

**A.    The Bifurcation Motion is Based on the Faulty Premise That the Trustee Can Only Step Into the Shoes of ORIX**

6.      In the Complaint, the Plaintiffs assert, among other causes of action, the right to recover property fraudulently transferred from the Debtors under 11 U.S.C. § 544. In this regard, the Plaintiffs seek to avoid several transfers under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE § 24.001, *et seq.* and parallel provisions of the Ohio Uniform Fraudulent Transfer Act, Georgia Uniform Fraudulent Transfer Act, and Nevada Uniform Fraudulent Transfer Act (collectively, "State Fraud Statutes"). In particular, the Plaintiffs assert this cause of action under section 24.005(a)(1) of TUFTA (and the parallel provisions under the other State Fraud Statutes):

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; . . .

7.      To avail himself of the avoidance powers under 11 U.S.C. § 544(b), a trustee must show the existence of an actual unsecured creditor holding an allowable unsecured claim who could avoid the transfer in question under a state statute, such as TUFTA. *Stalnaker v. DLC, Ltd.*, 819, 823 (8th Cir. 2004); *Smith v. Am. Founders Fin. Corp.*, 365 B.R. 647, 659 (S.D. Tex. 2007); *In re Panama Williams, Inc.*, 211 B.R. 868, 871 (Bankr. S.D. Tex. 1997); *Cf. In re Leonard*, 125 F.3d 543, 544-545 (7th Cir. 1997). Further, the trustee's right to avoid a transfer is

derivative of the rights of an actual unsecured creditor, which makes the trustee subject to any defenses that could be asserted against the unsecured creditor into whose shoes the trustee steps. *Stalnaker v. DLC, Ltd.*, 295 B.R. 593, 602 (8th Cir. B.A.P. 2003) (citing *Belfance v. Bushey (In re Bushey)*, 210 B.R. 95, 100 (6th Cir. BAP 1997)); *Smith*, 365 B.R. at 659.

8.      Nevertheless, the Trustee need <u>*only*</u> demonstrate that "at least one actual unsecured creditor" exists who has a viable cause of action. *See e.g., Stalnaker*, 295 B.R. at 602. Once he has made this showing, the trustee may "avoid the entire transfer (even if the creditor upon whom the trustee relies could avoid it only in part)." *Id.* (citing *Moore v. Bay*, 284 U.S. 4, 52 S. Ct. 3, 76 L.Ed. 133 (1931)); *see also Abramson v. Boedeker*, 370 F.2d 741, 748 n. 16 (5th Cir. 1967) (stating that "**[i]f the transfer is avoidable at all by any creditor, it is avoidable in full for all creditors** regardless of the dollar amount of the prevailing claim.")(emphasis added); *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 809-810 (9th Cir. 1994) (stating that **a "transaction that is voidable by a single, actual unsecured creditor may be avoided in its entity, regardless of the size of the creditor's claim**" (internal citations omitted) (emphasis added)).

9.      Here, the Trustee has identified at least two unsecured creditors (ORIX and the Louisiana Department of Environmental Quality ("LDEQ")) who could avoid the transfers in question. *See, e.g.*, Original Complaint at ¶¶ 61-64 (docket no. 1); Plaintiff's Opposition to Motions to Dismiss Filed by Defendants United Rafizadeh Family, LLP, Azita Management, Inc. and Mondona Rafizadeh at ¶ 62 (docket no. 170). LDEQ duly filed its proof of claim on February 6, 2006. ORIX filed its proof of claim on January 4, 2006 and amended its claim on March 27, 2006.

10.    The Plaintiffs seek to avoid the MR/URF transfers[1] and the BDI/URF transfers[2] which, all parties appear to agree, occurred in 2000. *See* Original Complaint at ¶¶ 56, 100; Bifurcation Motion at ¶ 13.   Pursuant to Section 24.010(a)(1) of TUFTA, the statute of limitations governing avoidance of these transfers is the *later of* four years after the transfer or one year after the transfer "was or could reasonably have been discovered by the claimant." TUFTA § 24.010(a) (1).   The applicable limitations period here, therefore, is one year after the fraudulent transfers were or could reasonably have been discovered by the claimant.   Thus, as the statute itself makes clear, the "discovery rule" is not a rebuttal to four-year limitations period but is an alternative way to calculate the limitations period when the claim is brought more than four years after the transfer.

11.    Even when a plaintiff pursues the avoidance of a fraudulent transfer that occurred more than four years prior to the commencement of the case, limitations is an affirmative defense that must be specifically pleaded and proved by the defendant. *See, e.g., Walker v. Anderson*, 232 S.W.3d 899, 909 (Tex. App. – Dallas 2007, *no. pet.*); *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.-Houston [1st Dist.] 1984, *writ ref'd n.r.e.*).   In other words, a fraudulent transfer plaintiff does not affirmatively have to plead and prove that its action to set aside a fraudulent transfer was commenced within one year after the transfer was or could reasonably have been discovered by the claimant. *Connell Chevrolet, Inc. v. Carter*, 1994 WL 525902 (Tex. App.-Houston [1st Dist.] 1994, *no writ*).

12.    In the Bifurcation Motion, Mr. Rafizadeh focuses solely and exclusively on one creditor — ORIX — and challenges ORIX's ability as creditor to invoke the discovery rule.   In

---

[1]    As defined in the Original Complaint, the MR/URF transfers refers to the execution of a series of Acts of Contribution that transferred MR's limited partnership interest in each Original Partnership to United Rafizadeh Family, LLP ("URF").
[2]    As defined in the Original Complaint, the BDI/URF transfers refer to the transfer by BDI of all its ownership interests in the Original Partnerships (except Cyrus II) to URF.

particular, he argues that ORIX knew or should have known about the fraudulent transfers that took place in 2000 and that, as a consequence of its presumed knowledge, ORIX, and therefore the Trustee, is barred from invoking the discovery rule to pursue the Estates' causes of action arising out of the fraudulent transfers. Bifurcation Motion at ¶¶ 8-13. The limitation arguments made in defense by Mr. Rafizadeh are not new; however, and in fact, the Plaintiffs replied and thoroughly addressed these same arguments as applied to ORIX in the *Plaintiffs' Opposition to Motions to Dismiss Filed by Defendants United Rafizadeh Family, LLP, Azita Management, Inc. and Mondona Rafizadeh* (docket no. 170).

13.     Even if the Court assumes *arguendo* that ORIX cannot invoke the discovery rule, Mr. Rafizadeh still cannot eliminate the application of the discovery rule to the Estate's causes of action under section 24.005(a)(1) of TUFTA (and the parallel provisions under the other State Fraud Statutes) because he has failed to account for the other unsecured creditors of the Estates with claims on whose behalf the Trustee can invoke the discovery rule. By way of example only, the settlement agreement attached to the LDEQ proof of claim reflects that the LDEQ issued penalty assessments against the Debtors as early as April 2, 1997, well before the MR/URF and BDI/URF transfers. Mr. Rafizadeh never asserts that the Debtors put the LDEQ on notice of BDI's intention to "restructure."

14.     In short, even in the unlikely event that Mr. Rafizadeh could somehow defeat the reliance by ORIX (and the Trustee) on the application of the discovery rule, he cannot avoid the legal effect of LDEQ's status as an unsecured creditor who was unaware of the Debtors' allegedly fraudulent transfers. With these facts as a backdrop, a separate trial on the limitations defense as proposed in the Bifurcation Motion will not be case dispositive and not be cost efficient for the parties.

**B.**     **The Requested Bifurcation is Improper Because of the Evidentiary Overlap and Lack of Any Benefit**

15.     Pursuant to Federal Rule of Civil Procedure 42(b), made applicable by Federal Rule of Bankruptcy Procedure 7042, a court may order a separate trial if it would be more convenient; it would avoid prejudice; or it would expedite and economize the litigation. FED. R. CIV. P. 42(b); FED. R. BANKR. P. 7042. A separate trial on the issue of limitations, however, would not accomplish these goals in this case. A separate trial would not be more convenient on the parties or the Court; it would not expedite and economize the trial, in fact, it would substantially increase the work required by the parties and their counsel, as well as the expense associated with conducting two trials involving similar claims, witnesses and evidence.

16.     A request for bifurcation under Federal Rule of Civil Procedure 42 should only be granted in limited circumstances. The Advisory Committee Notes to Rule 42 clearly state, "separation of issues for trial is not to be routinely ordered." Federal courts have followed this admonition, noting that "[b]ifurcation is thus the *exception*, not the rule, and the movant must justify bifurcation on the basis of the *substantial* benefits that it can be expected to produce." *Svege v. Mercedes-Benz Credit Corp*, 329 F. Supp. 2d 283, 284 (D. Conn. 2004) (emphasis added); *see also Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1323–24 (5th Cir. 1976) ("[S]eparation of issues is not the usual course that should be followed . . . and the issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice."). Here, Mr. Rafizadeh cannot point to any **substantial benefits** that would result from the proposed bifurcation. Therefore, the Bifurcation Motion should be denied.

*i.*     *Any Trial on the Limitations Defense Would Largely Duplicate Evidence Presented at the Trial on the Plaintiffs' Liability Claims*

17.     While the ability to bifurcate is within a court's discretion, it is rarely granted when the separate trial of an issue would involve the presentation of substantially the same proof

as the trial of other issues. 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2388 (2d ed. 1995). For example, in *In re Koger*, a bankruptcy court considered whether to bifurcate a limitations defense from the accompanying liability issue. 261 B.R. 528, 530 (Bankr. M.D. Fla. 2001). The court declined to grant the request for bifurcation because there would be "substantial evidentiary overlap" between the trial of the limitations defense and trial of liability issues and because bifurcation would not simplify the underlying case. *Id.* at 534. The court noted, "[g]enerally, if an evidentiary overlap exists, then any overlapping issues should not be bifurcated" and that "judicial economy is not served if the same witnesses have to be called at both trials." *Id.* at 532 (internal quotations omitted).

18.     As in *Koger*, the evidence applicable to the trial of the limitations defense significantly overlaps with the evidence that would be presented at the trial of the underlying liability claims. Mr. Rafizadeh apparently assumes that if he prevails at a separate trial on the limitations issue regarding TUFTA and the State Fraud Statutes, the parties would have no further need to present the same or similar testimony and exhibits at a trial on the remaining liability claims. His assumption is wrong.

19.     The testimony to be offered at a trial on the limitations defense would necessarily be duplicated in a later trial on the Plaintiffs' claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, single business enterprise and alter ego claims. Virtually all issues raised and evidence presented at any limitations trial would also be raised and presented at the inevitable (and subsequent) trial on the merits.

20.     Testimony at both trials would need to be elicited from several of the same fact witnesses, including, but not limited to, Mondona Rafizadeh, Schumann Rafizadeh, Richard Mushinski, and John Dinan.

21.     In the "limitations trial," all of the following fact witnesses would be expected to testify at the evidentiary hearing:

(a)     Mondona Rafizadeh would be required to testify, individually and in her capacity as an owner/officer of the BDI and Cyrus II, regarding the purpose of the BDI "restructuring," the communications she had with ORIX, the books and records of BDI, Cyrus II, and URF, ownership structure of URF, alleged debt owed by her to URF, and condition of BDI at the time the restructuring took place.

(b)     Schumann Rafizadeh would be required to testify, individually and in his capacity as an officer of BDI and managing member of Rafizadeh, LLC, regarding the purpose of the BDI "restructuring," involvement he had with ORIX, the books and records of BDI, Cyrus II, and URF, ownership structure of URF, alleged debt owed by Mondona Rafizadeh to URF, and condition of BDI at the time the restructuring took place.

(c)     Richard Mushinski, the accountant for several Rafizadeh entities, would be required to testify regarding the Debtors' books and records, how the internal restructuring of BDI was accomplished and recorded by the various parties in their books and records.

(d)     John Dinan and/or other ORIX representatives would be required to testify regarding ORIX's communications with BDI, including attempts by ORIX to obtain additional information about the proposed restructuring, and knowledge it had or acquired, or was not able to acquire, regarding the fraudulent nature of transfers to URF.

22.     It is likely that other witnesses would be called to testify regarding the issues discussed above, including William Starr, Saul Solomon, representatives of ORIX, Cyrus II, URF, and BDI.  In short, any trial on the limitations issue would be a multi-day event, which would need to be repeated at any later trial, thereby eliminating any argument that the overall litigation would be expedited or more economical.  In fact, bifurcation would result in the opposite — the litigation would be delayed and far more costly.

     *ii.     Even if Defendant Rafizadeh Prevailed at Trial on His Limitations Defense, It Would Not Resolve or Simplify the Trial on Liability Issues*

23.     In addition to ignoring the evidentiary overlap of a trial on limitations and a separate trial on liability, the Bifurcation Motion erroneously infers that a defense verdict on

limitations would dispose of all of the Plaintiffs' affirmative claims and other complex issues in the case. That premise is not valid.

24.     As the Court is well aware, one of the chief factors in determining whether to order separate trials of issues is whether bifurcation might result in a more efficient resolution of the overall dispute. *See Koger* at 531-32. For example, lawsuits involving complex liability and damages issues are often bifurcated because a "no liability" finding would avoid an otherwise costly trial on damages. If granting separate trials in a case would not conserve judicial resources, however, there is no reason to bifurcate the trial of separate claims.

25.     The Bifurcation Motion construes *Braun v. Berenson* as standing for the proposition that separate trials on limitations will always conserve judicial resources. The holding in *Braun,* however, is not nearly as broad as Mr. Rafizadeh argues. Rather, the court held that under the unique facts of that case and considering that a previous trial on all issues had resulted in a mistrial, the court did not abuse its discretion in ordering separate trials when doing so resulted in the second trial being limited to a single issue submitted to the jury in a single question. *See Braun v. Berenson*, 432 F.2d 538, 541–42, 543 (5th Cir. 1970).

26.     In *Braun*, a defense verdict on limitations would have barred the second trial and a verdict for the plaintiff led to trial of a single issue. The distinction here is that a sizable majority of the Plaintiffs' claims would remain to be tried even if Mr. Rafizadeh obtained a defense judgment on limitations. Mr. Rafizadeh's contention that a limitations verdict in his favor would bar all fraudulent transfer claims is simply not true. Bifurcation Motion at ¶ 10.

27.     Even assuming that Mr. Rafizadeh could succeed on limitations, seventeen (17) of the Plaintiffs' twenty-one (21) claims, including three for fraudulent transfer, would survive. Specifically, the Plaintiffs would still have claims against the Defendants for breach of fiduciary

duty, participatory liability, and equitable claims and relief. *See* Original Complaint at ¶¶ 259-64, 280–350, 330–68; Supplemental Complaint at ¶¶ 512–58 (docket no. 290).

28.     Mr. Rafizadeh disregards and fails to mention the Trustee's remaining claims when making the argument to secure dismissal of the fraudulent transfer allegations. *See* Bifurcation Motion at ¶ 10. Additionally, the Trustee's fraudulent transfer claims would remain based on his status as a creditor of Defendant URF, and those claims are not subject to any of the limitations periods set forth in the Bifurcation Motion. *See* Original Complaint at ¶¶ 303–39.

29.     As the Fifth Circuit has noted, "There is an important limitation on ordering a separate trial of issues under Rule 42(b): the issue to be tried must be so distinct and separate from others that a trial of it alone may be had without injustice." *See McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 n. 19 (5th Cir. 1993). Where, as here, the first trial on limitations would not be dispositive and would be followed by an even more costly trial on liability issues, the first trial would not bar or streamline the need for a subsequent trial. Rather, granting the Bifurcation Motion would only serve to increase the costs of litigation and require significant amounts of the Court's time.

## IV.
### CONCLUSION

The primary contention in the Bifurcation Motion, that separate trials on the limitations defense would decrease the cost and complexity of this case, does not withstand scrutiny. Indeed, it is far more likely that the requested bifurcation, and the addition of a second trial, would actually have the opposite effect. A separate trial on limitations would not only significantly increase the costs incurred by the parties; it would involve the presentation of duplicative evidence; it would fail to resolve the underlying dispute and all affirmative claims; and it would substantially delay the time for the resolution of the Plaintiffs' claims.

Simply stated, Mr. Rafizadeh's Bifurcation Motion would not provide any benefits to the parties or judicial economies for the Court, much less substantial benefits.   The Plaintiffs therefore request the Court to deny the Bifurcation Motion and allow this case to proceed to a single trial in accordance with Federal Rule 42.  The Plaintiffs also respectfully request the Court to grant them all such and other further relief to which they are justly entitled.

DATED April 24, 2008.

Respectfully submitted,

DIAMOND McCARTHY LLP


By: /s/ Ladd S. Hirsch
Gary Cruciani
State Bar No. 05177300
Leonard A. Hirsch
State Bar No. 09717300
1201 Elm Street, Suite 3400
Dallas, Texas  75270
Telephone:  (214) 389-5300
Facsimile:  (214) 389-5399

- and -

Kyung S. Lee
Texas Bar No. 12128400
Jason M. Rudd
Texas Bar No. 24028786
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas  77010
Telephone:  (713) 333-5100
Facsimile:  (713) 333-5195

COUNSEL FOR RODNEY TOW, CHAPTER 7
TRUSTEE FOR THE ESTATES OF CYRUS II,
LP, BAHAR DEVELOPMENT, INC. AND
MONDONA RAFIZADEH

MUNSCH HARDT KOPF & HARR, P.C.

By: /s/ Randall A. Rios
Randall A. Rios
State Bar No. 16935865
Lynn Chuang Kramer
State Bar No. 24036930
Bank of America Center
700 Louisiana, 46th Floor
Houston, Texas 77002
Telephone: (713) 222-1470

-and-

David C. Mattka
State Bar No. 13231500
Richard C. King
State Bar No. 24007491
One American Center
600 Congress Avenue, Suite 2900
Austin, Texas 78701-3057
Telephone: (512) 391-6100
Fax: (512) 391-6149

-and-

Nan Roberts Eitel
Louisiana Bar No. 19910
Jones Walker Waechter Poitevent Carrère &
Denègre, LLP
The Watergate
2600 Virginia Avenue, NW, Suite 1113
Washington, DC 20037
Telephone: (202) 944-1105
Facsimile: (202) 944-1109

R. Patrick Vance
Louisiana Bar No. 13008
S.D. Texas Bar No. 30331
Jones Walker Waechter Poitevent Carrère &
Denègre, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-8000
Facsimile: (504) 589-8302

COUNSEL FOR ORIX CAPITAL MARKETS,
LLC, AS THE SPECIAL SERVICER FOR THE
TRUST FOR CERTIFICATEHOLDERS OF THE
MERRILL LYNCH MORTGAGE INVESTORS,
INC. MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 1999-C, ON BEHALF
OF THE TRUST AND IN THE NAME OF WELLS
FARGO BANK, NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE TRUST

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Plaintiffs' Objection to Defendant Schumann Rafizadeh's Motion for Separate Trial to the parties on the attached service list either via electronic means as listed on the ECF noticing system or via United States first class mail, postage prepaid, on April 24, 2008.

*/s/ Lynn Chuang Kramer*

MHDocs 1606055_6 6167 43

## Service List
Adversary Proceeding 07-03301

Rodney Tow
Tow & Koenig, PLLC
26219 Oak Ridge Drive
The Woodlands, Texas  77380
**Chapter 7 Trustee for the Estates of Cyrus II, LP, Bahar Development, Inc. and Mondona Rafizadeh**

Gary Cruciani
Leonard A. Hirsh
Diamond McCarthy Taylor Finley & Lee LLP
1201 Elm Street, Suite 3400
Dallas, Texas  75270
**Counsel for Rodney Tow, Chapter 7 Trustee for the Estates of Cyrus II, LP, Bahar Development, Inc. and Mondona Rafizadeh**

Kyung S. Lee
Jason M. Rudd
Clifford H. Walston
Diamond McCarthy Taylor Finley & Lee LLP
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas  77010
**Counsel for Rodney Tow, Chapter 7 Trustee for the Estates of Cyrus II, LP, Bahar Development, Inc. and Mondona Rafizadeh**

Matthew J. Schroeder
Jeremy Williams
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, Texas  75201
**Counsel for UBS Real Estate Securities, Inc.**
Stephen H. Kupperman
Barrasso Usdin Kupperman Freeman & Sarver
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
**Counsel for Rodrick L. Hughes and Main & Marietta, LP**

Andrew R. Harvin
Peter B. Wells
Doyle, Restrepo, Harvin & Robbins, LLP
JPMorgan Chase Tower
600 Travis Street, Suite 4700
Houston, Texas  77002
**Counsel for Rodrick L. Hughes and Main & Marietta, LP**

Jon P. Bohn
Bohn & Ducloux
806 Main Street, Suite 1411
Houston, Texas  77002
**Counsel for Super Future Equities, Inc.**

Jeffrey Wayne Glass
Attorney at Law
2401 Fountainview, Suite 1000
Houston, Texas  77057
**Counsel for Azita Management, Inc. and Azita Berglund, Individually**

Barnet B. Skelton, Jr.
Barnet B. Skelton, Jr., PC
1111 Bagby Street, Suite 4700
Houston, Texas 77002
**Substituted Counsel for Universal Sourcing, LLC**
Edward L. Rothberg
Hugh M. Ray, III
Weycer Kaplan Pulaski and Zuber PC
1400 Summit Tower
11 Greenway Plaza
Houston, Texas  77046
**Co-Counsel for Schumann Rafizadeh**

Matthew Scott Okin
Okin & Adams LLP
1113 Vine St., Suite 201
Houston, Texas  77002
**Local Counsel for KeyCorp Real Estate
Capital Markets, Inc.**

Robert J. E. Edwards
Amy E. Hatch
David D. Ferguson
Polsinelli Shalton Flanigan Suelthaus PC
700 West 47th Street, Suite 1000
Kansas City, Missouri  64112
**Counsel for KeyCorp Real Estate Capital
Markets, Inc.**

Hamid Vaezi, Director
Oneworld Future Pty Ltd ACN 120 742 949
707 Marion Rd
Ascot Park SA 5043
AUSTRALIA
**Defendant**

John F. Higgins, IV
Thomas Andrew Woolley, III
Porter & Hedges LLP
1000 Main St, 36th Floor
Houston, Texas 77002-6336
**Counsel for Schumann Rafizadeh, Flash
Vos, Inc., United Rafizadeh Family, L.L.P.,
Rafizadeh LLC, MBA Services, Inc.,
HOOBI, LP, HOOBIGP, LLC, HOAPT,
LP, HOAPTGP, LLC, COOB, LP,
COOBGP, LLC, ATOB, LP, ATOBGP,
LLC, KEYLD, LP, HEYLDGP, LLC,
KEYUT, LP, KEYUTGP, LLC and
KEOBGP, LLC**

Wellspring Sourcing Co., Ltd.
Unit D, 10/F China Overseas Building
139 Hennessy Road
Wanchai, HONG KONG
**Defendant**

MHDocs 1605022_1 6167 43