

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/12/2008

| | | |
|---|---|---|
| **IN RE:** | § | |
| **CYRUS II PARTNERSHIP,** *et al* | § | **CASE NO: 05-39857** |
| **Debtor(s)** | § | |
| | § | **CHAPTER  7** |
| | § | |
| **RODNEY D TOW,** *et al* | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 07-3301** |
| | § | |
| **SCHUMANN RAFIZADEH,** *et al* | § | |
| **Defendant(s)** | § | |

## MEMORANDUM OPINION ON WELLSPRING SOURCING CO., LIMITED'S MOTION TO DISMISS (relates to docket no's 538)

For the reasons set forth below, the Court denies Wellspring Sourcing Co., Limited's Motion to Dismiss.  This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

### *Background*

On April 24, 2008, Wellspring Sourcing Co., Limited ("Wellspring") filed a motion to dismiss seeking dismissal pursuant to Federal Rule of Civil Procedure 12(b)(4) and (5) for insufficiency of process and insufficiency of service of process.

Plaintiffs purported to serve Wellspring four ways: (1) personal service at Wellspring's registered offices in Hong Kong by a private process server on October 18, 2007; (2) personal service at Wellspring's registered offices in Hong Kong by private process server on June 6, 2008; (3) mail service at Wellspring's registered offices in Hong Kong by mail (mailed from Hong Kong) on June 6, 2008; and (4) personal service on Wellspring's majority shareholder and

director, Vafa Motlagh, by private process server via hand delivery on May 29, 2008 in Houston, Texas.

A hearing was held on the sufficiency of service on June 13, 2008.  Because Defendants were still within the deadline to file Rule 12 motions as to the May and June 2008 service, the hearing was limited to the sufficiency of the October 18, 2007 service.[1]  Wellspring argued that process and service of process were insufficient because (1) process was not served in accordance with Federal Rule of Civil Procedure 4(h)(2) and the Hague Convention; and (2) process did not properly name Wellspring as a Defendant.  Determination of Wellspring's motion requires an interpretation of the Federal Rules of Civil Procedure and the Laws of Hong Kong, Special Administrative Region ("Hong Kong").

For purposes of clarity, the Court's analysis is set forth in summary immediately below:

1. Compliance with the Hague Convention was required in this case.

2. Article 19 of the Hague Convention allows for service of foreign documents on a Hong Kong corporation to the extent allowed by Hong Kong law.

3. Order 69 of the Rules of High Court of Hong Kong, providing for "Service of Process From a Country or Place Outside of Hong Kong" is permissive rather than mandatory.

4. Because Order 69 is permissive, Federal Rule of Civil Procedure 4(f)(2)(A) and Article 19 of the Hague Convention permit service as prescribed by Chapter 32, § 356 of the Hong Kong Companies Ordinance.

### *Interpretation of Foreign Law*

In interpreting foreign law, this Court is bound by Federal Rule of Civil Procedure 44.1, made applicable to bankruptcy proceedings under Bankruptcy Rule 9017.  Rule 44.1 provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may

---

[1] Wellspring has now filed an amended motion to dismiss arguing that the May 2008 and June 2008 service were insufficient.  Because the Court holds that service on October 18, 2007 was effective, the Court need not rule on the now moot Amended Motion to Dismiss.

> consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

FED. R. CIV. P. 44.1.  The advisory committee note to Rule 44.1 leaves no question as to the scope of a court's examination of foreign law under this Rule.  The note states:

> In further recognition of the peculiar nature of the issue of foreign law, the new rule provides that in determining this law the court is not limited by material presented by the parties; it may engage in its own research and consider any relevant material thus found.

FED. R. CIV. P. 44.1 advisory committee's note.  Judge Lake of this district recognized that "[a]lthough expert testimony is the most common way to determine foreign law, it is no longer 'an invariable necessity in establishing foreign law, and indeed, federal judges may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities.'"  *In re Arbitration Between: Trans Chem. Ltd., and China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 275 (S.D. Tex. 1997) (quoting *Curtis v. Beatrice Foods Co.,* 481 F. Supp. 1275, 1285 (S.D.N.Y.), *aff'd mem.,* 633 F.2d 203 (2d Cir.1980)).  "In making its determination of foreign law the court may rely on foreign case law decisions, treatises, and learned articles, even if they are not generally admissible under the Federal Rules of Evidence."  *Id.* at 275-76 (citing *Republic of Turkey v. OKS Partners,* 146 F.R.D. 24, 27 (D. Mass. 1993)).  The Court, therefore, has wide latitude in determining foreign law.

### Sufficiency of Service of Process

Wellspring is a foreign organization chartered under the laws of Hong Kong. Federal Rules of Civil Procedure 4(h) and 4(f), incorporated into bankruptcy proceedings pursuant to Bankruptcy Rule 7004, govern service on a foreign corporation.

### a. Service on a Foreign Corporation under the Federal Rules of Civil Procedure

Rule 4(h) provides that service on a foreign corporation may be effected "in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph (2)(C)(i) thereof." FED. R. CIV. P. 4(h)(2).  Rule 4(f) provides that unless federal law provides otherwise, an individual may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>> (C) unless prohibited by the foreign country's law, by:
>>> (ii) [2] using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

FED. R. CIV. P. 4(f).  All parties agree that service through the Hague Convention was required in this case.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988).  Wellspring argues that the process for service under the Hague Convention, on a Hong Kong company, is as follows:

> Each signatory to the Hague Convention must designate a Central Authority to receive requests for service from other countries.
>
> The Central Authority designated for the Peoples Republic of China is The Ministry of Justice of the Peoples Republic of China, Bureau of International Judicial Assistance.  Under Article 18 of the Hague Convention, the Peoples Republic of China designated the Chief Secretary for Administration of Hong Kong S.A.R. as the "other authority" for Hong Kong, S.A.R.

---

[2] Rule 4(f)(2)(C)(i) is excepted pursuant to Rule 4(h)(2).

Wellspring Mo. to Dismiss (docket no. 538) at ¶ 24 – 25 (footnotes and citations omitted). Because Plaintiffs have not produced evidence of service of process on the Central Authorities of the Peoples Republic of China or Hong Kong Special, S.A.R., Wellspring asserts service is insufficient.  Further, Wellspring asserts that because Hong Kong is a signatory to the Hague Convention, Rule(f)(2) is inapplicable because it only applies if there is "no internationally agreed means."

Plaintiffs counter that the Hague Convention allows parties to effect service in accordance with the internal laws of Hong Kong and that Rule (f)(2)(A) is applicable because of the second clause of Rule (f)(2)(A).  The second clause provides that even if there is an internationally agreed means of service (i.e. the Hague Convention), (f)(2) applies "if an international agreement allows but does not specify other means" of service.  FED. R. CIV. P. 4(f)(2).  Plaintiffs assert Article 19 of the Hague Convention allows "other means" to effect service, including through the internal laws of Hong Kong.

The second clause of Rule (f)(2) is disjunctive from the first and is, therefore, applicable. Accordingly, the Court must examine the "other means" of service through the Hague Convention.

### b. Means of Service through the Hague Convention:

The creation and requirements of a Central Authority for effectuating service of process are set forth in Article 2, 3 and 5 of the Hague Convention.  These articles provide:

**Article 2**
Each contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States and to proceed in conformity with the provisions of articles 3 to 6.

Each State shall organise the Central Authority in conformity with its own law.

**Article 3**
The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality.

The document to be served or a copy thereof shall be annexed to the request. The request and the document shall both be furnished in duplicate.

**Article 5**
The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency …

Service Abroad of Judicial and Extrajudicial Documents Convention done at The Hague November 15, 1965, art. 2-3, 5, *entered into force* Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6638.  The next sequentially numbered articles provide for the Central Authority's procedure for service and authority, the rights of the States to the Convention, and for issues otherwise irrelevant here.  Article 19 of the Hague Convention then states:

> To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

*Id.* at art. 19.  The Court finds that article 19 provides that service may be effected through the Hague Convention without involving the Central Authority.[3]  *See Paracelsus Healthcare Corp. v. Phillips Med., Nederland, B.V.*, 384 F.3d 492, 496 (8th Cir. 2004) (examining various methods of service through the Hague Convention); *Uppendahl v. Am. Honda Motor Co., Inc.*, 291 F.Supp. 2d 531 (W.D. Ky. 2003) (same); *Schiffer v. Mazda Motor Corp.*, 192 F.R.D. 335 (N.D. Ga. 2000) (same).  Therefore, the question prompted by Article 19 is whether the internal laws of Hong Kong permit a method of service of process relevant to this proceeding other than that through the Central Authority.  The Court finds it does.

---

[3] The "preceding articles" of the Hague Convention also allows for other methods of service not relevant here.

***c. Means of Service from Abroad on a Hong Kong Company under the Laws of Hong Kong***

***(1). Service under the Rules of High Court, Order 69***

Wellspring argues that the applicable rules for service of process on a Hong Kong corporation by a foreign plaintiff are found in the Current English Ordinance and Subsidiary Legislation of Hong Kong, chapter 4A, the Rules of the High Court, Order 69, Rules 3 and 4. Order 69 is titled, "Service of Process From a Country or Place Outside Hong Kong." The Court finds, however, that Order 69 is inapplicable to this proceeding.

Rule 2 of Order 69 provides for the applicability of Order 69. It states:

> This Order applies to the service on a person in Hong Kong of any process in connection with civil or commercial proceedings in a court or tribunal of a country or place outside Hong Kong where the Registrar receives a written request for service-
>> (a) from the Chief Secretary for Administration with a recommendation by him that service should be effected; (L.N. 362 of 1997)
>> (b) where the court or tribunal is in a convention country, from a consular or other authority of that country; or
>> (c) where the court or tribunal is in the Mainland of China, from the judicial authorities of the Mainland of China. (L.N. 39 of 1999)

The Rules of High Court, (1999) Cap. 4A, Order 69, Rule 2. No party has asserted that the "Registrar" received a written request for service from any of the parties listed in (a) - (c). This Rule is inapplicable.[4]  The Court, however, must determine whether Order 69 was intended to be the exclusive means for service of foreign documents on a Hong Kong corporation.

---

[4] Wellspring also argued that Order 69 requires that service of process had to be delivered by a Bailiff. Because Order 69 is inapplicable, the Court rejects this argument. The Court notes that the Hague convention reports on its website that Hong Kong has stated that "a private agent (usually a firm of solicitors) may be appointed directly to effect service. Such service can be effected directly without going through the Government or the judiciary." http://www.hcch.net/index_en.php?act=authorities.details&aid=393.

### (2). Exclusivity of Order 69

Rule 3 of Order 69, specifically, prompts further examination into whether service via the Registrar was intended to be the only means for service on a Hong Kong corporation from a place outside of Hong Kong.  Rule 3, titled "Service of Process" of Order 69 states:

> Subject to paragraphs (3) and (5) *and to any enactment providing for the manner of service of documents on corporate bodies*, the process shall be served by the process server's leaving a copy of the process and a copy of the translation or certificate, as the case may be, with the person to be served.

The Rules of High Court, (1999) Cap. 4A, Order 69, Rule 3(2) (emphasis added).  Rule 3 contemplates and defers to rules specifically tailored to corporate entities.  However, Rule 3 also demonstrates that Order 69 was otherwise intended to apply to corporations.  The question, therefore, is whether service through receipt by request of the Registrar is intended to be the only means to initiate service on a Hong Kong corporation from a place outside of Hong Kong.

As set forth above, there are three circumstances enumerated in Rule 2 of Order 69 when Order 69 service of process rules apply.  First, Order 69 applies when a request is received from the Chief Secretary for Administration.  The Chief Secretary for Administration is the party to whom a service request through the Central Authority is to be directed.  Accordingly, the first group is likely intended to address service through the Hague convention.  *See* http://www.hcch.net[5] (follow Authorities, China (Hong Kong) – Other Authority (Art. 18) & practical information).

Second, Order 69 applies where the court is in a convention country (defined as a country which is a party to the Hague convention)[6] and the Registrar receives request from a "consular or

---

[5] Official website for the Hague Conference on Private International Law.

[6] "'[A] convention country' means a foreign country in relation to which there subsists a civil procedure convention providing for service in that country of process of the Court of First Instance, and includes a country which is a party to the Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters

other authority of that country."  The Hague convention contains provisions as to service through

consular authorities.  It states:

**Article 8**

Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.

Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

**Article 9**
Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose.

Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

Service Abroad of Judicial and Extrajudicial Documents Convention done at The Hague

November 15, 1965, art. 8-9, *entered into force* Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6638.

The Court, therefore, concludes that the second group addresses methods of service specifically

provided for by the Hague Convention.

Third, Order 69 applies when a request is received from the Mainland of China.

Accordingly, the third instance is entirely inapplicable.

Pursuant to the inapplicability of the third circumstance and the first and second

circumstances as referencing specific manners of service of process stated in the Hague

Convention, the Court returns to the question of whether service from abroad is permitted on a

corporation chartered in Hong Kong in a manner other than those specifically provided for in the

Hague Convention.

---

signed at The Hague on 15 November 1965; (25 of 1998 s. 2)."  The Rules of High Court, (1999) Cap. 4A, Order 69, Rule 1.

No other provision has been cited to the Court expanding on the procedures stated in Order 69 for service in Hong Kong from abroad.  However, Order 69 is limited in its application to defining procedures for service through the provisions specifically stated in the Hague Convention (excluding Article 19).

The United States Department of State, Bureau of Consular Affairs explains the proper method to effect service in Hong Kong through the Hague convention.  After explaining service through the Central Authority, the Bureau states:

> **OTHER METHODS [OF SERVICE]:** Hong Kong did not make any reservations with respect to service by international registered mail or service by agent. However, Hong Kong advises that service by the Convention is the preferred method.

http://travel.state.gov/law/info/judicial/judicial_650.html.  It appears, therefore, that Hong Kong by allowing service through mail or by agent permits methods other than those stated in Order 69.  Indeed, Order 69 requires that "]t]he process server for the purposes of [Order 69] shall be the Chief Bailiff."  The Rules of High Court, (1999) Cap. 4A, Order 69, Rule 4.  "Service by Agent" directly affronts such a mandate.  Further, the Hague Conference on Private International Law provides that Hong Kong has represented:

> The practice of our court is that whenever [service of document] requests are received, they will be forwarded to the competent authority for Hong Kong (Chief Secretary for Administration) for processing. Direct service through Government officials is not available in Hong Kong. *However, a private agent (usually a firm of solicitors) may be appointed directly to effect service. Such service can be effected directly without going through the Government or the judiciary.*

http://www.hcch.net (follow Authorities, per State, China (Hong Kong) – Other Authority (Art. 18) & practical information) (emphasis added).[7]  This answer is linked to an explanation of

---

[7] Response was given "by the relevant State authorities or was obtained from the replies to the 2003 Service Convention Questionnaire."  http://www.hcch.net (follow Authorities, per State, China (Hong Kong) – Other Authority (Art. 18) & practical information).

"judicial officers, officials or other competent persons" as set forth in the Hague Convention

Article 10(b).  Article 10(b) states:

> Provided the State of destination does not object, the present Convention shall not
> interfere with –
> . . . .
>  (b) the freedom of judicial officers, officials or other competent persons of the
> State of origin to effect service of judicial documents directly through judicial
> officers, officials or other competent persons of the State of destination.
> . . . .

Service Abroad of Judicial and Extrajudicial Documents Convention done at The Hague

November 15, 1965, art. 10(b), *entered into force* Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No.

6638.  Although a plaintiff may best be assured of service through the processes specifically

stated in the Hague Convention, the Court finds that Hong Kong did not intend service via the

Registrar to be the exclusive method of service of foreign documents on a Hong Kong

Corporation.

### (3). Service under Federal Rule of Civil Procedure 4(f)(2)(A)

Plaintiffs argue they complied with service pursuant to Federal Rule of Civil Procedure

4(f)(2)(A) and the Hong Kong Companies Ordinance § 356.  Rule 4(f)(2)(A) provides service

may be given "in a manner prescribed by the law of the foreign country for service in that

country in an action in any of its courts of general jurisdiction." FED. R. CIV. P. 4(f)(2)(A).

The Ninth Circuit in *Brockmeyer* recognized that Rule 4(f)(2)(A) is frequently used to

"approve personal service carried out in accordance with foreign law."  *Brockmeyer v. May*, 383

F.3d 798, 806 (9th Cir. 2004) (citing *Medical Corp v. McGonigle*, 955 F. Supp. 374, 383-84

(E.D. Pa 1997)); *Cosmetech Int'l., LLC v. Der Kwei Enter. & Co.*, 943 F. Supp. 311 (S.D.N.Y.

1996)).  In *Medical Corp.*, the Court found service on the defendants[8] in the United Kingdom,

---

[8] Defendants included the United Medical and Dental Schools of Guy's and St. Thomas's Hospital and two
individually named parties.

11

although not effected through the Central Authority as stated in the Hague Convention, was proper where the defendants were served "in accordance with United Kingdom law and notions of due process." 955 F. Supp. at 383.  Plaintiff provided the court with "letters from the deputy secretary general of the Hague Conference and an official from the United Kingdom's Foreign and Commonwealth Office confirming that service may be effected in the United Kingdom through use of a solicitor there."  *Id.* at 384.

In *Cosmetech Int'l.*, the Court evaluated service on a Taiwanese corporation.  *Cosmetech Int'l., LLC*, 943 F. Supp. 311.  Taiwan is not a party to the Hague Convention. *Id.*  The Court found that Plaintiff's compliance with the laws of Taiwan in serving the manager of a corporation was sufficient to establish service of process under Rule 4.  *Id.* at 316 (citing Taiwan Code of Civil Procedure Article 131).

This Court finds that Rule 4(f)(2)(A) is applicable to this proceeding to the extent allowed by Article 19 of the Hague Convention.  Because Order 69 is not exclusive, the Court must examine to what extent the internal law of Hong Kong "permits methods of transmission… of documents coming from abroad, for service within its territory."  Service Abroad of Judicial and Extrajudicial Documents Convention done at The Hague November 15, 1965, art. 19, *entered into force* Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6638.  To determine the extent of the application of Rule 4(f)(2)(A), the Court will look to methods for service of process in domestic courts of Hong Kong.[9]

---

[9] As stated by Wright and Miller:

> The general attitude of the federal courts is that the provisions of Federal Rule 4 should be liberally construed in the interest of doing substantial justice and that the propriety of service in each case should turn on its own facts within the limits of the flexibility provided by the rule itself. This is consistent with the modern conception of service of process as primarily a notice-giving device.

*(4). Service under Chapter 32, Section 356 of the Hong Kong Companies Ordinance*

Chapter 32, Section 356 of the Hong Kong Companies Ordinance provides that "[a] document may be served on a company by leaving it at or sending it by post to the registered office of the company." Companies Ordinance, (1997) Cap. 32, § 356 (H.K.). Furthermore, Chapter 32, Section 92 provides that "[a] company shall… have a registered office in Hong Kong to which all communications and notices may be addressed." *Id.* at § 92. Plaintiffs provided an affidavit from Rachel Mary Keane, a solicitor of the High Court of Hong Kong. She asserts Section 356 provides for the method of service on a Hong Kong company. docket no. 666, attachment 1 ¶ 3.

In Wellspring's reply brief, Wellspring acknowledges that "section 356 allows for service of process of documents by leaving it at or sending it by post to the registered office of the company…" docket no. 722 ¶ 9. However, citing Order 69 as the applicable law, Wellspring asserts that Chapter 32, Section 356 does not apply to service of process from a place outside of Hong Kong. *Id.*

As set forth herein, Hong Kong has effectively provided that Order 69 is not a mandatory provision for service coming from a foreign country. Indeed, the "Service of Process" rule of Order 69 defers to "enactment[s] providing for the manner of service of documents on corporate bodies." The Rules of High Court, (1999) Cap. 4A, Order 69, Rule 3(2). Furthermore, Hong Kong has not objected to Article 10(b) of the Hague Convention allowing for service of judicial documents directly through "other competent persons," which Hong Kong has stated includes "a private agent." Service Abroad of Judicial and Extrajudicial Documents Convention done at

---

4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1083 (3d ed. 2002) (footnotes omitted).

The Hague November 15, 1965, art. 19, *entered into force* Feb. 10, 1969, 20 U.S.T. 361, T.I.A.S. No. 6638; http://www.hcch.net/index_en.php?act=authorities.details&aid=393.

The Court finds, therefore, it may consider other methods of service than those stated in Order 69. Accordingly, the Court looks to § 356 of the Companies Ordinance. Section 356 satisfies the service requirements of Federal Rule of Civil Procedure 4(f)(2)(A) as it is allowed by the Hague Convention. Accordingly, the Court finds § 356 of the Hong Kong Companies Ordinance is applicable to this proceeding.

### (c). Compliance with Chapter 32, Section 356 of the Hong Kong Companies Ordinance

Plaintiffs assert they served Wellspring with the "Verified Original Complaint and Request for Injunction Relief dated 21 June 2007, summons in adversary proceeding dated 25 June 2007, the Order to Answer, and Order dated 10 October 2007," through Wellspring's registered office at Hong Kong Secretarial Limited, Unit D, 10/F, China Overseas Building, 139 Hennessy Road, Wanchai, Hong Kong. Admitted into evidence is a "Notification of Situation of Registered Office" listing this same address as the "Situation of Registered Office in Hong Kong." The Court finds the address is the registered office of Wellspring.

An Order Entering Preliminary Injunction Against Wellspring[10] was entered on October 30, 2007. In that Order the Court found "Plaintiffs provided actual notice of the preliminary injunction hearing on October 18, 2007 with the delivery of the Original Complaint and Notice of this Hearing to the registered office address of Wellspring Sourcing in Hong Kong." docket no. 282 at ¶ 3.

---

[10] In the Original Complaint, Plaintiffs sought injunctive relief to prohibit certain transfers by Defendants Schumann Rafizadeh, Main & Marietta, Rodrick L. Hughes, and Wellspring Sourcing. All Defendants except for Wellspring Sourcing agreed to the injunctive relief.

At the hearing on the sufficiency of the October 2007 service, Plaintiffs offered prior testimony of Mr. Curlewis, a private investigator hired to serve Wellspring at their registered office.  Plaintiffs contacted the law firm of Richards Butler in Hong Kong, who, in turn, hired Mr. Curlewis to serve Wellspring.  The prior testimony is from the preliminary injunction hearing held on October 29 and 30, 2007.  The prior testimony has been admitted into evidence.[11]

Mr. Curlewis testified that on October 18, 2007, he delivered a sealed bundle of documents to Wellspring's registered office and that he was told by a clerk at the office that the office accepted service and the office was used as a registered office.  Plaintiffs state the documents in the bundle included the "Verified Original Complaint and Request for Injunction Relief dated 21 June 2007, summons in adversary proceeding dated 25 June 2007, the Order to Answer, and Order dated 10 October 2007."  Wellspring has not disputed the contents of the bundle.  The Court finds the stated documents were delivered to Wellspring's registered agent in October 2007.  Wellspring, however, argues that Mr. Curlewis' personal service of the documents is not allowed under Rule 4(h)(2).

### (d). Allowance of Personal Service under Rule 4(h)(2) and 4(f)(2)(A)

Wellspring's argument is that the service of process is inadequate because personal delivery to the registered office is in violation of Federal Rule of Civil Procedure 4(h)(2) which specifically excludes personal delivery of process as set forth in Rule  4(f)(2)(C)(i).  The Court finds this argument without merit.

---

[11] At the hearing, Plaintiffs' counsel mistakenly failed to include certain exhibits.  One of these exhibits is the testimony of Mr. Curlewis.  At the conclusion of the hearing, the parties agreed that Plaintiffs' counsel would designate additional transcript testimony for admission into evidence and Wellspring would have the opportunity to review, object and cross-designate testimony.  No designations or objections were made by Wellspring after Plaintiffs' counsel's designation of Mr. Curlewis testimony.  The Court, therefore, deems the testimony admitted.

Federal Rule of Civil Procedure 4(h)(2) states that Rule 4(f)(2)(C)(i) (which provides for service "unless prohibited by the law of the foreign country, by (i) delivery to the individual personally of a copy of the summons and the complaint") is specifically excepted from the manner of service on a foreign corporations.  FED. R. CIV. P. 4(h)(2) and  4(f)(2)(C)(i).  The application of Rule 4(h)(2), therefore, ostensibly conflicts with Rule (4)(f)(2)(A) which provides service may be made "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction" which, in this proceeding, is by personal service.[12]  *Id.* at 4(f)(2)(A).  The Court, however, rejects the notion of a conflict.

Rule 4(f)(2)(A) is a separate provision from Rule 4(f)(C)(i).  The exclusion by Rule 4(h)(2) of Rule 4(f)(2)(C)(i) as a means of service of process does not affect the applicability of Rule 4(f)(2)(A).  If the foreign law were silent on the allowance of service of process by way of personal service, the Court might reach a different conclusion.

Accordingly, the Court finds that service was properly effected on Wellspring as of October 17, 2008.  The Court denies Wellspring's motion to dismiss brought under Rule 12(b)(5).

### *Effect of a Misnomer as to the Name of Wellspring*

In addition to seeking dismissal for inadequate service of process, Wellspring seeks dismissal for insufficiency of process under Rule 12(b)(4).  In the original complaint, Plaintiffs identified Wellspring as "Wellspring Sourcing, Inc." rather than as "Wellspring Sourcing Co., Ltd."  The return of service of the summons on Wellspring filed on June 26, 2007, states service on "Wellspring Sourcing Inc."   The documents delivered to Wellspring in October 2007

---

[12] As set forth in the accompanying text above, service is permitted under Hong Kong law by Chapter 32, Section 356 of the Hong Kong Companies Ordinance: "A document may be served on a company by leaving it at or sending it by post to the registered office of the company." Companies Ordinance, (1997) Cap. 32, § 356 (H.K.).

identified Wellspring as "Wellspring Sourcing, Inc."  Wellspring argues that because of this mistake, service is insufficient as a matter of law because Wellspring is not properly named.

Under the United States Federal Rules of Civil Procedure, it is well established that parties are allowed to amend summonses by Rule 4(a) and complaints by Rule 15.  However, because the Court is examining service under Rule 4(f)(2)(A), the Court must determine the effects of a misnomer under Hong Kong law.  For example, if a misnomer under Hong Kong law were to cause service of process to be quashed in Hong Kong, the Court would be confined under Rule 4(f)(2)(A) to determine the same.  The Court, therefore, requested briefing on the effect of a misnomer under Hong Kong law.

### (a). The Naming and Amendment of a Party's Name under the Laws of Hong Kong

Wellspring argues that the Rules of High Court of Hong Kong require that the defendant must be named on the summons and petition.  Wellspring contends there is no express statutory provision in Hong Kong law that addresses misnomers in summonses.  Wellspring points to Order 7, Rule 2[13] and Order 9, Rule 2[14] of the Rules of High Court and argues that these two

---

[13] Order 7, Rule 2 states:

> **Form of summons, etc.**
> (1) Every originating summons (other than an ex parte summons) shall be in Form No. 8 or, if so authorized or required, in Form No. 10 in Appendix A, and every ex parte originating summons shall be in Form No. 11 in Appendix A. (2) The party taking out an originating summons (other than an ex parte summons) shall be described as a plaintiff, and the other parties shall be described as defendants.

The Rules of High Court, (1999) Cap. 4A, Order 7, Rule2.  See *infra* footnote 15, explaining that proceedings may be commenced Hong Kong in several ways: by writ originating summons, originating motion or petitions.  The parties have not briefed whether this proceeding would be initiated by an originating summons; therefore, the applicability of this rule has not been confirmed.  However, because the Court reaches its decision based on the Rules of High Court, Order 20, Rule 5, an analysis of Order 7, Rule 2 is unnecessary.

[14] Order 9, Rule 2 provides:

> **Contents of petition**
> (1) Every petition must include a concise statement of the nature of the claim made or the relief or remedy required in the proceedings begun thereby.

rules require a defendant to be named in the summons and petition.  Because of the misnomer, Wellspring argues a defendant was never actually named.

Plaintiffs point to the Rules of High Court, Order 20, Rule 5 which provides for the ability to amend a writ or pleading[15] with leave of Court.  Rule 5 states:

> An amendment to correct the name of a party may be allowed under paragraph (2) notwithstanding that it is alleged that the effect of the amendment will be to substitute a new party if the Court is satisfied that the mistake sought to be corrected was a genuine mistake and was not misleading or such as to cause any reasonable doubt as to the identity of the person intending to sue or, as the case may be, intended to be sued.

The Rules of High Court, (1999) Cap. 4A, Order 20, Rule 5(3).  Paragraph 2 as referenced in the rule stated above states:

> (2) Where an application to the Court for leave to make the amendment mentioned in paragraph (3), (4) or (5) is made after any relevant period of limitation current at the date of issue of the writ has expired, the Court may nevertheless grant such leave in the circumstances mentioned in that paragraph if it thinks it just to do so.

*Id.* at Rule 5(3).  Plaintiffs argue that a writ may be amended in less equitable circumstances than those before the Court.  Therefore, an amendment of the "Wellspring" misnomer should be allowed.

---

(2) Every petition must include at the end thereof a statement of the names of the persons, if any, required to be served therewith or, if no person is required to be served, a statement to that effect.
(3) Order 6, rule 5, shall, with the necessary modifications, apply in relation to a petition as it applies in relation to a writ.

The Rules of High Court, (1999) Cap. 4A, Order 7, Rule2.  For the reasons set forth in footnote 13, *supra*, an analysis of this Rule is unnecessary.

[15] The Rules of High Court, Order 5 provides the procedure for beginning proceedings in the Court of First Instance. Proceedings may be begun by "writ, originating summons, originating motion or petition."  The Rules of High Court, (1999) Cap. 4A, Order 5, Rule 1.  Rule 5 of Order 20 is made applicable to proceedings begun by originating process by Rule 7 which states "Rule 5 shall have effect in relation to an originating summons, a petition and an originating notice or motion as it has effect in relation to a writ."  *Id.* Order 20, Rule 7.  It is at this point unnecessary for the Court to explore whether this proceeding would have been instituted by writ, originating summons, originating motion or originating petition.  The rules of amendment are applicable to all.

Hong Kong law is based on a common law system and relies on the doctrine of precedent.  As stated in the Basic Law of the Hong Kong Special Administrative Region of the People's Republic of China:

> The courts of the Hong Kong Special Administrative Region shall adjudicate cases in accordance with the laws applicable in the Region as prescribed in Article 18 of this Law and may refer to precedents of other common law jurisdictions.

The Basic Law of the Hong Kong Special Administrative Region of the People's Republic of China (adopted by the Third Session of the Seventh Nat'l People's Cong., April 4, 1990, effective July 1, 1997) (find at http://www.fmprc.gov.cn/eng/ljzg/3566/t23031.htm).[16, 17]

---

[16] The Basic Law of Hong Kong went into effect when Hong Kong was handed over from the United Kingdom to the People's Republic of China. The preamble of the Basic Law sets forth its purposes:

> Hong Kong has been part of the territory of China since ancient times; it was occupied by Britain after the Opium War in 1840. On 19 December 1984, the Chinese and British Governments signed the Joint Declaration on the Question of Hong Kong, affirming that the Government of the People's Republic of China will resume the exercise of sovereignty over Hong Kong with effect from 1 July 1997, thus fulfilling the long-cherished common aspiration of the Chinese people for the recovery of Hong Kong.

> Upholding national unity and territorial integrity, maintaining the prosperity and stability of Hong Kong, and taking account of its history and realities, the People's Republic of China has decided that upon China's resumption of the exercise of sovereignty over Hong Kong, a Hong Kong Special Administrative Region will be established in accordance with the provisions of Article 31 of the Constitution of the People's Republic of China, and that under the principle of "one country, two systems", the socialist system and policies will not be practised in Hong Kong. The basic policies of the People's Republic of China regarding Hong Kong have been elaborated by the Chinese Government in the Sino-British Joint Declaration.

> In accordance with the Constitution of the People's Republic of China, the National People's Congress hereby enacts the Basic Law of the Hong Kong Special Administrative Region of the People's Republic of China, prescribing the systems to be practised in the Hong Kong Special Administrative Region, in order to ensure the implementation of the basic policies of the People's Republic of China regarding Hong Kong.

The Basic Law of the Hong Kong Special Administrative Region of the People's Republic of China (adopted by the Third Session of the Seventh Nat'l People's Cong., April 4, 1990, effective July 1, 1997) (find at http://www.fmprc.gov.cn/eng/ljzg/3566/t23031.htm)

[17] Article 18 sets forth that the law of Hong Kong as previously enacted will be maintained with the exception of certain laws set forth in the Basic Law of the Hong Kong Special Administrative Region that are promulgated by the Standing Committee of the National People's Congress.

Accordingly, Plaintiffs direct the Court to several cases addressing this issue.  In the first case, Plaintiff's family purchased airline tickets from a company in London operating under the name of "Sterling Travel."  *Singh v. Atombrook* [1989] 1 W.L.R. 810, 1989 WL 649697 (C.A. (Civ. Div)).  After the death of a family member, Plaintiff returned the tickets and was assured a full refund.  *Id.* at 812.  Plaintiff never received a refund.  *Id.*  at 812. Plaintiff sued by issuing a writ in the name of Sterling Travel.  *Id.* at 813.  A default judgment was entered.  *Id.*  When Plaintiff took steps to execute the judgment, she learned Defendants' proper name was "Atombrook Ltd. trading as Sterling Travel."  *Id.* at 812.  Defendants sought to have the judgment set aside.  *Id.*

The lower court judge ordered the judgment would be set aside with the condition that Defendants pay a certain sum into the registry.  *Id.*  Defendants appealed arguing, *inter alia*, that the writ was issued against a non-existent person; therefore, the misnaming of a defendant rendered the proceedings null and Defendants should not be required to pay into the registry.  *Id.* After a thorough analysis of  existing case law and relevant legislative authority, the appellate court focused on whether Defendants knew or should have know that the writ was directed to itself.  *Id.* at 819-821.  The Court found that Defendants should have known as much.  *Id.*  The Court dismissed the appeal, found that the Rules of the Supreme[18] Court, Order 2, Rule 1,[19]

---

[18] The Rules of the Supreme Court of the United Kingdom govern all Civil Judicial Proceedings in the United Kingdom.  These rules are the same as Hong Kong's Rules of High Court.  As set forth in footnote 17, *supra*, the Basic Law of Hong Kong Special Administrative Region of the People's Republic of China preserves the majority of Hong Kong's pre-July 1, 1997 legal system.

[19] Order 2 Rule 1 states:

> **Non-compliance with Rules**
> (1) Where, in beginning or purporting to begin any proceedings or at any stage in the course of or in connection with any proceedings, there has, by reason of any thing done or left undone, been a failure to comply with the requirements of these rules, whether in respect of time, place, manner, form or content or in any other respect, the failure shall be treated as an irregularity and shall not nullify the proceedings, any step taken in the proceedings, or any document, judgment or order therein.

Order 20, Rule 5(3)[20] and Order 13, Rule 9[21] applied, and held that the Defendant was aware of the lawsuit and the misnaming of the Defendant was merely a misnomer and should be treated as an irregularity.  *Id.*

In the second case provided by Plaintiffs, the Plaintiff amended a slight typographical error in its name and corrected its country of incorporation on a writ before service was effected on the Defendants.  *Katzenstein Alder Indus. Ltd. v. Borchard Lines Ltd*, [1988] 2 Lloyd's Rep. 274.  Defendants moved to strike the amendment arguing such an amendment was not allowed and, if it was allowed, it should not relate back to the original writ.  *Id.*  The Court focused on whether the writ in the original was misleading or created "reasonable doubt as to the identity of the person intending to sue."  *Id.* at 277.  The Court found the amendment fell within Order 20, Rule 5(3) and related back to the time of the original writ.  *Id.* at 278.  The Court found the amendment related back because it did "not involve the addition of a new party, either as plaintiff or defendant or the raising of a new cause of action, but involves only the modification, by addition, deletion or substitution, of pleas or averments made between existing parties in

---

(2) Subject to paragraph (3), the Court may, on the ground that there has been such failure as is mentioned in paragraph (1), and on such terms as to costs or otherwise as it thinks just, set aside either wholly or in part the proceedings in which the failure occurred, any step taken in those proceedings or any document, judgment or order therein or exercise its powers under these rules to allow such amendments (if any) to be made and to make such order (if any) dealing with the proceedings generally as it thinks fit.
(3) The Court shall not wholly set aside any proceedings or the writ or other originating process by which they were begun on the ground that the proceedings were required by any of these rules to be begun by an originating process other than the one employed.

The Rules of High Court, (1999) Cap. 4A, Order 2, Rule 1

[20] See *supra* page 18 for the text of of Order 20, Rule 5(3) which allows for the amendment of a writ or pleading without leave of Court.

[21] Order 13, Rule 9 provides, "[w]ithout prejudice to rule 7(3) and (4), the Court may, on such terms as it thinks just, set aside or vary any judgment entered in pursuance of this Order." The Rules of High Court, (1999) Cap. 4A, Order 20, Rule 9.

respect of a cause or causes of action already raised." *Id.* at 280-81.  Although *Katzenstein Alder Indus. Ltd* involved a misnamed Plaintiff, the Court finds it instructive, nonetheless.

Wellspring has not provided the Court with any contrary authority.  Therefore, the Court finds based on Order 20, Rule 5(3) under The Rules of High Court of Hong Kong Law and the cases provided by Plaintiffs, a misnomer in an instrument commencing an action in Hong Kong is not fatal to service.  Furthermore, even if Hong Kong law could conceivably be otherwise construed, the Fifth Circuit recognizes that "[w]hen the parties have failed to conclusively establish foreign law, a court is entitled to look to its own forum's law in order to fill in any gaps."  *Banco de Credito Indus., S.A. v. Tesoreria Gen.*, 990 F.2d 827, 836 (1993) (citing *Cantieri Navali Riuniti v. M/V SKYPTRON,* 802 F.2d 160 (5th Cir. 1986)) (examining Spanish law).  Wellspring's final argument requires the Court to examine this forum's laws.

### (b). Amending the Summons and Complaint

Wellspring argues that even if an amendment were allowed under the laws of Hong Kong, amendment provisions should not be considered because in this proceeding Plaintiffs have not sought to issue an amended summons or to amend the complaint.  The Court rejects both assertions.

On October 29, 2007, Plaintiffs sought leave to file a supplemental complaint pursuant to Federal of Civil Procedure 15, incorporated into bankruptcy by Federal Rule of Bankruptcy Procedure 7015.  The Court granted leave on October 30, 2007.  The Supplemental Complaint stated that the proper name was "Wellspring Sourcing Co. Ltd" and amended the Original Complaint accordingly.[22]  The Court finds the complaint has been amended.[23]

---

[22] Wellspring also complains of error in the caption of the Supplemental Amended Complaint filed October 29, 2007, and Third Supplemental and Limited Amended Complaint filed July 21, 2008.  The captions name Wellspring as "Wellspring Sourcing, Inc."  Federal Rule of Civil Procedure 10(a) requires the name of parties to appear in the caption of the complaint.  FED. R. CIV. P. 10(a).  The Eastern District of Texas addressed the scope of Rule 10(a) in

As of October 18, 2007, however, Plaintiffs had not sought an amended summons. Plaintiffs state in their pleadings that the bundle delivered to the registered office of Wellspring in Hong Kong included in the summons dated June 25, 2007, listing Wellspring as "Wellspring Sourcing, Inc." The Southern District of Texas addressed this issue in *Barrett v. Transunion Consumer Relations*, 2006 WL 3487548 (S.D. Tex. 2006). In *Barrett*, Defendant moved to dismiss Plaintiff's complaint on the basis that "Trans Union LLC was served as 'Trans Union Financial Services, Inc. a/k/a/ Trans Union Consumer Relations.'" *Id.* at *2. Defendant argued Trans Union Financial Services, Inc. a/k/a/ Trans Union Consumer Relations was "not its proper name nor has it ever been." *Id.* The Court stated:

> "The fact that the Defendant's name is in some minor respect inaccurate is not necessarily fatal to service. A mere mistake as to a party's name does not defeat

---

*Gartin v. Par Pharmaceutical Co., Inc.*, --- F. Supp. 2d ---, 2007 WL 950390 (E.D. Tex. Mar. 26, 2007). Quoting Wright and Miller, the Court stated:

> ... the contents of the caption usually are not considered a part of the pleader's statement of the claim or the response thereto for purposes of applying the pleading rules. Moreover, the caption is not determinative as to the identity of the parties to the action or the district court's personal jurisdiction over the defendant or its subject matter jurisdiction. A very common defect in the caption is a misnomer regarding a party or an erroneous designation of the capacity in which a party is suing or being sued, or the identification of something that is not a legal entity.
>
> If the body of the complaint correctly identifies the party being sued or if the proper person actually has been served with the summons and complaint, federal courts generally will allow an amendment under Rule 15 to correct technical defects in the caption when that is thought necessary. This corrective action seems appropriate inasmuch as a defective caption or even its complete absence is merely a formal error and never should be viewed as a fatal defect, particularly when it can be remedied early in the action.

*Id.* (quoting 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1321 (3d ed. 2002)). Accordingly, the Court finds a mistake in the caption is not fatal.

[23] Federal Rule of Civil Procedure 15(c)(1)(C) provides that an amendment changing the naming of a party relates back to the original pleading if the amendment asserts a claim arising out of facts set forth in the original pleading and if within 120 days after the complaint is filed the party to be brought in by the amendment received "(i) such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(i) and (ii). As set forth above, the Court has found that Wellspring had notice of the lawsuit as of September 12, 2007. Accordingly, the Court finds that the stated amendment in paragraph 374 of the Supplemental Complaint (docket no. 290) is sufficient to name Wellspring Sourcing Co. Ltd. as a party to this proceeding. The criteria of Rule 15 have been met.

the service." *In re Just For Feet, Inc.,* 299 B.R. 343, 350 (Bankr.D.Del.2003) (defendant claimed that it would not accept service where it was sued as "Washington Inventory Service of Northern California," while its correct name was "Washington Inventory Service"); *see also United States v. A.H. Fischer Lumber Co.,* 162 F.2d 872, 873 (4th Cir.1947) ("As a general rule the misnomer of a corporation in a notice, summons ... or other step in a judicial proceeding is immaterial if it appears that [the corporation] could not have been, or was not, misled"); *Morrell v. Nationwide Mut. Fire Ins.* Co., 188 F.3d 218, 224 (4th Cir.1999) ("service of process is not legally defective because the complaint misnames the defendant in some insignificant way"); *Kroetz v. Aft-Davidson Co.,* 102 F.R.D. 934, 937 (E.D.N.Y.1984) ( "Since the summons and complaint gave said defendant adequate notice that it was being sued, and since no prejudice resulted from the misnaming, we find that it would be inequitable to construe the Federal Rules of Civil Procedure as requiring dismissal of this action.") (internal citations omitted).

*Barrett*, 2006 WL 3487548 at *2. Trans Union did not dispute that it received service or that it was served at its place of business. *Id.* The Court held "the fact that Defendant's name was technically incorrect does not vitiate service." *Id.* (citing *In re Just for Feet, Inc. v. Ill. Sec. Agency (In re Just for Feet, Inc.)*, 299 B.R. 343, 350 (Bankr. D. Del 2003)). Finding Defendant was not prejudiced, the Court deemed service occurred on the day Trans Union received service of process with the misnomer. *Id.* at *3.

As set forth above, this Court has previously determined that Wellspring had knowledge of the lawsuit at least as of September 12, 2007. Furthermore, the Court finds that Wellspring had knowledge of this proceeding through Mr. Vafa Motlaugh.

The Complaint included in the bundle delivered to Wellspring's registered agent in October 2007 stated that "Wellspring Sourcing may be served with process through its director Vafa Motlagh…" docket no. 1, ¶ 43. Mr. Motlagh, himself, has stated that he is a director of Wellspring. On November 21, 2007, Plaintiffs filed a motion to compel discovery against Defendant Universal Sourcing LLC (docket no. 352). In that motion Plaintiffs requested Universal Sourcing produce a corporate representative. In response, Universal attached a

24

declaration of Mr. Motlagh (docket no. 416).  That declaration states that Mr. Motlagh is the sole member and director of Universal Sourcing and that he was the sole owner of both Universal Sourcing and Wellspring Sourcing and that both companies were operated in China by Mr. Motlagh.

Furthermore, the Complaint includes the address for Wellspring's website.  There is no question that "Wellspring Sourcing, Inc." stated in the Complaint was intended to refer to Wellspring Sourcing Co., Limited.  Wellspring must have known the Complaint intended to name Wellspring Sourcing Co., Limited as a Defendant. The Court, therefore, finds that the misnomer under the laws of the United States of America was not fatal to service.

### Conclusion

By effecting service through the internal laws of Hong Kong, Plaintiffs complied with the service requirements set forth in the Hague Convention.  Furthermore the Court finds that a misnomer does not affect the validity of service.  Accordingly, Wellspring's Motion to Dismiss is denied.  Service was effected as of October 17, 2008.  A separate order will issue.

Signed at Houston, Texas, on August 12, 2008.

MARVIN ISGUR
United States Bankruptcy Judge