UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: § | | |
| CYRUS II, LP § | CASE NO. 05-39857-H1-7 | |
| BAHAR DEVELOPMENT, INC. § | (Jointly Administered) | |
| MONDONA RAFIZADEH, et al., § | | |
| § | | |
| Debtors § | Chapter 7 | |
| § | | |

| | | |
|---|---|---|
| RODNEY D. TOW, § | | |
| AS THE CHAPTER 7 TRUSTEE FOR § | | |
| CYRUS II, L.P., et al § | | |
| § | | |
| Plaintiffs § | ADVERSARY PROCEEDING | |
| § | NO. 07-03301 | |
| VS. § | | |
| § | | |
| SCHUMANN RAFIZADEH, et al § | | |
| § | | |
| Defendants § | | |

**BRIEF IN REPLY TO PLAINTIFFS' RESPONSE TO PLAINTIFFS'
CORRECTED OPPOSITION TO CERTAIN DEFENDANTS'
MOTIONS TO WITHDRAW REFERENCE AND RESPONSE
TO CERTAIN DEFENDANTS' JURY DEMANDS**

WELLSPRING SOURCING CO., LIMITED ("Wellspring") files this Brief in Reply to Plaintiffs' Corrected Opposition to Certain Defendants' Motions to Withdraw Reference and Response to Certain Defendants' Jury Demands ("Objection")(Doc. No. 923), and in support thereof, respectfully states to the Court as follows:

**I.**

**Wellspring Has an Inviolable Right to Trial by Jury in the District Court**

**The reference to the United States Bankruptcy Court for the Southern District of Texas is withdrawn…because bankruptcy courts may not conduct**

> **jury trials; they are enhanced special masters in chancery. There is more to the allocation of power in the constitution than legislative and judicial acquiescence in post-New Deal administrative excuses might suggest. Article III and *Amendment VII* subsist.**
>
> *Fimsa, Inc. v. Marina Bay Drive Corp. (In re Marina Bay Drive Corp.)*, 123 B.R. 222 (S.D. Tex. 1990)(Hughes, J.)

A.   Summary of Plaintiffs' Assault on the Seventh Amendment and Perversion of Rule 38

1.   Plaintiffs claim that Wellspring waived its Seventh Amendment right to trial by jury because (a) it did not file a timely motion to withdraw the reference, and (b) an attorney for Universal Sourcing, LLC, a Defendant alleged to be Wellspring's "U.S. counterpart," attended scheduling conferences held on November 29, 2007 and April 4, 2008, before Wellspring had moved for dismissal or otherwise appeared, and did not mention that Wellspring wanted a trial by jury. Plaintiffs also use a blanket reference to "Defendants" in describing various actions or hearings in which Wellspring had no involvement, but which are alleged to have caused a waiver of Wellspring's right to a jury trial.

2.   In support of their "timeliness" argument, at footnote 12 of the Opposition Plaintiffs disingenuously cite Judge Bohm's opinion in *In re EbaseOne Corp.*, 2006 Bankr. LEXIS 1861 (Bankr. S.D. Tex. 2006) for the proposition that "[a] Defendant's filing of a motion to dismiss rather than answering does not mean the Defendant should refrain from moving to withdraw the reference in advance of answering if this is his intention." After observing that the party who filed the motion to withdraw the reference (called

2

"National") had refrained from filing a jury demand out of concern over waiving a pending motion to dismiss, Judge Bohm made the following observation:

> This Court would note that National's counsel appears to be overly cautious. Bankruptcy Rule 7012(b) incorporates Federal Rule of Civil Procedure 12(b)-(h). Federal Rule of Civil Procedure 12(h), which sets forth what defenses are waived in a Rule 12(b)(6) motion if not timely raised, makes no reference to a waiver of a jury trial. Indeed, in the Adversary Proceeding at bar, National has not yet filed its answer, and it does not need to do so until a ruling is issued on its Motion to Dismiss. If the Motion to Dismiss is denied, then National will have ten days after the Motion is denied to file its answer, Bankruptcy Rule 7012(a); and National will be entitled to make a jury demand in its answer, Bankruptcy Rule 9015(a).

*Id.* at *19, n.9. The opinion never imposes an obligation to file a motion to withdraw reference in advance of making a jury demand. To the contrary, it holds that a party with a pending motion to dismiss need not file a jury demand until (at the earliest) it files its answer, <u>which is precisely what Wellspring did</u>.

    3.    Not surprisingly, the Objection cites no authorities supporting Plaintiffs' far-fetched proposition that a separate legal entity which has not appeared in a case, <u>can waive Constitutional rights</u> through the actions or positions taken by another entity under common ownership which has appeared in the case. Such a result would be diametrically opposed to the rule that constitutional rights must be intentionally, knowingly and intelligently waived and the presumption against waiver of the Seventh Amendment right to a jury trial. *See Mirant Corp. v. Southern Co. (In re Mirant Corp.),* 337 B.R. 107, 121 (N.D. Tex. 2006).

B.   *Procedural Background Relevant to Wellspring's Right to a Jury Trial*

4.   The Court's minute entry for the scheduling conference held on November 29, 2007, stating that "The jury demand in the case has been withdrawn," reflects no appearance or participation by Wellspring. The minute entry for April 4, 2008 likewise reflects no appearance by Wellspring.

5.   Wellspring, an entity chartered under the laws of Hong Kong, S.A.R., made its first appearance in this adversary proceeding by challenging the validity of Plaintiffs' process and service of process pursuant to motions filed on April 24, 2008 (Doc. No. 538) (amended by motion filed on July 9, 2008 (Doc. No. 724)). Thereafter, Wellspring appeared only in proceedings relating to its pending motions to dismiss, its motion to set aside default judgment (Doc. No. 577), which the Court granted on May 12, 2008 (Doc. No. 592) and a motion to quash service of requests for production and for a protective order (Doc. No. 725), which the Court denied on August 12, 2008 (Doc. No. 807).

6.   All of these motions were premised on Wellsprings challenges to the sufficiency of Plaintiffs service of process and requests for production and Plaintiffs' failure to comply with the requirements of the Hague Convention. <u>Wellspring did not participate in any way, whether through counsel or corporate representative, in any other proceedings until the motions to dismiss were denied</u>.

7.   On August 12, 2008, the Court entered orders (Doc. Nos. 809, 811) denying Wellspring's motions to dismiss and an order (Doc. No. 908) setting a

September 5, 2008 deadline for making jury demands and filing motions to withdraw the reference.

8. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Wellspring's Answer to the Complaints was due within ten (10) days from the date of the August 12, 2008 Orders denying its motions to dismiss under Fed. R. Civ. P. 12(b)(4) and (5).

9. Wellspring timely filed its Answer to the Complaints on August 21, 2008 (Doc. No. 843) in which it noted in the caption "Jury Trial Demanded." Paragraph 46 of the Answer provides as follows:

> Wellspring admits that the claims asserted are related to the bankruptcy case but as all claims asserted arise, in whole, or in large part, under state substantive law, the claims asserted are arguably noncore. To the extent the claims asserted in this lawsuit are noncore, Wellspring does not consent to the bankruptcy court entering final orders and judgment on any noncore claims. <u>Wellspring has demanded trial by jury. Wellspring does not consent to the bankruptcy court conducting the jury trial and demands that the jury trial take place in the United States District Court for the Southern District of Texas</u>. [underscoring added]

On the same date at the next docket entry, and undeniably within the time limits of Fed. R. Civ. P. 38(b), Wellspring filed a separate Demand for Jury (Doc. No. 844).

10. In compliance with the Court's Order Setting Filing Deadlines and Setting Hearing (Doc. No. 808), Wellspring filed its Motion to Withdraw the Reference (Doc. No. 888) on September 5, 2008. The basis for the Motion was to preserve Wellspring's invocation of its right to trial by jury by an Article III judge.

C. *Defendants are Entitled to a Jury Trial on all Claims and Issues Because Substantially all of Plaintiffs' Claims are Legal, Any Equitable Claims Have Common Issues With the Legal Claims, and the Primary Relief Sought is Money Damages*

11. It is axiomatic that a party may demand a jury only when an "issue [is] triable of right by a jury." *Hays v. Equitex Inc. (In the Matter of RDM Sports Group Inc.*), 260 B.R. 915, 925 (Bankr. N.D. Ga. 2001). If the party requesting a jury trial has a right to such, and if the party has not waived such right, a bankruptcy court cannot deny a jury trial. *See Granfinanciera v. Nordberg*, 492 U.S. 33, 62-64 (1989).

12. Parties to a bankruptcy proceeding have a right to trial by jury in such proceeding if the Seventh Amendment guarantees them such right. *See Granfinanciera,* 492 U.S. at 40-41; *In re Jensen,* 946 F.2d 369, 372-74 (5th Cir. 1991). The Seventh Amendment guarantees a right to a jury trial in "suits at common law." U.S. CONST. amend. VII. The Supreme Court has interpreted this phrase to refer to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera,* 492 U.S. at 41 (emphasis in original) (internal quotation and citation omitted). To determine whether a suit encompasses legal as opposed to equitable rights, the Supreme Court has outlined the following analysis:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on

balance, these two factors indicate that a party is entitled to a jury trial under the *Seventh Amendment*, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as fact finder.

*Id.*, 492 U.S. at 42.

13. Furthermore, the Seventh Amendment does not entitle a party to a jury trial on a claim that is legal in nature, but that asserts a public right: "the Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature *and* it involves a matter of 'private right.'" *Id.*, 492 U.S. at 42 n.4 (emphasis added). This is based on Congress's constitutional ability to assign the adjudication of a party's public rights to a judge sitting without a jury even though the Seventh Amendment may otherwise have mandated a jury. *See id.* As there are no claims by Plaintiffs involving assertions of "public right" this factor is not relevant to the case at bar.

14. In the event that a party asserts legal claims along with equitable claims, or seeks legal relief as well as equitable relief, <u>the fact that such party asserts equitable claims and seeks equitable relief does not waive or convert such party's right to a jury on the legal claims, as well as on *all common issues*</u>: "if [a] legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974). *Accord Duncan v. First Nat'l Bank of Cartersville Ga.*, 597 F.2d 51, 56 (5th Cir. 1979) ("It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of

the case taken as a whole is equitable. <u>As long as any legal cause is involved the jury rights it creates control.</u>") (emphasis added).

15. Plaintiffs' primary claims for relief are based upon alleged fraudulent transfers and breaches of fiduciary duty, both of which are subject to a Seventh Amendment right to trial by jury. *Granfinanciera*, 492 U.S. at 63; *In re Jensen*, 946 F.2d 369, 372-74 (5th Cir. 1991); *Mirant Corp. v. Southern Co. (In re Mirant Corp.)*, 337 B.R. at 121 (where monetary damages are sought on a breach of fiduciary duty claim the claim is legal and subject to trial by jury). The fact that a fraudulent transfer action is a core proceeding under 11 U.S.C. § 157 does not deprive a litigant of its Constitutional jury trial right. *Id.* at 120.

16. Plaintiffs also allege claims for aiding and abetting fraudulent transfers and breaches of fiduciary duty and conspiracy to commit fraudulent transfers and breaches of fiduciary duty, which likewise are triable by jury. *Jensen*, 946 F.2d at 372-73 (civil conspiracy traceable to criminal conspiracy which was always "triable as of right by a jury"). Since the ultimate remedy sought is the recovery of monetary damages, Plaintiffs' claims for accounting, constructive trust and attorneys' fees are also subject to trial by jury. *Id.* at 373.

17. Because, a right to trial by jury exists on all issues common to Plaintiffs' claims, *See Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974); *In re Jensen*, 946 F.2d at 372, the right to jury trial based on the fraudulent transfer and breach of fiduciary duty claims is controlling and requires that the alter ego, single business enterprise and other arguably equitable claims also be

8

tried by jury. *See Duncan v. First Nat'l Bank of Cartersville, Ga.*, 597 F.2d 51, 56 (5th Cir. 1979).

18. A cursory review of Count 13 (Single Business Enterprise) and Count 14 (Alter Ego) of the Complaints reveals that the issues underpinning these equitable remedies are common to the underlying causes of action for fraudulent transfer and breach of fiduciary duty:

**Count 13, ¶¶ 334-335**

> The Rafizadeh Entities utilize the enterprise structure to attempt, through the means outlined in this Complaint, to place assets outside the reach of the creditors of the Estates of Cyrus II, BDI, and Mondona Rafizadeh.
>
> The Rafizadeh Entities conduct business as a single business enterprise under Texas and Louisiana law. The Rafizadehs have used their single business enterprise to perpetrate a fraud on these Estates and their creditors.

**Count 14, ¶ 338**

> The Rafizadehs use the Rafizadeh Entities as means of perpetrating fraud on their creditors;
>
> The Rafizadehs organized and operated the Rafizadeh Entities as mere tools or business conduits of themselves and the other Rafizadeh Entities;
>
> The Rafizadehs created and operated the Rafizadeh Entities to evade existing legal obligations to the State of Louisiana, ORIX, the Trustee and other creditors; and
>
> The Rafizadehs use the Rafizadeh Entities to conceal and justify wrongdoing, including fraudulent transfers and breaches of fiduciary duty.

Since it is plainly evident that the single business enterprise and alter ego remedies share numerous common issues with the fraudulent transfer and

breach of fiduciary duty claims, as to which a right to a jury trial unquestionably exists, the issues raised by these equitable remedies must be tried by jury.

D.   *Wellspring Did Not Waive its Right to a Jury Trial*

19. A party may either implicitly or explicitly waive its Seventh Amendment right to a jury trial. *See In re Clay*, 35 F.3d 190, 196 (5th Cir. 1994). Additionally, a party may have a legal claim, to which the right to a jury attaches, converted into an equitable claim by participating in the bankruptcy process, thereby losing the right to a jury. *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990). Parties frequently waive or convert their jury rights by submitting themselves to the equity jurisdiction of bankruptcy. *See id.* A debtor does not, however, automatically waive jury rights merely by filing for bankruptcy. *See In re Jensen*, 946 F.2d 369, 373-74 (5th Cir. 1991). *See also Southmark Corp. v. Coopers & Lybrand (In the Matter of Southmark Corp.)*, 163 F.3d 925, 935 n.16 (5th Cir. 1999). None of these types of waiver by Wellspring have been alleged or could be supported.

20. A debtor or creditor with an otherwise valid right to a jury may lose such right through conversion of his legal claim into an equitable claim if the proceeding invokes the: (1) claims allowance or disallowance process; (2) the hierarchical ordering of creditors' claims; or (3) if the dispute is integral to the restructuring of the debtor-creditor relationship. *See Granfinanciera*, 492 U.S. at 58, 109 S. at 2799; *Billing v. Ravin, Greenberg & Zackin P.A.*, 22 F.3d 1242,

1251 n.14 (3d Cir. 1994); *In re Jensen*, 946 F.2d at 374. Again, none of these acts constituting waiver have occurred respecting Wellspring.

21. As the Supreme Court has made clear, any waiver of constitutional rights must be voluntarily, intelligently, and knowingly made. See *Fuentes v. Shevin,* 407 U.S. 67, 94-95 (1972); *Brady v. United States*, 397 U.S. 742, 748 (1970). In keeping with those principles, the Supreme Court consistently has held that courts must indulge in a presumption against waiver of the Seventh Amendment right to a jury trial. See *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937) (where the court said that "as the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver"). See also *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510-11(1959).

22. Despite Plaintiffs innuendo to the contrary, there is not even a hint in the record that Wellspring has knowingly, voluntarily, and intelligently waived its right to trial by jury. Wellspring did not participate in any of the scheduling conferences described in Plaintiffs' Objection. Whatever may have transpired in this action respecting the acts or omissions of other Defendants, Wellspring was not involved and cannot be bound by the acts or omissions of others. Wellspring has fully complied with its obligations under Rule 38 and the Seventh Amendment to preserve its right to a jury trial.

23. Plaintiffs assertion that Wellspring waived the right to a trial by jury by not filing a timely motion to withdraw the reference is both factually incorrect and contrary to the law in this Circuit. When a litigant has made a timely demand for a jury trial by an Article III judge, withdrawal of the

11

reference is mandatory. *In re Clay*, 35 F.3d 190, 197-98 (5th Cir. 1994)(the same result must occur under current law when, as here, a party does not consent either to a jury trial by the bankruptcy court or the entry of judgment on non-core issues by the bankruptcy court); *see also Mirant Corp. v. Southern Co. (In re Mirant Corp.)*, 337 B.R. at 114 (in reviewing the bankruptcy court's finding that the motion to withdraw reference was not timely, the district court observed that "[i]f Judge Lynn's views on this subject were to be accepted, the result would be a determination that Southern waived its constitutional right to have the non-core claims adjudicated by an Article III judge as well as its constitutional right to have the legal claims asserted against it tried to a jury. As discussed below, the court is not authorized to treat a party's constitutional rights so lightly").

24. Since Wellspring timely demanded a jury, is entitled to a jury trial as a matter of right and has not waived that right, as a matter of law, the reference must be withdrawn and Wellspring must be granted a trial by jury in the District Court.

## II.

### The *Holland America* Factors Support Withdrawal of the Reference

25. A review of the factors enunciated by the Fifth Circuit in *Holland America Ins. Co. v. Roy*, 777 F.2d 992, 999 (5th Cir. 1985) confirms that withdrawal of the reference for cause is required. The factors are: (1) whether the underlying lawsuit is a core or non-core proceeding; (2) whether a promotion of uniformity in bankruptcy administration will be achieved; (3)

whether forum shopping and confusion will be reduced; (4) whether there will be economical use of debtors' and creditors' resources; (5) whether the withdrawal of reference will expedite the bankruptcy process; and (6) whether a party has demanded a jury trial. Although Wellspring contends that factor 6 trumps all others, the balance of the remaining factors also support withdrawal.

A. *Whether the Claims are Core or Non-Core*

26. Wellspring noted in paragraph 46 of its Answer (Doc. No. 843) that it does not consent to the entry of any final orders on any noncore issues by the bankruptcy court. The only core claims in this proceeding are the fraudulent transfer claims; all remaining claims are noncore.

28. The Fifth Circuit has given effect to the § 157(b) directive that "[a] determi7ation that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State Law," stating in *In re Southmark Corp.* that the fact that the claims in issue arose under state law does not prevent them from invoking core jurisdiction. 163 F.3d 925, 930 (5th Cir. 1999). In *Southmark Corp.*, the Fifth Circuit recognized that a factor to be considered in determining whether a claim is core is whether the claim invokes the bankruptcy court's court jurisdiction to adjudicate and determine the extent of a litigant's claims against the bankruptcy estate. *Id.* at 932. However, the prospect that successful prosecution of the action would enrich the debtor's estate does not make claims asserted in the action core. *Id.* at 931.

29. After applying the principles announced by the Fifth Circuit, the Court must conclude that all remaining claims are non-core. Like the claims considered by the court in *Mirant* (which included alter ego, aiding and abetting and breach of fiduciary duty),

> [n]one of the controversies related to those claims implicate the peculiar rights and powers of bankruptcy, nor do any of those claims depend on the bankruptcy laws for their existence -- they are claims that could proceed in another court even in the absence of bankruptcy. None of those claims involves a substantive right provided by title 11, nor is any of a nature that it could arise only in the context of a bankruptcy case or based on any right created by the federal bankruptcy law. Rather, each of them is based on a state-created right.

*Mirant Corp. v. Southern Co. (In re Mirant Corp.)*, 337 B.R. at 118.

30. Although Plaintiffs assert that their alter ego and single business enterprise claims are core (see Objection, pp. 41-44), the *Mirant* court found otherwise, agreeing with the conclusions expressed in *In re BN1 Telecommunications, Inc.* that an alter-ego claim "is a purely state-law cause of action that does not fall within the core of federal bankruptcy power" and "is not a proceeding merely affected by state law; it is dictated by that law." *Mirant Corp. v. Southern Co. (In re Mirant Corp.)*, 337 B.R. at 118 (quoting *In re BN1 Telecommunications, Inc.*, 246 B.R. 845, 849 (6th Cir. BAP 2000). It would likewise appear beyond dispute that the claims for accounting and constructive trust are noncore.

31. As noted by Judge Bohm in *In re EbaseOne Corp.*, 2006 Bankr. LEXIS 1861 (Bankr. S.D. Tex. 2006), "Congress intended to give federal courts subject matter jurisdiction pursuant to 28 U.S.C. § 1334 over issues of state

law where such matters have an effect on the underlying bankruptcy case." *Citing Wood v. Wood (In re Wood),* 825 F.2d 90, 92 (5th Cir. 1987). However, bankruptcy courts do not have the same powers as the district courts; the powers of the bankruptcy courts are more limited. *Id. at 95.* Only if an adversary proceeding is a core proceeding may a bankruptcy court enter final orders and judgments; if the proceeding is non-core, then a bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court for that court's *de novo* review. *Id.*

32. Although it is true that a significant number of the counts in the Complaints are fraudulent transfer claims, the predominance of the alter ego and single business enterprise claims is such that they dwarf all others in significance. Simply put, if Plaintiffs prevail on these theories, the fraudulent transfer claims become virtually superfluous since the result of such finding is that all assets of all Defendants are property of the bankruptcy estates of the Debtors. Given the overarching significance of these claims, and the other claims arising purely under state law, the predominance of the noncore claims favors withdrawal of the reference.

B. *Promotion of Uniformity in Bankruptcy Administration*

33. "If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration." *In re EbaseOne Corp.,* 2006 Bankr. LEXIS 1861 at *13. Wellspring concedes that since this suit was filed in June of 2007, this Court has considered a number of important

15

substantive and procedural issues and has reached a significant level of familiarity with the factual and legal issues involved in this case. However, there remain significant unresolved dispositive motions that are currently on file and there will undoubtedly be substantial additional dispositive motion filings as a result of the Court's recent Orders authorizing the filing of the Third and Fourth Supplemental Complaints.

C.  *Forum Shopping*

34. Plaintiffs rail about the evils of forum shopping, but ignore the fact that the rights not to consent to a jury trial or to the entry of final orders by the bankruptcy court and the right to seek withdrawal the reference in order to have a jury trial conducted by a district judge are built into Title 28 of the United States Code and exist to preserve fundamental privileges arising under Article III of the Constitution and the Seventh Amendment. Given the Constitutional issues involved, forum shopping is not a factor that weighs against withdrawal of the reference.

D.  *Whether There will be Economical Use of Debtors' and Creditors' Resources*

E.  *Whether the Withdrawal of Reference will Expedite the Bankruptcy Process*

35. The last two factors, economy and expediting the bankruptcy process, are combined because of their common elements. Even if the right to a jury trial in the District Court was not a factor, any perceived enhancement of efficiency, economy and time saving occasioned by having this Court hear the case will be offset by the delays that would be occasioned by the *de novo* review

16

of noncore matters by the District Court and the appeals to the District Court that would follow regardless of which side prevails. If the case is tried by the District Court the intermediate *de novo* review and appellate step will be removed and the appeal will be directly to the Fifth Circuit.

36. As regards economy, concerns about the cost of this litigation has been the absolute last thing on Plaintiffs' minds. This suit has been a feeding frenzy for Plaintiffs' law firms and experts (as well as for court reporters and copying services) and there is no basis to believe that the saving of anyone's money will be promoted by remaining in this Court.

### III.

### Conclusion

37. The factors enunciated in *Holland America Ins. Co. v. Roy*, 777 F.2d 992, 999 (5th Cir. 1985) favor withdrawal of the reference. Wellspring's right to a jury trial by the District Court requires it.

38. Wellspring is entitled to a trial by jury and does not consent to a trial before the bankruptcy court or the entry of a final judgment on noncore issues by the bankruptcy court. Accordingly, Wellspring respectfully requests that this Court recommend entry of and that the District Court enter an order withdrawing the reference of this adversary proceeding and granting the Defendants such other relief as is just.

Respectfully submitted,

BARNET B. SKELTON, JR., P.C.

By   /s/  *Barnet B. Skelton, Jr.*
    Barnet B. Skelton, Jr.
State Bar No. 18456400
1111 Bagby Street, Suite 4700
Houston, Texas 77002
(713) 659-8761 (Telephone)
(713) 659-8764 (Facsimile)
barnetbjr@msn.com

ATTORNEY FOR WELLSPRING
SOURCING CO., LIMITED

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing instrument was filed electronically on October 10, 2008 in compliance with Local Rule LR5.3. As such, this response was served on all counsel of record who are deemed to have consented to electronic service. Pursuant to Fed.R.Civ.P. 5(d) and Local Rule LR5.3, all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing instrument by U.S. First Class Mail and/or facsimile on the 10th day of October, 2008.

      /s/  *Barnet B. Skelton, Jr.*
      BARNET B. SKELTON, JR.

18