## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| CYRUS II, LP | § | CASE NO. 05-39857-H1-7 |
| BAHAR DEVELOPMENT, INC | § | (Jointly Administered) |
| MONDONA RAFIZADEH | § | |
|     Debtors. | § | Chapter 7 |
| | § | |
| | § | |
| RODNEY D. TOW, | § | |
| AS THE CHAPTER 7 TRUSTEE et al. | § | |
|     Plaintiffs | § | |
| vs. | § | |
| | § | ADVERSARY PROCEEDING |
| SCHUMANN RAFIZADEH, et al. | § | NO.  07-03301 |
| | § | |
|     Defendants. | § | |
| | § | |

**PLAINTIFFS' SUR-REPLY TO SCHUMANN RAFIZADEH'S
AND WELLSPRING SOURCING'S REPLIES
REGARDING THEIR MOTION TO WITHDRAW REFERENCE**
[Relates to Dkt. Nos. 947 and 951]

Rodney D. Tow, the Chapter 7 Trustee in the above-captioned bankruptcy cases (the "Trustee" or "Chapter 7 Trustee") and ORIX Capital Markets, LLC ("ORIX"), as the Special Servicer of the Trust for the Certificateholders of the Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-Through Certificates, Series 1999-C1 (the "Trust"), suing on behalf of the Trust and in the name of Wells Fargo Bank, National Association, as Trustee of the Trust, hereby file this Sur-Reply to the Reply of Schumann Rafizadeh and the Reply of Wellspring Sourcing Co. Ltd. ("Wellspring") regarding the Motions to Withdraw Reference, which are set for hearing on October 23, 2008.

## INTRODUCTION

Mr. Rafizadeh's Reply begins by arguing a legal proposition undisputed by the Plaintiffs: If a party has a viable right to a jury trial on any issue, then the bankruptcy reference must be

withdrawn at least as to that issue for that party if the party does not consent to the Bankruptcy Court conducting the jury trial. Mr. Rafizadeh's citation to an established and undisputed legal proposition, however, begs the central question raised by Defendants' belated motions and jury demands—whether Mr. Rafizadeh or any Movant still has a viable right to a jury trial on any claim in light of the uncontested and overwhelming evidence that the Defendants knowingly and intentionally waived their right to a jury trial.  Mr. Rafizadeh's legal arguments in his Reply do not establish and cannot revive any Defendants' jury trial right following their affirmative waiver of that right.

Plaintiffs acknowledge that Wellspring stands in a different factual and legal position than all other Movants because, *inter alia*, Wellspring asserted a jury demand in its Original Answer.  Nevertheless, Wellspring waived its right to a jury trial because it did not timely move to withdraw the reference at the first reasonable opportunity.   When a case is pending in bankruptcy court, a party who wishes to preserve its right to a jury trial must comply with both Rule 38 *and* 28 U.S.C. § 157.  Thus, a party seeking to preserve a jury trial right is required to move to withdraw the reference at the first opportunity, even if that means moving to withdraw the reference before filing an answer.  Here, Wellspring may have complied with Rule 38 by including a jury demand in its Original Answer, albeit ten months after it was properly served, but that demand was only one of two necessary steps Wellspring was obligated to take to preserve its jury trial right in a case pending in bankruptcy court.  Simply stated, Wellspring failed to timely move for withdrawal of the reference.

Plaintiffs ask this Court to apply the holding of the cases the Plaintiffs have cited (including an additional case cited in this Sur-Reply) finding waiver of a jury trial right based on the failure of the parties to have complied with the timeliness requirement of section 157.  If the Court declines to

{N1883418.2}

follow the holdings of these cases—and thereby concludes that preserving the right to a jury trial does not require a party to move to withdraw the reference at the first opportunity, even before answering—then Wellspring—and Wellspring alone among the Movants—has the right to have a jury trial before the District Court.  If the Court so holds, then the Plaintiffs submit that Wellspring should be severed out as a party from this Adversary Proceeding and that the reference should be withdrawn solely with respect to the legal claims asserted against Wellspring that are triable to a jury.[1]

## LAW AND ARGUMENT

**1. EVEN THOUGH THERE IS A PRESUMPTION AGAINST WAIVER OF THE RIGHT TO A JURY TRIAL, MR. RAFIZADEH DID NOT AND CANNOT DISPUTE THAT PLAINTIFFS REBUTTED ANY SUCH PRESUMPTION WITH SIGNIFICANT AND COMPELLING EVIDENCE OF DEFENDANTS' INTENTIONAL AND KNOWING WAIVER.**

Mr. Rafizadeh's Reply <u>never</u> attempts to dispute or rebut the mountain of specific and substantial evidence the Plaintiffs recited establishing the Defendants' knowing, intentional, and repeated waivers of the right to a jury trial.  Rather, Mr. Rafizadeh argues the general proposition that a presumption exists against waiver, and he then makes the unsupported assertion that the Plaintiffs cannot overcome this presumption. To the contrary, this presumption is rebuttable, and the Plaintiffs' Objection set forth extensive, compelling evidence of waiver by every Movant in rebuttal to the presumption.

---

[1] If the Court rules that Wellspring did not waive its jury trial right and Wellspring is severed in this Adversary Proceeding from the other Defendants, the Plaintiffs anticipate that they would also seek a severance of all other foreign Defendants who have not yet answered the Complaint in the Adversary Proceeding.

Even assuming *arguendo* that the jury demands made by Mr. Rafizadeh and the other Movants in September 2008 were "timely" under their strained construction of Rule 38, the Defendants' conduct and statements before September establish that they had already knowingly waived their jury trial right before Wellspring answered. *See generally* Plaintiffs' Objection, pp. 8-14, 25-38 [Dkt. No. 923]. Among their other actions, Mr. Rafizadeh and the other Movants (except Wellspring) actively participated in two scheduling conferences setting a bench trial two different times in bankruptcy court without making any objection, moving to withdraw the reference, or requesting a jury. They filed answers and did not demand a jury until almost five months later. Short of trying the case to the bench, Plaintiffs cannot envision a more conclusive waiver of the jury trial right—Except, perhaps, the fact that some Defendants actually filed a jury demand in 2007, but then later filed a stipulation and orally notified the Court that they had withdrawn their request for a jury trial.

Mr. Rafizadeh's only effort to explain his conduct constituting waiver is to say that once Wellspring demanded a jury, Mr. Rafizadeh and the other Defendants then decided to request a jury for the sake of efficiency. Mr. Rafizadeh does not dispute or explain any of his prior conduct for more than a year plainly evidencing his intention to forego a jury trial. Specifically, Mr. Rafizadeh utterly fails to address his and the other Defendants' following actions undertaken without ever demanding a jury or moving to withdraw the reference:

- Express consent to and participation in the scheduling of a bench trial—twice— before the Bankruptcy Court

- filing 16 motions for summary judgment

- filing 8 motions to dismiss

- defending 5 motions to dismiss

- prosecuting or defending 14 motions to compel

- consenting to or contesting the entry of several injunctions

- participating in 45 hearings or conferences and 100 hours plus of hearings

- retaining and deposing multiple testifying experts

- propounding and responding to the copious discovery resulting in almost two dozen depositions and 26,000 documents produced

- filing of counterclaims, third-party claims, and cross-claims by various Defendants, including Mr. Rafizadeh and SFE.

Similarly, Mr. Rafizadeh never explains why he and the other Defendants waited 14 months to move to withdraw the reference and why they did so only after multiple adverse decisions on various motions for summary judgment, preliminary injunctions, motions to compel, and the award of sanctions.

In addition to the evidence set forth in the Plaintiffs' initial briefing, other evidence further underscores the knowing and intentional waiver of the jury trial right by every Movant who has answered the Complaint (except arguably Wellspring). The transcript from the November 29, 2007, Scheduling Conference substantiates the Plaintiffs' contention that the Defendants affirmatively waived their jury trial right, particularly given the Court's detailed discussion with the parties of the logistics regarding the timing and the manner in which the bench trial in the Bankruptcy Court was going to be conducted:[2]

---

[2] The following counsel for Defendants participated and appeared at the November 29, 2007, Scheduling Conference:
- Messrs. Higgins and Woolley for Mr. Rafizadeh, URF, *et al.;*
- Mr. Bohn for SFE
- Mr. Glass for Azita Berglund and AMI

THE COURT:        I guess I should probably know this, but I don't. **Has there been any jury demand filed by anyone?  Is this going to be a trial before me?  Is this a jury trial?**

**MR. HARVIN:        I think that we have withdrawn our jury demands.**

**THE COURT:                Okay.**

**MR. HARVIN:        I think SFE filed one, and we filed one, but we withdrew it.**

THE COURT:        Okay.  So what we're looking for is quite a few days in the May to June timeframe.

MR. HARVIN:        Correct.

THE COURT:        How long do you think it'll take to try it?

MR. HARVIN:        I'd say two weeks.

**THE COURT:                Is there anybody that disagrees with the May to June timeframe and a two-week trial?**

\* \* \*

THE COURT:        Let me ask one more administrative question.  As most of you know, getting two weeks of solid trial time in a bankruptcy court is a difficult task.  I've never had a two-week trial.  I think this one is going to need the full two weeks.

What I'd like to try and organize is an agreement amongst the parties on the division of time that assures that at the end of the two weeks we're done; not sort of saying you can only have X hours for a particular witness, but saying that the Defendants as a group can put on their case.  And I think that would be 35 hours of trial time.  And the Plaintiffs and Counter Defendants could put on their case as a group in 35 hours for opening, witnesses, closing.  I really don't want to compel that, but it's sort of hard to tell everybody you're going to get done at a certain time.  And there's no way I can set aside sort of this extra time out there just in case we don't get done.

- Mr. Harvin for Rodrick Hughes, Main and Marietta, and Mainmar
- Mr. Paddock for Universal Sourcing

{N1883418.2}

So have you all had a chance to discuss  from an organizational point of view if I set aside a full two weeks in May how we're going to be pretty sure that works?

Transcript, pp. 4-5, 7-8 (11/29/2007)(emphasis added).[3]

None of the Defendants' counsel present at the Status Conference in November 2007 contested—then or at any other point before August 2008—trying this case in the Bankruptcy Court.   The Court conducted a thorough, fully informed discussion with counsel for all parties, resulting in the setting of a non-jury trial by all parties' consent.  The parties' discussion with the Court was no aberration or isolated event; it was consistent with and substantiated by everything that the parties and counsel had done before and since to prepare for a non-jury trial.  Indeed, the April 4, 2008, Scheduling Conference was similarly specific and detailed in its discussion and scheduling of pre-trial and trial matters. In addition to setting a non-jury trial in Bankruptcy Court, the April 4 Scheduling Order entered by the Court set a detailed pre-trial schedule for preliminary motions, expert reports, *Daubert* motions, and discovery deadlines to culminate in a bench trial in Bankruptcy Court October 21,-31, 2008.   Scheduling Order, ¶9 [Dkt. No. 509]. That is all compelling evidence of waiver. *See Southwest Stainless, LP v. Sappington*, 2007 WL 3561477, *3 (N.D. Okla. 2007) (status reports and scheduling orders can show consent to non-jury trials).[4]

---

[3] As set forth above and in Plaintiffs' original briefing, Wellspring did not participate in the pre-trial scheduling conferences held in November 2007 and April 2008 because it had not yet appeared.

[4] Even while moving to withdraw the reference and demanding a jury on an untimely basis, Mr. Rafizadeh, URF, Flash VOS, Inc., and other related, jointly-represented Defendants expressly repeated their earlier consent to having this Bankruptcy Court enter final judgments on non-core matters.  *See* Answer (filed 10/3/2008 at Dkt. No. 933); Answer (filed 4/8/2008 at Dkt. No. 511) (both admitting paragraph 46 of Plaintiffs' Complaint).  As required by Fed. R. Bankr. Proc. 7008(a), the Plaintiffs included a statement in their Complaint that they consented to entry

{N1883418.2}

Moreover, it is disingenuous for Mr. Rafizadeh to suggest that Wellspring's jury demand on which he and all Movants predicate their belated jury demands is not a strategy undertaken with his authority and knowledge, if not at his express direction.   Indeed, Mr. Rafizadeh's counsel first stated his intention to assert a jury demand at the August 11, 2008, status conference, well before Wellspring filed its jury demand ten days later.   The *post-hoc* explanation Mr. Rafizadeh now gives for seeking a jury after Wellspring filed its answer and jury demand is belied by his counsel's statement to the Court on August 11.

> 2.   **THE SUPREME COURT'S *GRANFINANCIERA* DECISION DID NOTHING TO ALTER THE LONG-ESTABLISHED PRINCIPLE CONTAINED IN RULE 38 ITSELF AS WELL AS THE JURISPRUDENCE THAT ONE MAY WAIVE THE SEVENTH AMENDMENT RIGHT TO A JURY TRIAL.**

The cases are legion holding that one may waive the Seventh Amendment right to a jury trial.  Similarly, numerous cases hold that a litigant may waive the right to withdraw the reference by not timely moving for withdrawal, and many others recognize the corollary principle that one may waive the right to a jury trial by not timely seeking withdrawal of the reference.

Mr. Rafizadeh seeks to discredit all of these cases because some (but certainly not all) pre-date the Supreme Court's 1989 decision in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). Specifically, Mr. Rafizadeh states, "Plaintiffs cite few cases that post-date the opinions of *Granfinanciera* [1989], *In re Clay* [1994] or *In re Kaiser Steel* [1990] in support of their position

---

of final orders or judgment by the bankruptcy judge on non-core matters.  Complaint, ¶ 46 [Dkt. No. 1].  Mr. Rafizadeh, URF, Flash VOS, Inc., *et al.* "admitted" paragraph 46 in their answers filed in April and in October of 2008 and consented to entry of final judgments and orders by the Bankruptcy Court even on non-core matters.  This is additional evidence—consistent with all the other evidence—that these Defendants  intended to and did waive their right to a jury trial before the District Court.

that Defendants are not entitled to a jury trial in the District Court."[5]  Reply Brief, ¶ 46.  But **every**

case cited by Plaintiffs (and one not originally cited) that holds a party waives the right to a jury trial

when it fails to timely move for withdrawal of the reference post-dates these three cases.[6]  *See* list,

*infra*, pp. 9-10.  Perhaps what is even more telling about Mr. Rafizadeh's argument is that the very

court (the Tenth Circuit Court of Appeals) that decided *Kaiser Steel,* on which he relies to assert a

jury trial right, decided *Stainer v. Latimer* exactly three months later, cited to and distinguished

*Kaiser Steel*, and adopted the position advanced by Plaintiffs here:

> In *Kaiser Steel,* the parties filed a request for a jury trial and a request to withdraw reference to the bankruptcy court in the adversary action to recover transferred assets. This court concluded that "[w]here the seventh amendment requires a jury trial to be held in bankruptcy, that trial must take place in the district court, sitting in its original jurisdiction in bankruptcy."  *Id.* at 392. Accordingly, this court directed the district court to withdraw the reference and conduct a jury trial on the issues for which timely demand had been made.  *Id.*

> *In the case at bar, defendants requested only a jury trial; they did not request transfer to the district court. Failure to make such a request was a waiver of the right to a jury trial. We hold that to avoid waiver, parties seeking a jury trial must combine their request for a jury trial with a request for transfer to the district court.*

*Stainer v. Latimer* (*In re Latimer*) 918 F.2d 136, 137 (10th Cir. 1990)(emphasis added), *cert.*

*denied*, 502 U.S. 863 (1991).  The Tenth Circuit, therefore, has already answered Mr. Rafizadeh's

musing and found that *Kaiser Steel* is no impediment to finding waiver of the right to a jury trial

when a party fails to timely move for withdrawal of the reference.

---

[5] Mr. Rafizadeh inaccurately cites *In re Kaiser Steel* as a 1999 case when it is a 1990 case.

[6] And in *Clay* itself, the Fifth Circuit acknowledged that a party "may waive his Seventh Amendment right to a jury trial."  *In re Clay*, 35 F.3d 190, 196 (5th Cir. 1994)

The following cases also post-date *Granfinanciera, Kaiser Steel, and Clay,* and, like *Stainer v. Latimer*, the courts in these cases found waiver of the right to a jury trial when a party did not move timely to withdraw the bankruptcy reference in accordance with section 157:

- *In re HA-LO Industries, Inc.,* 326 B.R. 116, 123 (Bankr. N.D. Ill.2005) ("A party may waive its right to a jury trial by failing to move timely to withdraw the reference.")

- *In re Childs*,  342 B.R. 823 (M.D. Ala. 2006)

- *Blackwell v. Deloitte & Touche, LLP* (*In re Blackwell*), 279 B.R. 818 (Bankr. W.D. Tex. 2002).

*HA-LO* was not cited in Plaintiffs' original briefing, but it is fully consistent with the other cases finding waiver of a jury right based on an untimely motion to withdraw the reference.  In that case, a defendant and third-party defendant filed jury demands but, with one exception, did not move to withdraw the reference until 14 months later.  None consented to a jury trial in bankruptcy court.  The *HA-LO* opinion reflects both the district court's decision denying a motion to withdraw the reference as untimely and the bankruptcy court's later decision finding waiver of the jury trial right by failing to have moved to withdraw the reference timely:

> Jury demands have been pending over a year.  Only one party, Third-Party Defendant Kelly, even tried to withdraw the reference as to him, and the District Judge declined to allow that because the motion [to withdraw] was deemed untimely.
>
> \*　　　\*　　　\*
>
> As a result, unless Kelly mounts a successful appeal, he remains subject to this [bankruptcy] Court's jurisdiction.  His motion to withdraw reference can be deemed untimely as the District Judge ruled, and based on authority cited for other parties, Kelly's Jury Demand can be deemed waived for failure to seek removal [withdrawal] sooner.

*Id.* at 123-25.

{N1883418.2}

The Court in *HA-LO* was also deeply troubled by the tactical incentive a contrary decision, *i.e.,* not finding waiver of the jury trial right, would create for litigants to disrupt the timely and orderly scheduling of trials in bankruptcy courts:

> Acceptance of the Defendants' and Third-Party Defendants' position would give parties an incentive not to move to withdraw the reference until long after trials are scheduled, and then to wait to the eve of trial, effectively causing Adversary proceedings to languish in the bankruptcy court and preventing firm scheduling of trial dates. It would mean that after the bankruptcy judge and the other parties block out trial time, a party could thwart all scheduling by moving to withdraw the reference on the eve of trial. [citation to *Blackwell* omitted]. Parties may not be allowed to benefit and control the litigation by their laxity, and may thereby waive their right to a jury trial.

*Id.* at 124. In *HA-LO*, a lengthy trial was just months away, the trial had been scheduled six months earlier, "several pre-trial issues" had been adjudicated, discovery had recently closed, and a pre-trial status conference was imminent. The factual parallels to this case are striking, and by moving to withdraw the reference on the eve of trial in this case (just six weeks before the recent trial setting), Defendants have sought to thwart a prompt and efficient resolution on the merits.

Moreover, there are dozens, if not hundreds, of other decisions post-dating *Granfinanciera*, which held that a party had waived its right to a jury trial.[7] The following cases are but a sampling that have found waiver of the jury trial right for various reasons (other than an untimely motion to withdraw the reference), most typically by a party having filed a counterclaim or proof of claim against the bankruptcy estate:

---

[7] The bases for waiver in these cases are not necessarily those asserted here. Nevertheless, the cases indisputably rebut the idea that *Granfinanciera* had any effect whatsoever on the concept of waiver of jury trials simply because a party may have had a Seventh Amendment right to a jury trial.

- *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990).[8]

- *In re CBI Holdings, Inc.*, 529 F.3d 432, 466-67 (2d Cir. 2008) (creditor "waived its right to a jury trial" by filing proof of claim)

- *SNA Nut Co. v. Haagen-Dazs Company, Inc.*, 302 F.3d 725, 730 (7th Cir. 2002) ("Once a party has triggered this process of allowance and disallowance of claims, that party has subjected itself to the bankruptcy court's equitable jurisdiction and thus can no longer demand a right to a trial by jury.")

- *In re Bank of New England Corp.*, 360 B.R. 1, 5 (D. Mass. 2007) ("if the Senior Indenture Trustees are entitled to a jury trial and have not waived or otherwise lost that right, their motion for withdrawal of the reference should be granted. But that is not the case.") [9]

- *Tanzi v. Shulkin*, 2006 WL 2927660, *3 (W.D. Wash. 2006) ("[T]hrough *Granfinanciera* and *Langenkamp*, the Supreme Court clearly established that jury trials are available in some bankruptcy matters and a creditor forfeits the right to a jury trial by filing a proof of claim.")

---

[8] Some courts construe *Langenkamp* and its progeny as not being grounded in waiver but in the concept that a legal claim is transformed or converted into an equitable one by the creditor's filing of a proof of claim. *In re Crown Vantage, Inc.*, 2007 WL 172321 (N.D. Cal. 2007). Other courts, however, do not go to such lengths to split hairs and find *Langenkamp* and progeny to be waiver, pure and simple. *See generally Control Center, L.L.C. v. Lauer*, 288 B.R. 269 (M.D. Fla. 2002) (discussing whether one loses the Seventh Amendment right to a jury trial based on "conversion theory" or "waiver theory" by filing counterclaim)

[9] The untimely jury demand resulted in the court's denying the motion to withdraw reference. 360 B.R. at 5 ("If there is to be a rule that jury trial claims must be timely, then that rule has to be enforced.")

- *In re Roman Catholic Archbishop of Portland in Oregon*, 2005 WL 196477, *3 (D. Or. 2005) (refusing to withdraw reference because, among other reasons, movant had waived right to jury trial)

- *Roberds, Inc. v. Palliser Furniture*, 291 B.R. 102, 108 (S.D. Ohio 2003) (because defendant waived Seventh Amendment right to jury trial by filing counterclaim against estate, the court denied motion to withdraw reference)

- *Weaver v. Aquila Energy Marketing Corp.*, (*In re Trans Marketing*), 117 F.3d 1417, 1997 WL 336190 *8 (5th Cir. 1997) ("when a bankruptcy creditor files a proof of claim, it submits itself to the bankruptcy court's equitable powers and thereby waives its right to a jury trial")[10]

Not only does Mr. Rafizadeh ignore the weight of authority on jury waiver, he inflates the narrow holding in *Granfinanciera*—that the Seventh Amendment's guaranty of a jury trial continues after the passage of the 1984 Bankruptcy Act for parties that have not filed claims against the estate—to leap to the unsubstantiated and unsupported conclusion that *Granfinanciera* eliminated the very possibility of waiver of jury trial rights, making all jury waiver cases suspect. The Court in *Granfinanciera* never stated that the right to a jury trial cannot be waived, as Mr. Rafizadeh implies. Rather, "[t]he sole issue before us is whether the Seventh Amendment confers on petitioners a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against them." 492 U.S. at 51. Nor did the Court "express any view as to whether the Seventh Amendment or Article III allows jury trials in such actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the district courts

---

[10] Not selected for publication in the Federal Reporter.

pursuant to the 1984 Amendments. We leave those issues for future decisions." *Id.* at 60.  Simply put, *Granfinanciera* was not a case about a party's waiver of the right to a jury trial; it was about Congress's authority to divest a party of its Seventh Amendment right to a jury trial in core proceedings.

Moreover, as the sampling of post-*Granfinanciera* cases cited above demonstrates, his proposition is wrong.  Second, Rule 38(d) itself expressly states that "[a] party waives a jury trial unless its demand is properly filed and served."  Third, in the year after *Granfinanciera*, the Supreme Court itself held that a creditor that filed a proof of claim in bankruptcy submitted itself to the equitable jurisdiction of the bankruptcy court and thus effectively waived its right to a jury trial or at least converted its legal claim into an equitable one unsuited for a jury trial.  *Langenkam,* 498 U.S. at 44. Even after applying the three-part *Granfinanciera* analysis as to whether the Seventh Amendment requires that an issue be tried to a jury, a party may still be found to have waived its jury trial right.[11]  "The fact that a cause of action typically affords the right to a jury trial under the Seventh Amendment is not necessarily dispositive of whether the district court should withdraw the reference; *e.g.*, a party's filing a proof of claim against the bankruptcy estate thereby brings the party within the equitable jurisdiction of the bankruptcy court and waives any creditor's jury trial right." *In re Envisionet Computer Services, Inc.*, 276 B.R. 1, 6 (D. Me. 2002).

Indeed, the predicate assumption in every waiver case is that a valid jury trial right existed that was then waived.  Thus, for purposes of considering the Plaintiffs' waiver argument, this Court can assume, without engaging in a detailed analysis of the claims, that every Movant originally had

---

[11] The Seventh Amendment right to a jury trial attaches if (1) the suit is historically analogous to one at 18th century English common-law, (2) the remedy sought is predominantly legal, and (3) the suit involves a private right.

a right to a jury trial on every claim under *Granfinanciera* and its progeny. Mr. Rafizadeh's suggestion that cases finding waiver of the jury trial right are suspect because they pre-date *Granfinanciera* ignores both the analysis in those cases and the Supreme Court's narrow holding in *Granfinanciera*.

**3. AFTER MOVING TO WITHDRAW THE REFERENCE AND DEMANDING A JURY, MR. RAFIZADEH FILED A NEW COUNTERCLAIM AGAINST THE ESTATE ON OCTOBER 3rd THAT WAIVES WHATEVER JURY TRIAL RIGHT HE MAY HAVE HAD.**
**(This section only applies to Schumann Rafizadeh and Flash VOS, Inc.).**

As discussed above, one year after *Granfinanciera*, the Supreme Court decided *Langenkamp v. Culp*, 498 U.S. 42 (1990), which held that a party that files a claim against the estate is not entitled to a jury trial on that claim. A number of cases, including a sampling of those listed, *supra*, pp. 11-13, have applied *Langenkamp* to find a party submitting a counterclaim either converts its legal claim into an equitable one or forfeits the right to demand a jury. *Langenkamp* and its progeny provide an additional basis for finding that Mr. Rafizadeh waived the right to a jury.

In his latest answer filed October 3rd, after having moved to withdraw the reference, Mr. Rafizadeh included a counterclaim against both the Trustee and ORIX. *See* Defendant Schumann Rafizadeh's Answer to Complaints, His Counterclaims and Third Party Complaint at ¶¶ 604-615 [Docket No. 933].[12] Mr. Rafizadeh's counterclaim is clearly one that seeks to affect the debtor-creditor relationship. Specifically, Mr. Rafizadeh asks the Court to determine that ORIX's remaining claim was reduced by $1 million pursuant to the March 29, 2006, settlement between ORIX and the Trustee. Although Mr. Rafizadeh is indisputably wrong about his contention

---

[12] Mr. Rafizadeh had not previously asserted a counterclaim against the Trustee. He had only counterclaimed against ORIX.

because that was neither the intention nor the result, the relief he seeks against the Trustee goes to the heart of the claims allowance process.[13]

By doing so, he submitted to this Court's equitable jurisdiction and (to the extent he had not done so already) relinquished any right to demand a jury trial. *In re Peachtree Lane Associates*, 150 F.3d 788, 797-798 (7th Cir. 1998) (defendant had no right to a jury trial where it filed a counterclaim against the estate, called it "conditional" and demanded a jury trial and withdrawal of reference one day after it filed its counterclaims. *See also In re Commercial Financial Services, Inc.,* 251 B.R. 397 (N.D. Okla. 2000) (by asserting defense of setoff against Chapter 11 debtor's own contract claims, defendant invoked equitable jurisdiction of bankruptcy court to adjust debtor-creditor relationship, waived his right to jury trial on debtor's claims). Akin to filing a proof of claim, the counterclaim triggers the process of allowance and disallowance of claims and thereby subjects the claimant to the bankruptcy court's equitable jurisdiction. *See Langenkamp*, 498 U.S. at 43-44.[14]

---

[13] Mr. Rafizadeh is not a creditor of the estates and, therefore, has no standing to mount an objection to ORIX's claim, which is what his counterclaim essentially is. Nevertheless, the Court need not reach the standing issue to decide the waiver issue.

[14] Mr. Rafizadeh's implicit agreement to trial by the bankruptcy court and *without* a jury is mandated whether viewed under the "conversion" theory (focusing on whether by the counterclaim the defendant converted it being part of the claims process) adopted by some courts or the "waiver" (or voluntary submission) theory adopted by other courts. *See* footnote 8*, supra*, p. 11; *see also In re Peachtree Lane Associates*, 150 F.3d at 797-798 (defendants' counterclaim against the estate *"stood as a proof of claim in Peachtree's bankruptcy"* and by filing such counterclaims the defendants "submitted themselves to the equity jurisdiction of the bankruptcy court and thereby lost their right to a jury trial of the issues raised in the adversary proceeding and their own counterclaims"); *Hedstrom Corp. v. Walmart, Inc.*, 2006 WL 1120572 (N.D. Ill. 2006) (by filing an affirmative defense that it was entitled to setoffs for liabilities and expenses arising out of products liability and patent infringement cases defendant Walmart invoked jurisdiction of the bankruptcy court and was not entitled to demand a jury trial); *Roberds, Inc. v. Palliser Furniture*, 291 B.R. 102 (S.D. Ohio 2003) (denying motion to withdraw reference

{N1883418.2}

The same is likewise true of Flash VOS, Inc. ("Flash VOS").  As the Court may recall, Flash VOS filed a proof of claim against the estates, claiming entitlement to a $719,000 "consulting fee" (real estate commission) on the sale of the Arlington Apartments.  Although Flash VOS withdrew that claim the night before trial on ORIX's objection in May 2006, it is the act of filing, not its allowance or disallowance, that submits the claimant to the equitable jurisdiction of the bankruptcy court and forfeits the jury trial right that might have otherwise existed.

    **4.  EVEN IN THE ABSENCE OF WAIVER OF A JURY TRIAL RIGHT BY 14 MONTHS OF ACTIVE LITIGATION IN THE BANKRUPTCY COURT, THE JURY DEMANDS FILED AFTER WELLSPRING ANSWERED ARE STILL UNTIMELY AND INSUFFICIENT UNDER RULE 38.**
       **(This section does not apply to Wellspring).**

If this Court rejects Plaintiffs' unrebutted evidence of waiver, the critical and determinative legal question this Court must answer is whether Plaintiffs or Defendants offer a more plausible, well-reasoned, and logical construction of Rule 38's requirement that a jury demand be filed within ten days of the last pleading directed to the issue.[15]  As Plaintiffs originally argued, there are no issues to be tried between Wellspring and its co-defendants; there are no cross-claims, for example.  Wellspring's answer is not directed toward any defendant or to any issue between Wellspring and any other defendant.  Rather, the issues to be tried arise only between Plaintiffs and Defendants, and Wellspring's answer is directed to the Plaintiffs only.

No controlling Fifth Circuit case law exists to address this issue.  Only a few cases address the precise situation presented here, and both Plaintiffs and Defendants have found

---

holding that filing counterclaim seeking post-petition admin expenses invoked equitable jurisdiction of bankruptcy court and waived right to jury trial).

[15] Assuming, of course, that Wellspring did not waive its right to a jury trial by litigating in bankruptcy court for months and not moving to withdraw the reference.

supporting legal interpretations for their positions in these cases, which was argued in the original briefing.  But even the very Circuit Court that decided *Kaiser Steel*, on which Defendants rely for their construction of Rule 38, later construed Rule 38 in conjunction with section 157 to find waiver of the jury trial right based on the late-filed motion to withdraw reference.  *See* Discussion, *supra*, pp. 8-9.

> **5.  WELLSPRING DID INCLUDE A JURY DEMAND IN ITS ANSWER, BUT NEVERTHELESS WAIVED ITS RIGHT TO A JURY TRIAL BY NOT MOVING TO WITHDRAW THE REFERENCE AT THE FIRST OPPORTUNITY AND CHOOSING INSTEAD TO LITIGATE IN BANKRUPTCY COURT FOR MONTHS.**

Plaintiffs acknowledge that Wellspring stands in a different factual and legal situation from the other Movants.  Yet, the Plaintiffs do not, as Mr. Rafizadeh argues, "tacitly admit that Wellspring filed a jury demand on time . . ."  Reply brief, p. 13.  Rather, the Plaintiffs contend in accordance with *HA-LO*, *Blackwell, Childs*, and *Latimer* that when a case is pending in bankruptcy court, preserving the right to a jury trial requires compliance with **both** Rule 38 **and** 28 U.S.C. § 157.  *See* Discussion, *supra*, pp. 8-10. To preserve a jury trial right, a party must move to withdraw the reference at the first opportunity, even if that means in some cases moving to withdraw the reference before filing an answer.  Although Wellspring complied with Rule 38 by including a jury demand in its answer, this was just one of the two necessary steps to preserve a jury trial right.

Wellspring's filing of a jury demand was necessary but not sufficient to perfect its jury trial right.  Wellspring failed to take the second step by moving to withdraw the reference at the first reasonable opportunity.  Wellspring filed its motion to withdraw the reference on September 5, 2008, but only after it had vigorously litigated many issues in the Bankruptcy Court over a period of many months.  The following is a list of the significant and numerous litigation activities Wellspring

undertook in Bankruptcy Court, which confirms that September 5 was by no means Wellspring's first reasonable opportunity to move for withdrawal of the reference:

- Wellspring filed a Motion to Dismiss in late April 2008 and later filed an amended Motion to Dismiss in July 2008

- Wellspring filed a Motion to Set Aside or Reconsider the Default Judgment in May 2008

- Wellspring filed a Response to the Motion for Default Judgment in June 2008

- Wellspring participated through counsel in multiple hearings and oral arguments, including a hearing on June 13, 2008, regarding service, and filed supplemental briefing in July 2008 regarding service of process in Hong Kong

- Wellspring filed a Motion for Protective Order in July 2008

*See generally* Dkt. Nos. 538, 581, 582, 583, 649, 714, 722, 724, and 725.

By the time Wellspring filed its Answer and made a jury demand, it had long since waived a jury trial right by having failed to move at the first opportunity to withdraw the reference. Starting as early as October 2007 when Wellspring was served, and over the course of the next ten months, Wellspring had multiple reasonable opportunities—long before September 2008—to move to withdraw the reference. Having made a tactical decision not to seek to withdraw the reference and to litigate matters before the Bankruptcy Court, Wellspring should not now be permitted to revisit its first choice.

Wellspring does not (and cannot) dispute this record of its active litigation in this Court before finally moving to withdraw the reference. Instead, Wellspring argues that it has a procedural trump card—Rule 38—that allows it to litigate indefinitely before the bankruptcy court without seeking to withdraw the reference so long as it has not yet been required to file an answer asserting its jury trial right.

On Wellspring's behalf, Mr. Rafizadeh argues that Wellspring's jury demand is timely because it was filed in its Original Answer, even though that Answer was filed months after it was first due.  If this case were pending in district court and section 157 did not apply, Mr. Rafizadeh's position would be legally correct as set forth in *McFarland v. Leyh (In re Texas Gen. Petroleum Corp.*), 52 F.3d 1330 (5th Cir. 1995) (cited as well as by Plaintiffs' Objection).  *McFarland* does not, however, address the Plaintiffs' argument based on cases interpreting section 157 in conjunction with Rule 38 and does not alter the result that Wellspring's assertion of a jury demand in its Answer was untimely because it failed to move for withdrawal of the reference at the first reasonable opportunity in accordance with section 157.

Mr. Rafizadeh also argues on Wellspring's behalf that Wellspring risked waiving its objection to personal jurisdiction if it filed a jury demand before moving to dismiss and that this explains Wellspring's delay.  Reply Brief, ¶ 24.  This argument is fatally flawed for at least two reasons.  First, Wellspring lost its right to contest personal jurisdiction when this Court ruled at the preliminary injunction hearing in October 2007 that the record established personal jurisdiction over Wellspring.  Moreover, if Wellspring had a valid jurisdictional objection to preserve, one would have expected Wellspring to have made some effort—any effort—before April 2008 to do so rather than declining to participate in an injunction hearing of which it clearly had notice after it was properly served with a summons, complaint, and TRO application.  Second, the Plaintiffs never suggested Wellspring should have filed a jury demand or moved to withdraw the reference **before** moving to dismiss, but Wellspring could and should have sought to withdraw the reference at the same time it filed a motion to dismiss and certainly by the time it moved to vacate the default judgment.

**6.  ALTERNATIVELY, THE PLAINTIFFS' LEGAL CLAIMS AGAINST WELLSPRING CAN BE SEVERED OUT FOR TRIAL IN THE DISTRICT COURT.**

If this Court rejects the cases finding waiver of a jury trial right based on Wellspring's failure to comply with section 157's timeliness requirement—and thereby concludes that preserving the right to a jury trial does not require one to move to withdraw the reference at the first opportunity, even before answering—then Wellspring alone among the Movants has a right to a jury trial before the District Court.  In that circumstance, Wellspring should be severed out from this Adversary Proceeding and have the reference withdrawn only with respect to the legal claims that have been asserted against it.[16]

In the further alternative, if this Court finds that the September jury demands of the other Movants based on Wellspring's jury demand were timely filed under Rule 38 **and** were sufficient to reverse their prior waivers, the reference need not and should not be entirely withdrawn.  As Mr. Rafizadeh concedes, the purported revival of his and other Movants' jury trial rights only applies to common legal issues triable with Wellspring.  Although Mr. Rafizadeh states that "Wellspring is a party to virtually all counts," Reply Brief, p. 9, actually, it is not.  Wellspring is a defendant on only the following six of the total of 24 claims:[17]

- aiding and abetting Schumann's breach of fiduciary duty to BDI

- conspiracy

---

[16]  As noted earlier, in the event that Wellspring is severed from this Adversary Proceeding, Plaintiffs anticipate that they would also seek a severance of all other foreign Defendants if they timely demand a jury in accordance with Rule 38.

[17]  or 7 of 25 if one considers count 22, the TUFTA claim for attorneys' fees, as a truly separate count.

- one fraudulent transfer count (and the separately pleaded claim for attorneys' fees under TUFTA at count 22)

- alter ego

- single business enterprise

- constructive trust

Of these six claims, the three remedy claims are likely equitable and not triable to a jury, although the law is admittedly less than clear on this point.  As a result, somewhere between 18 and 21 of the 24 claims asserted are **non-jury**.  Thus, even assuming that the Movants are both legally and factually correct—that their jury demands filed after Wellspring answered are timely for all issues jointly triable and were not irrevocably waived by then—that conclusion does not require or even suggest that the entire reference should be withdrawn.

### 7.  UNDER ANY INTERPRETATION OF THE LAW AND THE FACTS, MR. RAFIZADEH DOES NOT HAVE THE RIGHT TO WITHDRAW THE REFERENCE OR SEEK A JURY TRIAL ON HIS COUNTERCLAIM AND THIRD-PARTY CLAIMS AGAINST ORIX AND FRIZELL.

As set forth in Plaintiffs' original brief, a party seeking to withdraw the reference, such as Mr. Rafizadeh, bears the burden to establish the right to withdrawal, and any motion to withdraw, whether seeking permissive or mandatory withdrawal, must be timely filed.  In his Reply, Mr. Rafizadeh makes a cursory effort for the first time to move for withdrawal of the reference on his counterclaim and third-party claim.  The few (five) paragraphs he devotes to the topic do not meet his burden for either permissive or mandatory withdrawal.

First, regardless of whether the basis for withdrawal is permissive or mandatory, section 157 requires that the motion be made timely.  Mr. Rafizadeh filed his counterclaims and third-party claims in April 2008, but he did not move to withdraw the reference until five months later.

That is hardly timely, and certainly September 2008 was not his first reasonable opportunity to seek withdrawal.

Second, Mr. Rafizadeh makes virtually no effort to establish—because he cannot—that his claims against ORIX and Frizell require construction of substantial questions of federal statutory law.  The one federal statute he cites without discussing does not provide a private right of action.  To obtain mandatory withdrawal, the claims must do more than "involve issues" of federal law.  Rather, there must be a substantial and material interpretation of a federal statute required before mandatory withdrawal is found proper:

> Section 157(d) of title 28 requires a district court to withdraw reference if issues under both the Bankruptcy Code and the laws of the United States affecting interstate commerce are presented for determination. The term "laws of the United States"' has been interpreted to require determination under a statute, not merely federal common law.
>
> There are essentially two views interpreting the mandatory withdrawal statute. The vast majority of cases require a "substantial and material" issue of nonbankruptcy law, following *In re White Motor Corp.*  There are a few cases, however, that follow a ``literal interpretation'' of the statute and require only that a nonbankruptcy statute be invoked.  In addition, the issue presented must require interpretation of the nonbankruptcy statute, not merely application of the statute invoked.

COLLIER'S ON BANKRUPTCY, 5011.01 [ii] (15th. Ed. Revised) (footnotes omitted).

Third, Mr. Rafizadeh fails to address or discuss the basis—and virtually concedes that there is none—for permissive withdrawal. Nor does he brief any of the six factors the Fifth Circuit applies to motions for permissive withdrawal of reference under *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985). Even the strained arguments he makes regarding a jury trial with respect to the claims he is defending do not preserve his jury trial right with respect to the claims he is asserting.  Mr. Rafizadeh filed these claims in April and did not demand a jury.  ORIX and Frizell each answered, and Mr. Rafizadeh did not demand a jury

{N1883418.2}

within ten days after the filing of the answers.  There is no doubt that the counterclaims and third-party claims will not be tried to a jury.  With no basis for a jury trial, Mr. Rafizadeh has no cause for waiting five months to withdraw the reference on his claims.  The motion to withdraw reference on the counterclaims and third-party claims must be denied.[18]

8. **ALGTHOUGH THIS COURT ONLY MAKES A RECOMMENDATION TO THE DISTRICT COURT ON THE WITHDRAWAL OF REFERENCE ISSUE, THIS COURT NEVERTHELESS HAS THE AUTHORITY TO DETERMINE WHETHER ANY JURY TRIAL RIGHTS EXIST.**

Although the withdrawal of reference is decided by the District Court after recommendation of this Court, whether a jury trial right exists or has been waived can be heard and should be determined by this Bankruptcy Court in the first instance:

> Either this court or the Bankruptcy Court can determine whether the Defendants are entitled to a jury trial. *See, e.g., In re Washington Manufacturing Co.*, 133 B.R. 113, 116 (M.D. Tenn. 1991) (noting that the bankruptcy court is normally an appropriate forum for determining whether a right to jury trial exists, but concluding that the district court can also decide that issue when the right to jury trial is the "cause" asserted in a motion to withdraw a reference to bankruptcy); *In re TJN, Inc.,* 207 B.R. 499, 501 & n. 1 (Bankr. D.S.C. 1996) ("Ordinarily, the Bankruptcy Court in which the adversary [proceeding] is pending is the forum in which the parties' right to jury trial is determined." (citations omitted)); *see also* 28 U.S.C. § 157(b)(1) (bankruptcy judges may hear and determine all bankruptcy cases and core proceedings and may enter appropriate orders and judgments).

*In re Foxmeyer Corp.*, 1999 WL 33220040 (D. Del. 1999).

<u>CONCLUSION</u>

The unrebutted and undisputed evidence of Movants' knowing and intentional waiver of the right to a jury trial is clear, compelling, and substantial.  Notwithstanding the special nature of jury rights and the presumption against waiver, both the statutory and case  law are unequivocal that the

---

[18] Similarly, SFE has made no effort to establish a right to withdrawal of reference on the counterclaims that it has asserted against ORIX.

{N1883418.2}

Seventh Amendment right to a jury trial may be waived.  Accordingly, the Motions to Withdraw

Reference should be denied, and the Defendants' untimely jury demands should be struck.[19]


DATED:  October 15, 2008

Respectfully submitted,


/s Nan Roberts Eitel_____

Nan Roberts Eitel
Louisiana Bar No. 19910
SD TX Bar No. 561266
Jones Walker Waechter Poitevent Carrère & Denègre, LLP
The Watergate
2600 Virginia Avenue, NW, Suite 1113
Washington, DC 20037
Telephone: (202) 944-1105
Facsimile: (202) 944-1109

R. Patrick Vance
Louisiana Bar No. 13008
S.D. Texas Bar No. 30331
Jones Walker Waechter Poitevent Carrère & Denègre, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-8000
Facsimile: (504) 589-8302

-and-

Randall A. Rios
State Bar No. 16935865
Lynn Chuang Kramer
State Bar No. 24036930
Bank of America Center
700 Louisiana, 46th Floor
Houston, Texas 77002
Telephone: (713) 222-1470

-and-

---

[19]  In the event this Court disagrees and recommends withdrawal of the reference, Plaintiffs submit that this Court should also recommend that the District Court return the case to the Bankruptcy Court for all pre-trial proceedings until the matter is actually ready for trial.

David C. Mattka
State Bar No. 13231500
Richard C. King
State Bar No.  24007491
One American Center
600 Congress Avenue, Suite 2900
Austin, Texas 78701-3057
Telephone: (512) 391-6100
Fax: (512) 391-6149


COUNSEL FOR ORIX CAPITAL MARKETS, LLC, AS
THE SPECIAL SERVICER FOR THE TRUST FOR
CERTIFICATEHOLDERS OF THE MERRILL LYNCH
MORTGAGE INVESTORS, INC. MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 1999-C, ON
BEHALF OF THE TRUST AND IN THE NAME OF
WELLS FARGO BANK, NATIONAL ASSOCIATION,
AS TRUSTEE FOR THE TRUST


DIAMOND MCCARTHY LLP


By: _____*/s/  Leonard A. Hirsch*_____
Leonard A. Hirsch
State Bar No. 09717300
1201 Elm Street, Suite 3400
Dallas, Texas  75270
Telephone:  (214) 389-5300
Facsimile:   (214) 389-5399

Kyung S. Lee
Texas Bar No. 12128400
Jason M. Rudd
Texas Bar No.  24028786
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas  77010
Telephone:  (713) 333-5100
Facsimile:  (713) 333-5195

COUNSEL FOR RODNEY TOW, CHAPTER 7 TRUSTEE
FOR THE ESTATES OF CYRUS II, LP, BAHAR
DEVELOPMENT, INC. AND MONDONA RAFIZADEH

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing document was served by email or through the Court's electronic noticing system on counsel for all parties on this 15th day of October 2008.

| | |
|---|---|
| Nan R. Eitel<br>Jones Walker<br>2600 Virginia Ave., NW, Suite 113<br>Washington, DC  20037<br>Fax:    (202) 944-1109<br>E-mail: neitel@joneswalker.com<br>*Counsel for ORIX Capital Markets LLC* | Randall A. Rios<br>Lynn Chuang Kramer<br>Munsch Hardt Kopf & Harr, P.C.<br>Bank of America Center<br>700 Louisiana, 46th Floor<br>Houston, Texas 77002<br>Fax:    (713) 222-5868<br>E-mail: rrios@munsch.com<br>E-mail: lkramer@munsch.com<br>-and-<br>David C. Mattka<br>Richard C. King<br>Andrew S. Brown<br>Munsch Hardt Kopf & Harr, P.C.<br>One American Center<br>600 Congress Avenue, Suite 2900<br>Austin, Texas 78701-3057<br>Fax: (512) 391-6149<br>E-mail: dmattka@munsch.com<br>E-mail: rking@munsch.com<br>E-mail: abrown@munsch.com<br>*Counsel For ORIX Capital Markets, LLC, As The Special Servicer For The Trust For Certificateholders Of The Merrill Lynch Mortgage Investors, Inc. Mortgage Pass-Through Certificates, Series 1999-C, On Behalf Of The Trust And In The Name Of Wells Fargo Bank, National Association, As Trustee For The Trust* |
| Leonard A. Hirsch<br>1201 Elm Street, Suite 3400<br>Dallas, Texas  75270<br>Telephone:  (214) 389-5300<br>Facsimile:   (214) 389-5399<br>*Counsel for Plaintiff, Rodney D. Tow, Trustee* | Kyung S. Lee<br>Jason M. Rudd<br>Two Houston Center<br>909 Fannin, Suite 1500<br>Houston, Texas  77010<br>Telephone:  (713) 333-5100<br>Facsimile:   (713) 333-5195<br>*Counsel for Plaintiff, Rodney D. Tow, Trustee* |

| | |
|---|---|
| Stephen H. Kupperman<br>Barrasso Usdin Kupperman<br> Freeman & Sarver, L.L.C.<br>909 Poydras Street, Ste. 1800<br>New Orleans, LA  70112<br>Fax:    (504) 589-9701<br>E-mail: skupperman@barrassousdin.com<br>*Counsel for Rodrick L. Hughes and Main &*<br>*Marietta, LP* | Andrew R. Harvin<br>Peter B. Wells<br>Doyle, Restrepo, Harvin & Robbins, LLP<br>JPMorgan Chase Tower<br>600 Travis St., Suite 4700<br>Houston, TX  77002<br>Fax:    (713) 228-6138<br>E-mail: aharvin@drhrlaw.com<br>E-mail: pwells@drhrlaw.com<br>*Counsel for Rodrick L. Hughes and Main &*<br>*Marietta, LP* |
| John F. Higgins, IV<br>Thomas Andrew Woolley, III<br>Porter & Hedges LLP<br>1000 Main, 36th Floor<br>Houston, TX  77002<br>Fax:    (713) 228-1331<br>E-mail: jhiggins@porterhedges.com<br>E-mail: rwoolley@porterhedges.com<br>*Counsel for Schumann Rafizadeh, Flash Vos,*<br>*Inc., United Rafizadeh Family, L.L.P.,*<br>*Rafizadeh LLC, MBA Services, Inc., HOOBI,*<br>*LP, HOOBIGP, LLC, HOAPT, LP,*<br>*HOAPTGP, LLC, COOB, LP, COOBGP, LLC,*<br>*ATOB, LP, ATOBGP, LLC, KEYLD, LP,*<br>*HEYLDGP, LLC, KEYUT, LP, KEYUTGP,*<br>*LLC and KEOBGP, LLC* | Jeffrey Wayne Glass<br>Attorney at Law<br>2401 Fountainview, Suite 1000<br>Houston, TX 77057<br>Fax:    (713) 789-7703 - fax<br>e-mail: jeff@jeffglasslaw.com<br>*Counsel for Azita Management, Inc. and Azita*<br>*Berglund, Individually* |
| Jon P. Bohn<br>Bohn & Ducloux<br>806 Main Street, Suite 1411<br>Houston, TX  77002<br>Fax:  (713) 522-9015<br>E-mail: jonbohn@yahoo.com<br>*Counsel for Super Future Equities, Inc.* | Edward L. Rothberg<br>Hugh M. Ray, III<br>Weycer Kaplan Pulaski and Zuber PC<br>1400 Summit Tower<br>11 Greenway Plaza<br>Houston, TX  77046<br>Fax: (713) 961-5341<br>E-mail: elr@wkpz.com<br>E-mail: hray@wkpz.com<br>*Co-Counsel for Defendant Schumann*<br>*Rafizadeh* |

| | |
|---|---|
| Barnet B. Skelton Jr.<br>Barnet B. Skelton, Jr., P.C.<br>1111 Bagby, 47th Floor<br>Houston, TX 77002<br>Fax: (713) 659-8764<br>E-mail: barnetbjr@msn.com<br>*Counsel for Universal Sourcing, LLC,*<br>*Wellspring Sourcing Co. Ltd., and Vafa*<br>*Motlagh* | Matthew Scott Okin<br>Okin & Adams LLP<br>1113 Vine Street, Suite 201<br>Houston, TX  77002<br>Fax:  (888) 865-2118<br>E-mail:  mokin@okinadams.com<br><br>Robert J.E. Edwards<br>Amy E. Hatch<br>David D. Ferguson<br>Polsinelli Shalton Flanigan Suelthaus PC<br>700 West 47th Street, Suite 1000<br>Kansas City, Missouri  64112<br>Fax:  (816) 753-1536<br>E-mail: redwards@polsinelli.com<br>E-mail:  dferguson@polsinelli.com<br>*Counsel for KeyCorp Real Estate Capital*<br>*Markets, Inc.* |
| Matt E. Rubin<br>2000 Bering Dr., Suite 909<br>Houston, TX 77057<br>Fax: (713) 981-8670<br>E-mail: mrubin@mrubinlaw.com<br>*Counsel for Australian entity, One World*<br>*Future Pty, Ltd.* | |

*/s/ NanRoberts Eitel*
Nan Roberts Eitel