

ENTERED
11/24/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| CYRUS II PARTNERSHIP, *et al* § | CASE NO: 05-39857 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| RODNEY D TOW, *et al* § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 07-03301 | |
| § | | |
| SCHUMANN RAFIZADEH, *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION ON MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT 2-FRAUDULENT TRANSFER

On July 1, 2008, the Court held a hearing on COOB, LP's ("COOB") Motion for Partial Summary Judgment on Count 2 – Fraudulent Transfer (docket no. 643). For the reasons set forth below, the Court denies the motion.

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

### I. Background

Mondona Rafizadeh ("Mondona"), Cyrus II Partnership ("Cyrus"), and Bahar Development, Inc. ("Bahar") filed voluntary chapter 7 petitions on June 27, 2005 (collectively as "Debtors"). They filed bankruptcy after the 24th Judicial District Court for the Parish of Jefferson, Louisiana, issued a $10,893,350.96 judgment on December 23, 2004 against them and in favor of ORIX Capital Markets, L.L.C. ("ORIX").

The judgment was based on a $6,400,000 promissory note entered into on or about July 6, 1999, by Cyrus and secured by a lien interest in the Arlington Apartments in Harvey, Louisiana ("Arlington Note"). Cyrus's general partner was Bahar.

The Arlington Note was non-recourse, except in limited instances that triggered Mondona's liability. The 24th Judicial District Court found that personal liability arose under the Arlington Note and Mondona's guaranty because of, *inter alia*, commission of fraud, gross negligence, waste, conversion, failure to provide financial information, failure to make payment on the note, and the transfer of the apartments without required consent.

The Louisiana judgment held Debtors personally liable for the remaining principal amount of $6,282,671.16, accrued non-default interest of $1,274,226.10, default interest of $1,611,673.70, a prepayment premium of $1,268,413.60, and other miscellaneous amounts totaling $456,366.40. The total judgment was for $10,893,360.96 plus attorneys' fees. The Louisiana Court later awarded attorneys' fees and expenses totaling $2,130,649.00. With post-judgment interest, the total amount awarded to ORIX as of the petition date was $14,160,348.75 plus post-judgment attorneys' fees and costs.

Pre-petition, ORIX, seeking to collect the judgment, sued Debtors and allegedly related entities in Louisiana, asserting that entities controlled by Mondona's husband, Schumann Rafizadeh ("Schumann"), received tens of millions of dollars of fraudulent transfers and that those entities are alter egos of Debtors ("SBE Litigation").

The bankruptcy filings stayed the SBE Litigation in Louisiana. The Trustee engaged in mediation in an attempt to settle the claims between the Debtors and ORIX. After the mediation failed, ORIX and the Trustee had several disputes. ORIX is by far the largest creditor of the

estate. The Trustee and ORIX eventually settled their disputes, determining that the SBE claims were property of the estate, and that ORIX could act as a co-Plaintiff with the Trustee.

On June 21, 2007, the Trustee and ORIX ("Plaintiffs") filed this adversary proceeding against Mondona, Schumann, and a myriad of allegedly related entities. The complaint includes claims for avoidance of fraudulent transfers, breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, and civil conspiracy. It also seeks a finding of single business enterprise and alter ego, and requests substantive consolidation, a constructive trust, and an accounting.

COOB is one of the defendants in this proceeding. Plaintiffs allege COOB was formed in February 2001 as an Ohio limited partnership with a principal place of business in Houston, Texas. Plaintiffs argue that on March 14, 2004, Debtor Bahar deeded an Ohio property, referred to as Imperial Towers, to COOB. Plaintiffs assert, however, that the transaction was backdated to be effective January 1, 2000. Through this transaction, Plaintiffs claim Mondona transferred a $4 million asset for virtually no consideration.

Plaintiffs seek to avoid this transfer pursuant to 11 U.S.C. § 544(b), § 1336.04(A)(1) of the Ohio Uniform Fraudulent Transfers Act ("OUFTA"), and § 24.005(a)(1) of the Texas Uniform Fraudulent Transfers Act ("TUFTA"). Although a significant amount of time has passed since the transfer, Plaintiffs argue that this complaint is timely because defendants concealed the fraudulent nature of the transfer. As such, they assert the relevant statute of limitations runs from the time the transfer could reasonably have been discovered rather than from the time the transfer actually occurred.

## II. COOB's Motion for Partial Summary Judgment

COOB argues that under federal or Texas choice of law rules, Ohio substantive law applies to this transaction. Under Ohio substantive law, COOB asserts this claim is barred by the applicable statute of limitations. Section 1336.09 of OUFTA states:

> A claim for relief with respect to a transfer or an obligation that is fraudulent under section 1336.04 or 1336.05 of the Revised Code is extinguished unless an action is brought in accordance with one of the following:
>
> (A) If the transfer or obligation is fraudulent under division (A)(1) of section 1336.04 of the Revised Code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant . . . .

R.C. § 1336.09 (Vernon's 2008). COOB argues that in Ohio, the recordation of a deed puts the world on notice of the transfer. The deed was recorded on March 27, 2001. Therefore, COOB argues that pursuant to § 1336.09, any possible cause of action for a fraudulent transfer under OUFTA § 1336.04(A)(1) is extinguished. Thus, if Ohio substantive law applies, COOB's Motion for Partial Summary Judgment should be granted.

Plaintiffs argue that COOB is ignoring the factually intense application of choice of law rules. As such, Plaintiffs assert that summary judgment cannot be granted because: (1) there are fact questions as to whether Texas or Ohio substantive law should apply; and (2) even if those questions can be answered at this stage, federal and Texas choice of law rules demand that Texas substantive law should apply. Plaintiffs, however, concede that if Ohio substantive law applies, their claim is barred.

## III. Summary Judgment Standard

Which state's substantive law governs an issue is a question of law for the court to decide. *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 667 (9th Cir. 1997). However, determining which state contacts or interests control involves a factual inquiry. *Hughes Woods*

*Prods., Inc. v. Wagner*, 18 S.W.3d 202, 2004 (Tex. 2000) (citing *Parra v. Larchmont Farms, Inc.*, 932 S.W.2d 68, 74 (Tex. App. 1995), *rev'd* on other grounds, *941 S.W.2d 93* (1997) (per curiam).

A party seeking summary judgment must show that there is no genuine issue of material fact as to fact questions necessary to determining a choice of law issue. *Id.* (citing *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985)). Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial. At all times, a court views the facts in the light most favorable to the non-moving party. *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006). However, to weigh evidence would result in a credibility determination that is not part of the summary judgment analysis. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *see MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006). A court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Id.; see also Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005); *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). The movant may seek summary judgment if insufficient evidence has emerged from discovery to support the non-moving party's claims. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2727 (3d ed. 1998). At this time the non-moving party must respond with sufficient evidence to support

the challenged element of its case or present evidence to raise a material issue of fact. *Id.;  Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *See Condrey*, 431 F.3d at 197.

## IV. Which Law Applies?

A. Federal or State Choice of Law Rules

A choice of law inquiry traditionally occurs as a two step process. First, the Court must determine whether federal or state choice of law rules govern. Second, once the Court has determined which choice of law rules apply, it must apply these rules to the facts of the case to determine the appropriate substantive laws.

In *Klaxon*, the Supreme Court of the United States held that a federal court sitting in diversity jurisdiction must apply choice of law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg Co.*, 313 U.S. 487, 496 (1941). However, the Court has jurisdiction over this adversary proceeding arising out of Plaintiffs' bankruptcy filing pursuant to 28 U.S.C. § 1334(b). Thus, the Court sits in federal question jurisdiction and not diversity jurisdiction. This case is not bound by *Klaxon*.

The Fifth Circuit has not ruled on whether bankruptcy courts should apply federal or state choice of law rules. *See Woods-Tucker Leasing Corp. of Georgia v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 748 (5th Cir. 1981).

Other circuits have looked at this matter. The Second and Ninth Circuits have both found that federal choice of law rules apply to fraudulent transfer claims in bankruptcy, albeit for different reasons. In *Koreag*, the Second Circuit said in dicta that federal principles should guide which state's substantive law governs cases arising out of federal law, especially those that

involve important federal bankruptcy policy. *Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag)*, 961 F.2d 341, 350 (2d Cir. 1992) (case under § 304 of the Bankruptcy Code). Following on the heels of *Koreag*, a bankruptcy court in the Southern District of New York held that federal choice of law rules would probably apply to claims based on § 544(b) of the Bankruptcy Code. *In re Best Products Co., Inc.*, 168 B.R. 35, 51 (Bankr. S.D.N.Y. 1994). *But see In re Gaston*, 243 F.3d 599, 606-607 (2d Cir. 2001) (finding there was no significant federal policy to justify applying federal common law choice of law rules for a breach of contract claim asserted during bankruptcy).

In *Lindsay*, the Ninth Circuit stated that federal courts with exclusive federal jurisdiction over federal question cases, such as bankruptcy, should apply federal, not forum state, choice of law rules. The Ninth Circuit reasoned that it was unnecessary to apply state choice of law rules to reduce the risk of forum shopping because these cases could only be litigated in federal courts. As such, there was no need to subordinate the interest of national uniformity to account for any differences in states' choice of law rules. *Lindsay v. Beneficial Reinsurance Co.*, 59 F.3d 942, 948 (9th Cir. 1995).

However, other circuits have applied state choice of law rules in bankruptcy cases where there was no compelling federal policy, even though they were not bound to do so under *Klaxon*. In *In re Merritt Dredging Co.*, the Fourth Circuit applied state choice of law rules to determine the extent of a debtor's property rights vis-à-vis a creditor with a security interest in a barge. *In re Merritt Dredging Co. Inc.*, 839 F.2d 203, 205 (4th Cir. 1988). The Fourth Circuit said that deciding the extent of the debtor's property rights is a matter of state law and that "[i]t would be anomalous to have the same property interest governed by the laws of one state in federal diversity proceedings and by the laws of another state where a federal court is sitting in

bankruptcy." The Fourth Circuit deemed that this would be especially true in the area of property rights where predictability is critical. *In re Merritt Dredging Co. Inc.*, 839 F.2d at 205-06.

Selecting the appropriate choice of law rules requires the Court to analyze whether the present claim under section § 544(b) involves important federal bankruptcy policy. Fraudulent conveyance claims pursuant to § 544(b) refer to applicable state law. These claims are unique because they exist only to the extent of applicable state law. 11 U.S.C. § 544. Even so, such claims are not pendant state claims in federal bankruptcy cases, but are federal causes of action rooted in federal bankruptcy law and policy. *Southmark Corp. v. Crescent Heights VI, Inc. (In re Southmark Corp.)*, 95 F.3d 53, 53 n.7 (5th Cir. 1996).

Moreover, bankruptcy courts hear such claims as part of their duty to administer and enforce the Bankruptcy Code. *See Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 162-63 (1946). "[A] purpose of bankruptcy is to administer an estate as to bring about a ratable distribution of assets among the bankrupt's creditors." *Id.* at 161. "[T]he purpose of . . . avoidance provisions [such as § 544(b)] . . . is to prevent debtors from illegitimately disposing of property that should be available to their creditors." *See Palmer & Palmer, P.C. v. U.S. Tr. (In re Hargis)*, 887 F.2d 77, 79 (5th Cir. 1989).

In short, these claims are for the benefit of the bankruptcy estate and its creditors. *See* 11 U.S.C. § 551. Because these federal causes of action involve important federal bankruptcy law and policy, the Court concludes that federal choice of law rules should apply.

The Court's conclusion comports with the Fifth Circuit's holding in *Crist* as well as with the Second Circuit's holding in *Corporacion Venezolana de Fomento*, both affirmed by the Supreme Court. In *Crist*, the Fifth Circuit stated "[w]here disposition of a federal question

requires reference to state law, federal courts are not bound by a forum state's choice of law rules, but are free to apply the law considered relevant to the pending controversy." *Crist v. Crist (In re Crist)*, 632 F.2d 1226, 1229 (5th Cir. 1980) (citing 1A MOORE'S FEDERAL PRACTICE ¶ 0.325 (2d ed. 1979)), *cert. denied*, 454 U.S. 819 (1981) (applying federal choice of law rules). In *Corporacion Venezolana de Fomento*, the Supreme Court affirmed the Second Circuit's application of federal choice of law rules in a federal question case that was based on a statute giving a federal forum to nationally chartered banks. *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786 (2d Cir. 1980), *cert. denied*, 449 U.S. 1080 (1981). Although claims under § 544(b) refer to applicable state law, bankruptcy courts hearing such claims sit in federal question jurisdiction as a result of the Bankruptcy Code and are free to apply federal choice of law rules.

B. Defining Federal Choice of Law Rules

Federal choice of law rules dictate that the law of the state with the most significant contacts should apply. A court makes this determination by exercising its independent judgment.[1] *Vanston Bondholders*, 329 U.S. at 162. The independent judgment test or the most significant contacts test recommended by *Vanston* is "essentially synonymous with the 'most significant relationship' approach adopted by" the Restatement (Second) Conflict of Laws ("Restatement"). *In re Kaiser Steel Corp.*, 87 B.R. 154, 158 (Bankr. D. Colo. 1988).

---

[1] In *Vanston*, the Supreme Court stated:

> Obligations . . . often have significant contacts in many states so that the question of which particular state's law should measure the obligation seldom lends itself to simple solution. In determining which contact is the most significant in a particular transaction, courts can seldom find a complete solution in the mechanical formulae of conflicts of law. Determination requires *the exercise of an informed judgment* in the balancing of all the interests of the states with *the most significant contacts* in order to best to accommodate the equities among the parties to the policies of those states.

Subsection 2 of § 6 of the Restatement states the general principles for resolving conflict of law issues:

> When there is no [statutory] directive, the factors relevant to the choice of the applicable rule of law include:
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICTS § 6 (1971).

The comments to § 6 illuminate just what approach should be taken in evaluating these factors, particularly comment c. First, the factors listed are non-exhaustive. RESTATEMENT (SECOND) OF CONFLICTS § 6 cmt. c (1971). Second, the factors are not listed in any order of importance. Rather, different weight should be given to a particular factor or a group of factors depending on the areas of the choice of law. *Id.* Third, any choice of law rule is not necessarily a precise rule of law but rather "an accommodation of conflicting values." *Id.* Finally, there are:

> [C]hapters in the Restatement . . . which are concerned with choice of law [that] state the rules which the courts have evolved in accommodation of the factors listed . . . . In certain areas, as in parts of Property (Chapter 9), such rules are sufficiently precise to permit them to be applied in the decision of a case without explicit reference to the factors which underlie them . . . . In [other] areas, the courts must look in each case to the underlying factors themselves in order to arrive at a decision which will best accommodate them.

*Id.*

Here, the attempted avoidance action concerns a transfer of real property. This claim implicates areas in the Restatement that have precise choice of law rules that should be applied

---

*Vanston Bondholders*, 329 U.S. at 162 (1946) (emphasis supplied). "The goal of this analysis is to evaluate the various contacts each jurisdiction has with the controversy, and determine which [state]'s laws and policies are implicated to the greatest extent." *Koreag*, 961 F.2d at 350.

without explicitly referring to the principles in § 6. Areas implicated involve parts in Wrongs in Chapter 7 and Property in Chapter 9.

Plaintiffs contend that their claim sounds in tort and therefore, the Court should apply the Restatement's tort factors found in § 145[2] of Chapter 7 in deciding which state's substantive law should govern. COOB contends that because the subject transfer is for real property, the Restatement's property provision found in § 223[3] of Chapter 9 should apply.

For the purpose of completeness, the Court notes that although § 189 of Chapter 8 on Contracts is implicated, it is not applicable. The reason is because in the Restatement, there is a distinction in deciding choice of law issues as to the validity of contracts for the transfer of interests in land as opposed to the actual transfer of such interests in land by contracts. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 189 cmt. a (1971). As to the validity of a contract to transfer an interest in land, § 189 applies, while as to the actual transfer of property interests itself, § 223 applies. *Id.* Here, the subject transfer is for real property and the issue is

---

[2] Section 145 of the Restatement concerning Torts is entitled "General Principles" and states:
  (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
  (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
    (a) the place where the injury occurred,
    (b) the place where the conduct causing the injury occurred,
    (c) the domicil, residence, nationality, place of incorporation and place of business of the parties,
    (d) the place where the relationship, if any, between the parties is centered.
  These contacts are to be evaluated according to their relative importance with respect to the particular issue.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

[3] Section 223 of the Restatement is entitled "Validity and Effect of Conveyance of Interest in Land" and states:
  (1) Whether a conveyance transfers an interest in land and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs.
  (2) These courts would usually apply their own local law in determining such questions.
RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 223 (1971).

whether the transfer is fraudulent as to creditors. The validity of the underlying contract for the transfer of the property is not at issue.

C. Applying Federal Choice of Law Rules

Before deciding which particular factors should apply, the Court must first determine whether such an avoidance action for fraudulent conveyance of property under § 544(b) sounds in tort. In other words, the first step in applying federal choice of law rules is to determine how federal law would characterize such an action for choice of law purposes. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 7 cmt. f (1971).

The Supreme Court has not addressed this issue.[4] The Fifth Circuit has addressed this issue, but only by referring to the law of the forum state.[5] The Court defines how a fraudulent conveyance action in bankruptcy should be characterized without reference to any state law for purposes of applying federal choice of law rules. This is important because: (1) national bankruptcy policy is implicated from whatever characterization is made; and (2) "[t]he Constitutional requirement of geographic uniformity . . . is wholly satisfied when existing obligations of a debtor are treated alike [under applicable state law] by the bankruptcy administration throughout the country regardless of the State in which the bankruptcy court

---

[4] Defendants argue that the action is not based in tort using the Supreme Court's decision in *Granfinanciera*. In that case, the Supreme Court stated that fraudulent conveyance actions brought by bankruptcy trustees more resembled state-law contract claims as opposed to proofs of claims for the purposes of determining whether private or public rights were at issue and ultimately whether there was a Seventh Amendment right to a jury trial. *Granfinanciera v. Nordberg*, 492 U.S. 33, 56 (1989). As such, the Supreme Court's holding in *Granfinanciera* is inapposite.

[5] The Fifth Circuit stated that "in deciding how [a] matter should be characterized for conflict of laws purposes . . . the law of the forum should control" but disregarded whether federal or Florida's choice of law rules apply. *Fahs v. Martin*, 224 F.2d 387, 396-99 (5th Cir. 1955) (reviewing a federal question case on appeal regarding a bankruptcy trustee's successful recovery against the Internal Revenue Collector for the State of Florida). *See also ASARCO LLC v. Americas Mining Corp.*, 382 B.R. 49 (S.D. Tex. 2007) (referring to the law of the forum state of Texas to characterize a § 544 bankruptcy claim for fraudulent transfer but only after deciding Texas choice of law rules apply).

sits."[6] *Vanston Bondholders*, 329 U.S. at 172-73 (Frankfurter, J., with Jackson and Burton, JJ., concurring) (citing *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 190 (1902)).

The Court finds useful the opinion from the District Court in the Western District of Virginia in *Terry v. June* regarding characterization:

> Classification of fraudulent conveyance is not a completely straightforward matter. On the one hand, a claim of fraudulent conveyance resembles an action in tort in that the ultimate issue is not whether the conveyance from grantor to grantee was formally valid as a matter of property law, but whether it was done for the purposes of defrauding one's creditors. Many courts and a number of leading commentators have agreed with this approach and have classified these claims as sounding in tort. On the other hand, a number of courts have rejected this tort characterization, holding that fraudulent conveyance claims sound in equity because they seek the equitable remedy of voiding a conveyance rather than damages .... Fraudulent conveyance goes beyond the questions of property law since such a conveyance is "valid between the parties, and in fact as to the whole world, except those within the protection of the statutes." Such a conveyance, in fact, is valid even as to creditors until they seek protection provided by law. The purpose of a fraudulent conveyance claim is not to determine whether the transfer was void *ab initio*, but rather, it is to determine whether the debtor's actions amounted to a fraud on a creditor, allowing him to recover property notwithstanding its transfer. The focus of the improper and fraudulent character of the debtor's conduct and the injury caused to his creditors

---

[6] The Court bears in mind what Justice Frankfurther wrote in his concurring opinion in *Vanston* on the prospect that a claim that is unenforceable under the law of the forum state, would be treated differently depending on whether the defense is raised in a state or a federal court, e.g. bankruptcy court, of the forum:

> To establish uniform laws of bankruptcy does not mean wiping out the differences among the forty-eight States in their laws governing commercial transactions. The Constitution did not intend that transactions that have different legal consequences because they took place in different states shall come out with the same result because they passed through a bankruptcy court. In the absence of bankruptcy such differences are the familiar results of a federal system having forty-eight diverse codes of local law. These differences inherent in our federal scheme the day before a bankruptcy are not wiped out or transmuted the day after.

*Vanston Bondholders*, 329 U.S. at 172-73 (Frankfurter, J., with Jackson and Burton, JJ., concurring). Fraudulent conveyance claims under § 544(b) are federal causes of action and present a different matter. Even though these claims refer to applicable state law, their characterization for purposes of applying federal choice of law rules should not vary according to where the bankruptcy court sits or to how the law of the forum state characterizes such actions. Rather, characterization, as the first step in applying choice of law rules, is a determination preceding the application of any state law. Uniformly characterizing claims under § 544(b) does not eliminate any underlying differences among state laws as to certain transactions because characterization is simply an overlay on any state law analysis. *See Fahs v. Martin*, 224 F.2d 387, 396 (5th Cir. 1955) (citation omitted) (stating that in deciding federal law matters, national uniformity regardless of forum is more important of an objective than uniformity of result between any two forums when considering choice of law principles).

places these claims most appropriately in tort law. These claims will therefore be treated as sounding in tort for choice of law purposes.

*Terry v. June*, 420 F.Supp. 2d 493, 502-03 (W.D. Va. 2006) (citations omitted) (deciding character of fraudulent conveyance claim as a matter of first impression under Virginia's choice of law rules).

COOB cites to cases that have found avoidance actions for fraudulent conveyances as sounding not in tort. In those cases, the underlying reasoning is exemplified by the following passage:

> [Such conveyances are] but one of the two kinds which are deemed fraudulent by the operation of statute. Both kinds are simply acts which are voidable at the behest of a creditor as a result of the statutory declaration. Whichever pattern the debtor may choose, the relief sought by the creditor is the same; to undo the transfer of title so as to bring within the ambit of execution those assets upon which the creditor is rightly entitled to levy. The fraud, such as it is, is only incidental to the right of the creditor to follow the assets of the debtor and obtain satisfaction of the debt. The gravamen of the cause of action in the case at bar is the ordinary right of a creditor to receive payment; this right has been implemented by the protection of legislation concerning the circumstances under which the creditor may avail himself of assets which the debtor has transferred to others.

*U.S. v. Franklin Nat'l Bank*, 376 F. Supp. 378, 382 (E.D.N.Y. 1973).

Although it may be true that the "gravamen of the cause of action . . . is the ordinary right of a creditor to receive payment," a claim under § 544(b) does not stop there because its purpose does not stop there. At this juncture, it is wise to recall what such a claim is under § 544(b).

Under § 544(b), "the trustee may avoid *any* transfer of an interest of the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544 (emphasis supplied). A claim under § 544(b) allows a trustee in bankruptcy to step into the shoes of a creditor holding an unsecured claim and void transfers that are voidable under applicable state law. Transfers voidable may not just be those that would be sufficient, or in

those amounts that would be sufficient, to satisfy such creditor's claim, i.e. not just in "satisfaction of the debt" owed to such creditor. Thus, although it may be that the creditor's ordinary right to receive payment gives birth to such a claim and may be characterized as the "gravamen" of such a claim, the creditor's ordinary right to receive payment does not define the limits of such a claim.

What defines the limits of such a claim? It is the Bankruptcy Code. The available recoveries and liabilities for an avoided transfer under § 544(b) designated in § 550 are telling. In § 550, the trustee may recover for the benefit of the estate, the property transferred or the value of the property. 11 U.S.C. § 550. The latter option for recovery allows the trustee to avoid the *effects* of such a property transfer as to the bankruptcy estate by recouping its value; this is done without ever invalidating or otherwise affecting the actual transfer itself. Additionally, the trustee has a choice between recovering from the initial transferee or from the entity for whose benefit such transfer was made, or from any immediate or mediate transferee of such transferee, except from a bona fide purchaser without notice. 11 U.S.C. § 550(a). These options available to the trustee exceed and are unlike any of those available to a creditor just with the ordinary right to receive payment.[7] The reason is because such a claim under § 544(b) exists to further federal bankruptcy policy.

---

[7] Defendants cite to *Casey* for the proposition that because avoidance actions are limited to those remedies in § 550, avoidance actions are not torts because those remedies are unlike those available in tort actions. In *Casey*, debtors requested affirmative recovery that was beyond the value of the subject property for claims under § 548 of the Bankruptcy Code, § 51.003 of the Texas Property Code, and the Texas Fraudulent Transfer Act. *Casey v. Nationsbank of Tex. (In re Casey)*, 173 B.R. 581, 585 (Bankr. E.D. Tex. 1994). Debtors claimed damages for loss of equity, loss of past and future rental income, loss of properties due to bankruptcy, damages to credit, financial and business reputation, excess interest expense due to inability to refinance properties, mental anguish, and attorneys' fees. *Id.* at 583. The bankruptcy court denied such damages, but nowhere did the bankruptcy court make a determination as to characterization for choice of law purposes and nowhere did it preclude characterizing avoidance actions as sounding in tort because of § 550's prescription of remedies. *Id.* at 586.

By looking to the recoveries and liabilities available under § 550 for avoidance actions, it is clear that the central focus is to protect the bankruptcy estate and its creditors from injury. As a reminder, "a purpose of bankruptcy is to administer an estate as to bring about a ratable distribution of assets among the bankrupt's creditors." *Vanston Bondholders*, 329 U.S. at 161. "[T]he purpose of the Bankruptcy Code's avoidance provisions . . . is to prevent debtors from illegitimately disposing of property that should be available to their creditors." *See Palmer & Palmer*, 887 F.2d at 79. Claims under and recoveries pursuant to § 544(b) seek to achieve these goals by rewinding injuries caused to the bankruptcy estate and its creditors by fraudulent conveyances. As such, avoidance actions under § 544(b) are appropriately characterized as tort actions. As actions that sound in tort, § 145 of the Restatement should apply in determining conflict of law issues. RESTATEMENT (SECOND) OF CONFLICTS § 145 (1971).

COOB argues that such actions do not sound in tort, and that § 223 of the Restatement should apply. COOB also asserts that in applying § 223, Ohio substantive law would apply because it is the law of the situs of the property. To clarify, § 223 states that the law to be applied would be the law applied by the courts of the situs; this does not necessarily mean that the law of the situs would always apply, even though this is usually the case. RESTATEMENT (SECOND) OF CONFLICTS § 223 (1971). COOB's argument assumes that Ohio courts, as courts of the situs, would apply Ohio substantive law. More specifically, the Court surmises that COOB's argument is that federal bankrupty courts in Ohio, as those Ohio courts with appropriate jurisdiction over such § 544(b) avoidance actions, would apply Ohio substantive law.

Without diving into an unnecessary analysis of the 6th Circuit's choice of law rules as to avoidance actions under § 544(b), an analysis of § 223 is sufficient. If § 223 were to apply, more than just the interests of the state where the property resides could be relevant. Section 223

recognizes that there are situations where applying the law of a state other than that of the situs would be appropriate when the other state has a dominant interest in the issue at hand. RESTATEMENT (SECOND) OF CONFLICTS § 223 cmt. b (1971).

COOB argues properly that Ohio has a high interest in matters relating to its land. However, this attempted avoidance action concerns more than Ohio's interests in controlling the use or possession of its land, or in certainty, predictability and uniformity relating to transfers of interests in its land. This action alleges injury to a bankruptcy estate and its creditors as a result of an alleged fraudulent conveyance of land, where the subject piece of property "is one item in an aggregate of things, . . . [and] is desirable to deal with as a unit." RESTATEMENT (SECOND) OF CONFLICTS § 223 cmt. b (1971); *In re French*, 440 F.3d 145, 154 (4th Cir. 2006) (citation omitted).

The Court's reading of § 223 is consistent to the Introductory Note to § 223 as well as to § 222. The Introductory Note to § 223 states:

> In most instances, the courts of the situs would decide the case in accordance with their own local law. They would do so for sentimental and historical reasons as well as for reasons of certainty and convenience and for the sake of their title recording systems.
>
> . . . .
>
> . . . .
>
> . . . There will also be situations where the demands of certainty and the needs of a title recording system are not as pressing as are other demands. Thus, questions relating to marital property interests of spouses, either upon divorce or at death, may be of greater concern to the state of domicil of the spouses than to the situs, and in such cases the situs courts might defer to the views of the domicil. *A similar view might be taken by the situs courts with respect to the allocation of interests in land in other relationships . . . , such as . . . debtor and creditor, where regulation of the relationship is of greater concern to a state other than the situs and particularly when land is part of an aggregate of property which it is desirable to deal with as a unit.*

RESTATEMENT (SECOND) OF CONFLICTS ch. 9, topic 2, introductory note (1971) (emphasis supplied). While as a general rule the state law of the situs would apply to conveyances for interests in land, there are recognized exceptions.

In this case, a trial would be required to determine whether Ohio would apply Ohio or Texas substantive law. An Ohio court would need to consider whether the bankruptcy claim would predominate. Regulation of the relationship between debtor and creditor may be of greater concern to the state of Texas than to the state of Ohio. For example, Texas was the place where the transaction was executed. Also, if pursuant to § 550, the Court orders recovery in the form of the value of the transfer, rather than the property itself, there would be little effect, if any, to Ohio's interest in "certainty and convenience and . . . [its] title recording systems." Ohio's interest would be minimized.

Section 222 states the overall principle for determining conflict of law issues as to property. It states that "[t]he interests of the parties in a [property] are determined by the 'law' . . . of the state which, with respect to the particular issue, has the most significant relationship to the [property] and the parties under the principles stated in § 6." RESTATEMENT (SECOND) OF CONFLICTS § 222 (1971). In other words, the principles in § 6 of the Restatement guide any determination of a conflict of law issue in property matters. For the same exemplary facts above, Texas may be the state with the most significant relationship to the alleged fraudulent conveyance.

In short, even under COOB's own argument for applying § 223, COOB does not carry its summary judgment burden that there is no genuine issue of material fact that Ohio substantive law would apply. After analyzing § 223 in the context of its Introductory Note and § 222, applying § 223 could ultimately arrive at the conclusion that Texas substantive law should apply.

## V. Conclusion

Federal choice of law rules apply to avoidance actions under § 544(b). These actions sound in tort. Section 145 of the Restatement applies in determining whether Texas or Ohio substantive law should govern.

Section 145 refers to the principles under § 6, stating that the law of the state with the most significant relationship to the particular substantive issue, as to the occurrence and the parties, should apply. In applying the principles of § 6, subsection 2 of § 145 specifically states that the:

> Contacts to be taken into account . . . include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

COOB presents insufficient evidence to meet its summary judgment burden that Ohio substantive law would apply under § 145. COOB argues that at the time of the transfer, COOB's principal place of business was in Ohio, COOB's registered agent for service of process was in Ohio, and the subject property is located in Ohio. However, Plaintiffs present more than enough evidence that there is a material issue of fact as to whether Texas has the most significant relationship to the alleged fraudulent conveyance.

For example, Plaintiffs point out that COOB is owned and managed by Texas residents. Plaintiffs also highlight that COOB used a Texas mailing and business address for its filing receipt for its Ohio partnership certificate as well as on the warranty deed from Debtor Bahar. Plaintiffs indicate that Debtor Bahar is a Texas corporation whose officers are Texas residents.

Viewing all facts in the light most favorable to Plaintiffs, the Court finds that there is at least a material issue of fact under § 145 as to whether Texas has the most significant relationship to the alleged fraudulent conveyance. COOB's Motion for Partial Summary Judgment is denied. A separate order will be issued.

Signed at Houston, Texas, on November 24, 2008.

MARVIN ISGUR
United States Bankruptcy Judge