## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CYRUS II PARTNERSHIP, | § | (Chapter 7) |
| BAHAR DEVELOPMENT, INC., | § | Jointly Administered |
| and MONDONA RAFIZADEH, | § | CASE NO. 05-39857-H1-7 |
| | § | |
| Debtors. | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| RODNEY D. TOW, AS THE CHAPTER | § | |
| TRUSTEE FOR CYRUS II, L.P., *ET AL.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADVERSARY NO. 07-03301 |
| | § | |
| SCHUMANN RAFIZADEH, *ET AL.,* | § | |
| | § | |
| Defendants. | § | |

## ORIX CAPITAL MARKETS, LLC, FRIZELL GROUP INTERNATIONAL, INC.'S, AND FRIZELL GROUP INTERNATIONAL, LLC'S MOTION FOR SUMMARY JUDGMENT
### [Related to Docket No. 933]

Counterclaim Defendant ORIX Capital Markets, LLC ("ORIX"), and Third-Party Defendants Frizell Group International, Inc., and Frizell Group International, LLC (the Frizell entities are collectively "FGI"), move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the affirmative claims for relief Counter-Plaintiff and Third-Party Plaintiff Schumann Rafizadeh ("Rafizadeh") has asserted against them.  In support thereof ORIX and FGI respectfully show the Court as follows:

# I.  SUMMARY OF THE MOTION

Rafizadeh brought a Counterclaim and Third Party Claim against ORIX and FGI on April 8, 2008, alleging trespass, conversion, intentional infliction of emotional distress ("IIED"), invasion of privacy, and conspiracy.[1]   On October 3, 2008, Rafizadeh filed an Amended Counterclaim (the "Counterclaim(s)").[2]

Rafizadeh's responses to written discovery and his deposition testimony conclusively reveal that Rafizadeh's claims are nothing more than an attempt to harass and annoy ORIX and FGI.  This Court should grant this Motion for Summary Judgment in its entirety because: (1) Texas' two-year statute of limitations bars Rafizadeh's claims; (2) Rafizadeh acknowledges there is no evidence that he has suffered any damage or injury; (3) there is no evidence to support essential elements of each of Rafizadeh's claims; (4) recovery for IIED is not available as a matter of law; and (5) there is no evidence of an independent tort on which liability for conspiracy could be based.

As ORIX and FGI have maintained from the start, Rafizadeh brought this baseless, retaliatory, and costly Counterclaim as part of his multi-pronged counteroffensive strategy designed to avoid paying the multimillion dollar fraud judgment ORIX obtained on behalf of the MLMI Trust against Rafizadeh's wife and affiliated companies.[3]   Rafizadeh's relentless pursuit of these time barred claims, despite his acknowledgement that he has no supporting evidence and has suffered no injury, confirms that his Counterclaim exists for a purpose other than remedying any alleged wrongs.  Rafizadeh's obvious intent is to use the Counterclaim in an attempt to

---

[1]  *See* Docket 511.

[2]  *See* Docket 933.

[3]  On December 23, 2004, in a scathing opinion, the court awarded the MLMI Trust a judgment of more than $10 million against Mondona Rafizadeh, Cyrus II, and Bahar Development, Inc., finding monetary default, waste, and fraud (the "Fraud Judgment").  *See infra* II, B.

create some form of leverage against the Trustee and ORIX's efforts to obtain satisfaction of the Fraud Judgment, and to simply harass ORIX and FGI—both improper motives.

## II.   UNDISPUTED FACTS

### A.   The MLMI Trust

1.      In contrast to the conventional commercial real estate lending environment (in which lenders underwrite and originate commercial mortgage loans that they then hold for investment and/or sale as whole loans), in a typical CMBS transaction (such as MLMI), after the loan is funded it is sold to a special purpose, bankruptcy-remote entity (such as the MLMI Trust) that qualifies as a pass-through entity for tax purposes.[4]   The Trust purchases the loan (along with many other loans which together form a large, diversified pool of loans) using proceeds received through the issuance of certificates that are purchased by investors.[5]

### B.   This Case is Really About the Fraud Judgment on the Arlington Apartments Loan.

2.      On July 6, 1999, Cyrus, a Louisiana partnership, executed a Promissory Note in the amount of $6.4 million dollars through its general partner, Bahar (the "Note").[6]   This Note was secured by a Mortgage, which encumbered the Arlington Apartments in Harvey, Louisiana (the "Property").[7]   ORIX acted as both Master and Special Servicer of the MLMI Trust and Wells Fargo was the Trustee.[8]

---

[4]   *See* DECLARATION OF JOHN DINAN ("Dinan Dec.") at ¶ 2 attached hereto as *Exhibit A* ("*Ex. A*") and incorporated herein by reference.

[5]   *Ex. A*, Dinan Dec. at ¶ 3.

[6]   *See* the December 23, 2004 Reasons for Judgment entered in *Cyrus II Partnership v. ORIX Capital Markets, L.L.C., et al.*, 24th Judicial District Court for the Parish of Jefferson, State of Louisiana ("Reasons for Judgment") attached hereto as *Exhibit B* ("*Ex. B*") and incorporated herein by reference.

[7]   *See Ex. B*, Reasons for Judgment at 1–2.

[8]   *Ex. A*, Dinan Dec. at ¶ 8; *Ex. B*, Reasons for Judgment at 1, n. 1.

3.      On March 14, 2002, ORIX, on behalf of the MLMI Trust and in the name of the Trustee, Wells Fargo, brought suit to foreclose upon the Property due to payment default, waste, and fraud.[9]  The Louisiana court conducted a four-day trial in July 2004.[10]

4.      On December 23, 2004, the Louisiana court entered judgment for ORIX and Wells Fargo, on behalf of the MLMI Trust, in the amount of $10,893,350.96 (plus per diem interest of $2,277.47 from July 26, 2004 through December 29, 2004), which included accelerated prepayment of the mortgage, yield maintenance fees, and interest to accrue at the rate of 13.05% per annum until the judgment is paid in full[11] in favor of the MLMI Trust and against Cyrus, Bahar, and Mondona Rafizadeh.[12]  The court found that Cyrus and Mondona Rafizadeh committed fraud at the inception of the Mortgage and that Cyrus committed waste of the Property.[13]  The Reasons for Judgment detail other unsavory and illicit conduct with respect to the Arlington loan and Arlington Apartments.[14]

5.      On June 27, 2005, two days before the MLMI Trust was to present evidence at a Preliminary Injunction hearing related to its efforts to collect upon the Fraud Judgment, Cyrus, Mondona Rafizadeh and Bahar filed bankruptcy petitions in the Southern District of Texas.[15]

6.      As this Court is well aware, ORIX's efforts to collect upon the Fraud Judgment continue, including this adversary proceeding the Bankruptcy Trustee and ORIX (on behalf of the MLMI Trust) filed against Schumann Rafizadeh and related persons and entities alleging that

---

[9]  *Ex. B*, Reasons for Judgment at 10–17.

[10]  *Ex. B*, Reasons for Judgment at 2.

[11]  *Ex. B*, Reasons for Judgment at 24–27.

[12]  *Ex. B*, Reasons for Judgment at 10–17.

[13]  *Ex. B*, Reasons for Judgment at 6–9, 13, 21.

[14]  *See id.*

[15]  *Ex. A*, Dinan Dec. at ¶ 9.  The bankruptcies are styled *In re Cyrus II Partnership, In re Bahar Development, Inc., and In re Mondona Rafizadeh*, Case Nos. 05-39857, 05-39858 & 05-39859, (Bankr. S.D. Tex.) (June 27, 2005) (jointly administered under Case No. 05-39857).

they have executed a systematic and calculated scheme to defraud creditors through sham financial transactions, employing an ever-expanding interconnected web of disposable entities, family members, nominees and imaginary insider debts.[16]

## C.    Rafizadeh's Counterclaim and Third-Party Complaint

7.      On April 8, 2008, Rafizadeh filed the Counterclaim against ORIX and FGI for trespass, conversion, intentional infliction of emotional distress, invasion of privacy and conspiracy.[17]   Rafizadeh filed a slightly amended Counterclaim (the Amended Counterclaim is referred to as the "Counterclaim") on October 3, 2008.[18]   Rafizadeh alleges that, in connection with its collection efforts, ORIX employed FGI to utilize "illegal" "CIA techniques" to "trespass on his property," "take items from Mr. Rafizadeh's property," "make pretextual telephone calls," and engage in "vehicular tailing designed to intimidate, harass, and cause emotional injuries."[19] Rafizadeh also claims that ORIX and FGI "conspired to cause intentional infliction of emotional distress, to further invade Mr. Rafizadeh's privacy and trespass."[20]

8.      The Counterclaim alleges that "Mr. Rafizadeh has suffered actual damages by the economic and emotional devastation to him and his family."[21]   According to the Counterclaim, ORIX and FGI's "intentional harassment" has caused "Mr. Rafizadeh to lose sleep, lose business opportunities, and cause emotional distress."[22]   The alleged lack of sleep and stress, in turn

---

[16]  *Ex. A*, Dinan Dec. at ¶ 10.

[17]  *See* Docket 511.

[18]  *See* Docket 933.

[19]  *See id*. at 49–51.

[20]  *Id*. at 49–50.

[21]  *Id*. at 51.

[22]  *Id*.

caused "heightened blood pressure," "stress," "loss of concentration and profitability and enjoyment of life."[23]

9.      On April 29, 2008, ORIX and FGI answered, denying Rafizadeh's allegations.[24]

10.     On June 25, 2008, Rafizadeh served his Responses and Objections to FGI's First Set of Request for Interrogatories.[25]  In the Interrogatory Responses, Rafizadeh was requested to identify the factual basis of each of his allegations.[26]

11.     On October 1, 2008, ORIX and FGI filed Amended Answers.[27]

12.     On October 3, 2008, Rafizadeh filed his Amended Counterclaim.[28]

13.     On October 23, 2008, ORIX and FGI answered the Amended Counterclaim, denying Rafizadeh's allegations.[29]

14.     On November 19, 2008, at Rafizadeh's deposition, ORIX and FGI demanded that he explain the facts supporting his allegations.[30]  Rafizadeh conceded in his testimony facts that establish a limitations defense as a matter of law.[31]  He was also unable to articulate or present any credible evidence of injury or damage he claims to have suffered as a result of the alleged conduct of ORIX or FGI outlined in the Counterclaim.[32]

---

[23]  *See also* Schumann Rafizadeh's Responses and Objections to Frizell Group International, Inc. and Frizell Group International LLC's First Set of Requests for Interrogatories (hereinafter "Interrogatory Responses") attached as *Exhibit C* ("*Ex. C*") and incorporated herein by reference at No. 9.

[24]  *See* Docket No. 551, ORIX's Answer; and Docket No. 552, FGI's Answer.

[25]  *See Ex. C*, Interrogatory Responses.

[26]  *Ex. C*, Interrogatory Responses at No. 1.

[27]  *See* Docket No. 926, ORIX's First Amended Answer and Docket No. 925, FGI's First Amended Answer.

[28]  *See* Docket 933.

[29]  *See* Docket No. 959, ORIX's Second Amended Answer and Docket No. 960, FGI's Second Amended Answer.

[30]   *See* the November 2008 deposition of Schumann Rafizadeh attached hereto as *Exhibit D* ("*Ex. D*") and incorporated herein by reference.

[31]  *See* discussion *infra* Section II.A.

[32]  *See* discussion *infra* II.C.

## III.    ARGUMENT AND AUTHORITIES

15.    Rafizadeh's claims are barred by the applicable statutes of limitations.  The evidence conclusively proves that his claims, if any, accrued more than two years before Rafizadeh filed his Counterclaim.

16.    Further, Rafizadeh is unable or unwilling to produce any evidence of injuries or damages caused by ORIX or FGI.  The summary judgment record, therefore, is devoid of any evidence of an essential element of Rafizadeh's claims – that he has suffered injury by reason of any of the alleged conduct.

17.    Finally, there is no evidence to support multiple essential elements of each of Rafizadeh's substantive claims.

### A.    The Summary Judgment Standard

18.    Rule 56 "'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Beard v. Banks*, 548 U.S. 521, 530 (2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).

19.    The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.  At all times, a court views the facts in the light most favorable to the non-moving party.  *Rodriguez v. ConAgra Grocery Prods., Co.*, 436 F.3d 468, 473 (5th Cir. 2006).  A court is not obligated, however, to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

20.     When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings.   The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004).  This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence."  *Young v. ExxonMobil Corp.*, 155 Fed. Appx. 798, 800, 2005 WL 3211198 ((5th Cir.(La.) Nov 30, 2005).

**B.     Texas' Two-Year Statute of Limitations Bars Rafizadeh's Claims.**

21.     The purposes and policies underlying limitations periods are well established.  The primary reason for requiring the litigation of claims within a specified period is to "compel the exercise of a right of action within a reasonable time so that the opposing party has fair opportunity to defend, while witnesses are available and the evidence is fresh in their minds."  *Price v. Anderson's Estate*, 522 S.W.2d 690, 692 (Tex. 1975).  Similarly, the limitations period serves to ensure that parties receive fair notice of a potential claim and can act in reasonable reliance that conduct beyond the specified period will no longer form the basis for litigation.  *See Hallaway v. Thompson*, 226 S.W.2d 816, 820 (Tex. 1950).  By bringing stale claims based on alleged conduct that clearly cannot form the basis for liability findings, Rafizadeh attempts to nullify the salutary effects of the statute of limitations.

22.     The statute of limitations for each of Rafizadeh's claims is two years from the date the cause of action accrues.  TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986).  The cause of action for trespass accrues when the entry upon the land is made.  *Hickman v. Ferguson*, 164 S.W. 1085, 1087 (Tex. Civ. App.—Austin 1914, writ ref'd).  A conversion claim

accrues at the time of the allegedly unlawful taking.  *Rogers v. Ricane Enters., Inc*., 930 S.W .2d

157, 166 (Tex. App.—Amarillo 1996, writ denied).   The statute of limitations for intentional

infliction of emotional distress is two years.  *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 616

(Tex. 1999); *Bhalli v. Methodist Hosp*., 896 S.W.2d 207, 211 (Tex. App.—Houston [1st Dist.]

1995, writ denied).   The statute of limitations for invasion of privacy is two years.  *Stevenson v.

Koutzarov*, 795 S.W.2d 313, 319 (Tex. App.—Houston [1st Dist.] 1990, writ denied)

(categorizing an action for invasion of privacy as a personal-injury action under TEX.CIV.PRAC.

& REM.CODE ANN. § 16.003(a)); *see also Collins v. Collins*, 904 S.W.2d 792, 804 (Tex. App.—

Houston [1st Dist.] 1995, writ denied).

23.     Although false, even assuming that FGI unlawfully trespassed on Rafizadeh's

property, or converted Rafizadeh's trash or otherwise committed the alleged conduct, his causes

of action are time barred.   Rafizadeh concedes that his counsel, Mr. Hugh Ray, sent a letter to

ORIX in September 2005, complaining about FGI and stating, "The private eye has gone through

their garbage, and waited outside all day and all night."[33]   Rafizadeh admits that he was copied

on the letter and that he was aware of the facts referenced in Mr. Ray's September 2005 letter at

the time it was sent.[34]   He also acknowledges that the facts and complaints set out in the

September 2005 letter are the same allegations Rafizadeh now asserts in the Counterclaim.[35]

This alleged conduct was the subject of specific interrogatories directed to Rafizadeh:

---

[33]  *See Ex. D*, Rafizadeh Depo. at 77–81; Mr. Ray's 2005 letter, Exhibit 1 to the Rafizadeh Depo., is attached hereto as *Exhibit E* ("*Ex. E*") and incorporated herein by reference.

[34]  *See id*.

[35]  *Ex. C*, Interrogatory Responses at No. 4 and 5; *see also Ex. D*, Rafizadeh Depo. at 81, ll. 13–16.  Mr. Rafizadeh also mentions the trash pulls indicated in FGI's invoices dated 2005.  Those invoices dated May of 2002 to January 2005 are attached hereto as *Exhibit F* ("*Ex. F*") and incorporated herein by reference.  *See also Ex. D*, Rafizadeh Depo. at 32–36 (When asked when his alleged high blood pressure, lack of concentration, and sleep problem began, Mr. Rafizadeh explained that all his problems began "about three years" ago, after he claims to have seen Frizell sitting across from his house and reviewing the Jones Walker and Winstead invoices.); *Ex. D*, Rafizadeh Depo. at 86, ll. 18–23 (Mr. Rafizadeh believes ORIX or FGI was knocking on his children's windows in September 2005.)

**INTERROGATORY NO. 4:**   Explain with specificity the factual basis for your allegations that FGI trespassed on Mr. Rafizadeh's land as alleged in Paragraph 534 of Your Counterclaim and Third-Party Claim.   In answering, identify all individuals who trespassed, when the trespassed occurred, where the trespass occurred, and any actions taken by Mr. Rafizadeh in response to the trespass.

RESPONSE: Mr. Rafizadeh objects to this Interrogatory to the extent that it calls for a legal conclusion and invades the province of the judge and jury in this case.   Mr. Rafizadeh further objects to this Interrogatory because it calls for information that is in the care custody and control of FGI.   Because FGI continues to withhold information, FGI is frustrating the discovery process.   Without waiving the foregoing objection, see Responses to Interrogatories 1(1), (2), (3), and (4) herein.   Additionally, Mr. Rafizadeh's minor children, who were 14 at the time, said they saw a person looking through bedroom windows in September, 2005, and this person knocked multiple times on the windows.   As mentioned above, Orix and/or FGI had agents leave business cards taped to windows and they walked past "No Trespassing" signs.   The Rafizadeh Family routinely saw other people on their property despite the existence of "No Trespassing" signs posted in plain view at the entrance.   Mr. Rafizadeh did not consent to any of these persons' entry upon the premises past the front gate and fence.

**INTERROGATORY NO. 5:**   Explain with specificity the factual basis for your allegations that FGI became more intrusive by following Mr. Rafizadeh, taking property from his land, and trespassing upon his land as alleged in Paragraph 534 of Your Counterclaim and Third-Party Claim.   In answering, specifically identify all actions that FGI took that were intrusive to Mr. Rafizadeh, what property was taken from Mr. Rafizadeh's land, where the property was located on Mr. Rafizadeh's land, who took the property from Mr. Rafizadeh's land, and when the property was taken from Mr. Rafizadeh's land.

RESPONSE: Mr. Rafizadeh objects to this Interrogatory to the extent that it calls for a legal conclusion and invades the province of the judge and jury in this case.   Mr. Rafizadeh further objects to this Interrogatory because it calls for information that is in the care custody and control of FGI.   Because FGI continues to withhold information, FGI is frustrating the discovery process.   Without waiving the foregoing objection, see Responses to Interrogatories 1(1), (2), (3), and (4), and 4 herein.   FGI engaged in surveillance of the Rafizadeh Family on a 24 hour, 7 day a

week basis.   This activity worsened in intensity and conspicuousness after Orix's counsel received a letter from Mr. Hugh M. Ray, III (counsel for the Rafizadeh Family) demanding that FGI cease and desist their illegal, wrongful, and harassing actions, and noting that :

> Mondona tells me that a P.I. is outside her home 24/7.   The Trustee confirmed that Winstead and Orix are responsible for this.   The private eye has gone through their garbage, and waited outside all day and all night.   Mondona believes that Winstead is attempting to do more than "investigate" her.   So do I.
>
> Apparently, either you or your client has placed Mondona under not-so-subtle surveillance in an attempt to encourage her to pay the prepetition debt to Orix.   This is not to say you have no right to investigate the Debtor - just that you have no right to follow her every move to harass her.
>
> This is very serious.   The attempt to pressure Mondona (and her children, who are just old enough to be threatened and just young enough not to accept this threat well) is bad for her already frail mental health and, frankly, sleazy.

24.     As evidenced by Rafizadeh's interrogatory responses and deposition testimony, his allegations with regard to his IIED claims are also based upon the actions complained of in Mr. Ray's 2005 letter.[36]

25.     Rafizadeh's allegations with regard to his invasion of privacy claim (except for the wiretapping allegation for which there is no evidence)[37] also arise from actions that occurred more than two years before Rafizadeh filed the Counterclaim on April 8, 2005.[38]

26.     Although his counsel sent ORIX a letter in September of 2005 regarding the conduct about which he now complains, Rafizadeh did not file the Counterclaim until April 8, 2008, seven months after the statute of limitations had run.

**C.     There is No Evidence to Support Essential Elements of Rafizadeh's Substantive Claims.**

   **1.     Rafizadeh Has No Evidence of Harm or Damage.**

27.     The undeniable truth that has surfaced through the eight-month discovery process is that Rafizadeh has suffered no injury or damage as a result of ORIX's and FGI's alleged wrongful actions.   "[A] defendant may prevail on a motion for summary judgment where the plaintiff fails to provide evidence of damages, especially where damages are an essential element of a cause of action."   *Maier-Schule GMC, Inc. v. General Motors Corp.*, 154 F.R.D. 47, 56 (W.D.N.Y. 1994).   *See also Templet v. Hydrochem Inc.*, 367 F.3d 473, 481 (5th Cir. 2004) (affirming grant of summary judgment for plaintiffs' failure to establish that they suffered any damages); *WRR Indust., Inc. v. Prologis*, 2006 WL 1814126 (N.D. Tex. 2006) (granting summary judgment on conversion claim because plaintiff had failed to create a genuine issue of

---

[36] *Ex. C*, Interrogatory Responses at No. 8; *see also Ex. D*, Rafizadeh Depo. at 32–36, 86, ll. 18–23.

[37] *See infra* Section II.C.3.

[38] *Ex. C*, Interrogatory Responses at No. 1.   The FGI invoices Mr. Rafizadeh references are dated from May of 2002 to January of 2005.   *See Ex. F.   See also* Mr. Ray's 2005 letter, *Ex. E*.

material fact as to damages); *Wilen v. Falkenstein*, 191 S.W.3d 791, 797-98 (Tex. App.—Fort Worth 2006, pet. den'd) (holding that the defendant's trespass must cause damage); *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997) (the plaintiff must suffer injury to recover for conversion); *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000) (the plaintiff must suffer sever emotional distress because of defendant's intentional or reckless actions). The summary judgment record demonstrates that no genuine issue of material fact exists as to the lack of injury and damages Rafizadeh allegedly suffered, a fatal flaw to his causes of action.

28.     Rafizadeh's inability to support his damage allegations with any evidence mandates a summary judgment. *Draft-Line Corp. v. Hon Co.*, 781 F.Supp. 841, 846 (D.P.R. 1991) (granting summary judgment on damages claim because plaintiff "produce[d] absolutely no evidence in its opposition to defendants' motion for summary judgment"); *Zirn Labs. Int'l, Inc. v. Mead-Johnson & Co.*, 208 F.Supp. 633, 636 (E.D. Mich. 1962) (granting summary judgment on damages claim when plaintiff's president testified that his damages claim was based on "nothing more than [his] feeling."). The summary judgment record establishes unequivocally that there exists no genuine issue of material fact as to Rafizadeh's damages because Rafizadeh has suffered no damages. Rafizadeh produced no documents quantifying his damages, he could not articulate or quantify his claimed damages at his deposition and his written discovery responses confirm no evidence exists to establish this key element in each of Rafizadeh's claims.

29.     In its interrogatories, FGI requested that Rafizadeh identify any and all evidence of injury, including information relating to all physicians, surgeons, chiropractors, osteopaths, psychiatrists, physiologists, or other practicing members of the healing arts or hospitals, pharmacies or other institutions who have rendered medical treatment or furnished medicines,

drugs or supplies to Rafizadeh for any injuries or pain resulting from FGI's alleged conduct.[39] Rafizadeh responded by stating, "All records of medical treatment that would respond to this request are being made available as they are kept in the ordinary course of business. Thus, the answer to this interrogatory is more easily answered by documents produced."[40] Then, as expected, Rafizadeh failed and refused to produce a single document showing emotional harm or, for that matter, any other alleged injury including lost wages, financing or business opportunities. Thus, Rafizadeh has refused to disclose any evidence of injury in his interrogatory responses and has failed to produce any documents that could conceivably support any damage claim.

30.    In an attempt to follow up on the Rafizadeh written discovery response, during Rafizadeh's deposition, FGI and ORIX's counsel asked a series of questions during the Rafizadeh deposition regarding his alleged injuries and damages:

Q.   What material injury or damages are you claiming were caused to you by reason of the conduct you allege in the counterclaim and third-party claim?
*A.   As I'm sitting here, I haven't calculated or I haven't really thought about it.*
Q.   How about financial harm or injury to you individually that you claim was caused by the conduct about which you complain in the counterclaim and third-party claim?
*A.   Again, that's something I haven't calculated, I haven't thought of.[41]*

…

Q.   Can you tell me, sir, what are you claiming in economic damages in a dollar figure in this case?
*A.   No.  I don't have a dollar figure.*
Q.   Do you have a range?
*A.   No, I don't have a range either.*
Q.   Have you retained anyone to assist you in calculating those economic damages?

---

[39] *See also* Schumann Rafizadeh Response to FGI's First Request for Production attached hereto as *Exhibit G* ("*Ex. G*") and incorporated herein by reference.

[40] *See Ex. C* at No. 9 (objections omitted).

[41] *Ex. D*, Rafizadeh Depo. at 38, ll. 18–25; 39, ll. 1–2.

> A.   *No, I have not.*
> Q.   Have you tried at any point to calculate those damages?
> A.   *No, I have not.*[42]

31.   Further when FGI and ORIX's counsel asked specifically about Rafizadeh's

alleged injury from lost business opportunities, Rafizadeh came up short:

> Q.   What business opportunities have you lost by reason of the conduct for which you complain?
> A.   *The business – other business opportunities are obviously the – my investments in SFE and what happened with Paul and Yiji as well as my investments in, as limited partner, whatever, in – or interest in the partnerships that have been impacted since.*[43]
>
> …
>
> Q.   So, your damages – your – you financial harm on these lost opportunities, at least with respect to the patents, is through your ownership of Flash Vos?
> A.   *You can say that.  I would say to my performance but –*
> Q.   Can you tell me a dollar figure for what Flash Vos has lost by reason of the conduct you complain about?
> A.   *I don't have a dollar figure.*
> Q.   Can you tell me a dollar figure for what Flash Vos has lost by reason of the conduct you complain about?
> A.   *I can't give you a dollar figure right now.*[44]
>
> …
>
> Q.   In your counterclaim and third-party claim, Paragraph 594, you claim that as a result of this intimidation – and the intimidation your describing in paragraph 593 to be pretextual telephone calls to the Federal Medical Center in an attempt to locate Father Chris Bauta for service of court documents – you claim that as a result of this intimidation, the Crusaders of Divine Mercy backed out of their purchase contract [on the Arlington].  What information do you have to support that claim.
> A.   *I remember back then Father Bauta and the Crusaders of Divine Mercy backed out of that contract primarily due to the harassment of ORIX and Frizell.*
> Q.   Tell me specifically what harassments you're referring to that caused Father Bauta and the Crusaders of Divine mercy to back out of a purchase contract.
> A.   *I can't recall right now as I'm sitting here.*

---

[42]  *Ex. D*, Rafizadeh Depo. at 45, ll. 46, ll. 1–6.

[43]  *Ex. D*, Rafizadeh Depo. at 39, ll. 21–25.

[44]  *Ex. D*, Rafizadeh Depo. at 42, ll. 1–12.

Q.  How do you know that this so-called intimidation caused Father Bauta and the Crusaders of Divine Mercy to back out of a purchase contract?

*A.   It was part of a pattern.  They did the same thing with three other buyers of Arlington.  I believe they did exactly the same thing with – I can't remember their names but –*

Q.   So you're basing your conclusion on what you consider to be a pattern of activities?

*A.  Correct.*[45]

…

Q.  When did the Crusaders of Divine Mercy back out of the purchase contract?

*A.  I want to say 2002.*[46]

32.    Rafizadeh's deposition testimony also conclusively establishes the lack of any emotional distress or injury:

Q.   …The next category you identified was emotional.  Tell me what emotional harm or damage that you have realized that you contend is caused by the conduct about which you complain in the counterclaim and third-party claim.

*A.     I don't think I have – we have complained emotional, you know, counterclaim.*[47]

…

Q.   Describe for me any emotional harm or injury for which you are seeking damages or compensation in connection with your counterclaim and third-party claim.

*A.  I don't believe I – I have outlined a particular damage or injury related to an emotional –*

Q.  Okay.  Then, that's fine.  I'll move on.[48]

33.    Although Rafizadeh testified at his deposition that ORIX and FGI's alleged actions "primarily" caused his high blood pressure,[49] he likewise refused to testify or produce any medical records concerning his alleged high blood pressure[50].

---

[45] *Ex. D*, Rafizadeh Depo. at 60, ll. 15–25; 61, ll. 1–15.

[46] *Ex. D*, Rafizadeh Depo. at 63, ll. 11–13.

[47] *Ex. D*, Rafizadeh Depo. at 37, l. 25–38, ll. 1–5.

[48] *Id*. at 37, l. 25–38, ll. 1–5.

[49] *Ex. D*, Rafizadeh Depo. at 20, ll. 18–21; 22, ll. 9–13.

34.     Even Rafizadeh's counsel had him confirm on the deposition record that he refused to produce medical records or submit to an examination and elicited from Rafizadeh an acknowledgement that he understood the impact of his refusal to produce any medical records.

> Q.   (Mr. Ray)  Now, you're not producing medical records, correct?
> *A.   Correct.*
> Q.   And you're not submitting yourself to an examination?
> *A.   Correct.*
> Q.   And you haven't employed a doctor to testify as an expert?
> *A.   That's correct.*
> Q.   You understand that that's a choice that might restrict your ability to collect certain kinds of damages on certain kinds of causes of action?
> *A.   That's correct.  That's – that's a legal –*
> Q.   That's a legal issue.
> *A.   – issue, right.*
> Q.   But why did you – why did you make that choice?
> *A.   Because the privacy, above all, is the issue here, invasion of privacy.  And I would not want to voluntarily invade my own privacy to – that's oxymoron, I guess.*[51]

35.     Thus, the summary judgment record conclusively establishes that Rafizadeh has no evidence to support his damage claims.

### 2.     There is No Evidence That ORIX or FGI Trespassed on Rafizadeh Property.

36.     On his trespass claim Rafizadeh must prove that FGI entered his land, the entry was physical, intentional, and voluntary, and it caused injury to Rafizadeh's right of possession.[52]

37.     Rafizadeh has not produced a scintilla of evidence to support these essential elements of his trespass claim.  The alleged trespass that forms the basis of Rafizadeh's claim is his speculation that FGI had agents leave business cards taped to windows at the Rafizadeh residence after walking past "No Trespassing" signs.[53]  Rafizadeh also states that members of the

---

[50]  *Ex. D*, Rafizadeh Depo. at 22, ll. 23–25.

[51]  *Ex. D*, Rafizadeh Depo. 104, ll. 24–25, 105, ll. 1–15.

[52]  *See Railroad Commission v. Manziel*, 361 S.W.2d 560, 567 (Tex. 1962).

[53]  *See Ex. C* at No. 4.

Rafizadeh family routinely saw other people on their property despite the existence of "No Trespassing" signs posted in plain view at the entrance.[54]

38.     Neither FGI's President, David Frizell, nor any of his employees or contractors ever entered Rafizadeh's property to place a business card of any type on the windows or doors at the Rafizadeh residence.[55]   At no time did any FGI employee or contractor ever enter onto the Rafizadeh residence property for any purpose.   Further, no FGI employee or contractor ever climbed the fence or attempted to circumvent the security measures to access the Rafizadeh residence.[56]

39.     Rafizadeh's interrogatory responses demonstrate that he cannot prove FGI entered his land.   Rafizadeh simply makes a broad, vague statement that his "minor children, who were 14 at the time, said they saw a person looking through bedroom windows in September 2005, and this person knocked multiple times on the windows.[57]   There is, however, no evidence that this person was a FGI employee or agent.

40.     Rafizadeh's interrogatory responses also state that "the Rafizadeh family routinely saw other people on their property despite the existence of "No Trespassing" signs."[58] Again, there is no identity assigned to these "other people."

41.     Rafizadeh's bald allegations therefore fail to meet a required element of a trespass claim.   There is no evidence that FGI entered the Rafizadeh property.[59]   Rafizadeh also fails to show that, even assuming FGI agents entered his property, this entry caused any legal injury to

---

[54]   *See id.*

[55]    *See* Affidavit of David Frizell (hereinafter "Frizell Aff."), ¶ 5 attached hereto as *Exhibit H* ("*Ex. H*") and incorporated herein by reference.

[56]   *See Ex. H*, Frizell Aff. ¶ 6.

[57]   *See Ex. H*, Interrogatory Responses, No. 4.

[58]   *See id.*

[59]   *See Ex. H*, Frizell Aff. ¶ 6; Interrogatory Responses, No: 4.

Rafizadeh's right of possession.[60]   Because there is no evidence that FGI ever entered Rafizadeh's property or, alternatively, caused injury to Rafizadeh's right of possession, Rafizadeh cannot show that FGI committed a trespass.[61]

### 3.   There is No Evidence to Support Rafizadeh's Claim for Invasion of Privacy.

42.   To prove intentional invasion of privacy Rafizadeh must establish that (1) FGI and ORIX intentionally intruded on Rafizadeh's solitude, seclusion, or private affairs; (2) the intrusion would be highly offensive to a reasonable person; and (3) Rafizadeh suffered an injury as a result.[62]

43.   Although it is unclear which of four distinct torts - intrusion on seclusion, public disclosure of private facts, appropriation of name or likeness, and false light -Rafizadeh is asserting, it appears from his Counterclaim that he is not claiming ORIX or FGI appropriated his name or likeness or held him in false light.

44.   Regardless of which of the first two claims Rafizadeh is making, both fail for similar reasons.   First, neither ORIX nor FGI can be liable for intrusion if Rafizadeh has a reduced expectation of privacy.[63]   For example, if Rafizadeh's claim for intrusion is based on his allegation that ORIX and/or FGI removed or picked through his trash it is clear that an individual who discards his trash has a reduced expectation of privacy in the discarded trash.[64]

---

[60]   *See* Interrogatory Response, No: 4.

[61]   At his deposition, Rafizadeh also made the wild accusation that, just weeks ago, ORIX and the Trustee's expert broke into 806 Main to steal computer data.   *See Ex. D*, Rafizadeh Depo. at 46–53.   He also suggests that three or four years ago ORIX broke into Ben Erfany's BG Real Estate office.   *Id.* at 53–56.   But in each case he has no evidence that would come close to substantiating his shocking claims.   *See id.* at 49–50, 54.

[62]   *See Boyles v. Kerr*, 855 S.W.2d 593 (Tex. 1993); *Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40 (Tex. App.—Corpus Christi 2001).

[63]   *See Floyd v. Park Cities People, Inc.*, 685 S.W.2d 96, 97-98 (Tex. App.–Dallas 1985, no writ).

[64]   *See supra* Section II.A.2.

45.     Because intrusion on seclusion is a "quasi-trespass tort" it typically involves activities such as spying, opening private mail, wire tapping, or entering a person's residence. Although Rafizadeh fails to allege any specific instances of intrusion on seclusion, it appears he claims that ORIX or FGI's actions during the investigation into Rafizadeh's fraudulent activities are the impetus behind this allegation.

46.     According to Rafizadeh's interrogatory responses he believes, albeit without an ounce of evidence, that ORIX and/or FGI improperly obtained his (and his minor children's) personal banking and related credit information without his consent or permission.[65]

47.     Rafizadeh's also asserts that ORIX and/or FGI violated the Bank Privacy Act, 15 USCS § 6821(a).  That claim, again without evidentiary support, fails because as a matter of law there is no private right of action under the statute.

48.     The enforcement provisions for violations of § 6821 are found in § 6805.[66] Section 6805 states that the regulations shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission ("FTC") with respect to financial institutions and other persons subject to their jurisdiction.[67]  Because the FTC is tasked with enforcement for any financial institution or other person that is not subject to the jurisdiction of any agency or authority, and no other agency or authority would have jurisdiction over the Rafizadeh claims, the FTC would enforce any violations.

---

[65] *See Ex. C,* Interrogatory Responses at No. 3.

[66] 15 U.S.C.A. § 6805.

[67] *See id.*

49.     Further, § 6822, entitled Administrative Enforcement, addresses Enforcement by the Federal Trade Commission, and gives the FTC the same power and authority to enforce violations of the entire subchapter as the FTC has under the Fair Debt Collection Practices Act.[68]

50.     As the FTC is tasked with enforcement for any violations of § 6821, Rafizadeh is prohibited from asserting a private cause of action for any alleged violations of § 6821.

51.     Rafizadeh also apparently believes that ORIX and FGI obtained confidential information from communication companies regarding incoming and outgoing Rafizadeh family phone calls.[69]  This conclusion is yet another glaring example of a Rafizadeh allegation without a shred of supporting evidence.   Rafizadeh states that his family repeatedly experienced interference with their telephones indicating the potential of some form of electronic surveillance.[70]  This is rank speculation.  Of course, any number of conventional causes, such as equipment malfunction, could cause telephonic interference.   Rafizadeh has absolutely no evidence to link FGI or ORIX to this claimed interference or to even suggest that there was any electronic surveillance at all.  Rafizadeh also asserts that by taking his trash, ORIX and FGI wrongfully acquired information regarding phone calls.[71]   Once again this claim is pure speculation and lacks any merit.  Rafizadeh has not presented any evidence that would show ORIX and/or FGI obtained any confidential information regarding his phone records.

52.     Rafizadeh's claim, if he is asserting one, for invasion of privacy by public disclosure of private facts fails to meet the first element of such a claim:  *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473-75 (Tex. 1995) (to recover for private facts tort, plaintiff must

---

[68]  15 U.S.C.A. § 6822.

[69]  *See id.*

[70]  *See id.*

[71]  *See id.*

establish "essential element" that "matter publicized is not legitimate public concern").  There is no evidence that ORIX or FGI communicated to the public at large or disseminated to so many people that it becomes public knowledge any facts about Rafizadeh's life.  Since matters already known, matters of public record, and matters in public view are not considered private, there is no publicity and, thus, Rafizadeh cannot meet the first element of his claim.  *Id*.

53.     Lastly, as detailed above, Rafizadeh fails to show that he suffered an injury as a result of ORIX or FGI's alleged invasion of his privacy.

**4.     Recovery for Intentional Infliction of Emotional Distress is Not Available.**

**a.  Rafizadeh's cause of action for IIED cannot stand because any emotional distress is recoverable under his other tort theories.**

54.     Rafizadeh's cause of action alleging the tort of IIED reflects a style of pleading that is all too common in the Texas courts.  As recently as 2005, the Texas Supreme Court was obliged to admonish litigants for "the tenth time in little more than six years" that the tort "was never intended [to be] an easier and broader way to pursue claims already protected by our expanding civil and criminal laws."  *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815, 818 (Tex. 2005); *see also, e.g.*, *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998).  Rather, Texas' highest court has explained, the tort's "exacting requirements" are satisfied only in those rare instances in which it will not serve as a vehicle "to supplant or duplicate existing statutory or common-law remedies."  *Creditwatch, Inc.*, 157 S.W.3d at 815-16.  Thus, "[w]here the gravamen of a plaintiffs complaint is really another tort" or statutory cause of action, the intentional infliction tort cannot properly be invoked to execute an end-run around those causes of action simply because of a "plaintiff's failure to establish his or her [underlying] claim."  *Hoffman-La Roche, Inc.*, 144 S.W.3d at 447-48; *see Almond v. Tarver*, 468 F. Supp. 2d 886, 904-

05 (E.D. Tex. 2006) ("a plaintiff may not assert a claim for intentional infliction of emotional distress merely because of his inability to prevail on another theory of relief designed to address the gravamen of his complaint").

55.     Here, Rafizadeh's IIED claim seeks to accomplish precisely what the Texas Supreme Court has expressly and repeatedly forbidden.  Simply put, this is a case in which the "gravamen" of the Counterclaim sounds in conversion, trespass, invasion of privacy and conspiracy.  Rafizadeh seeks to circumvent the limitations on those causes of action by invoking IIED, but the tort is simply "not available" under these circumstances.  *Lowe v. Hearst Commc'ns, Inc.*, 414 F. Supp. 2d 669, 675 (W.D. Tex. 2006), aff'd, 487 F.3d 246 (5th Cir. 2007); *see also Creditwatch, Inc.*, 157 S.W.3d at 816 (where plaintiff's allegations are covered by other existing causes of action, he "cannot assert them as intentional infliction claims [even where] those avenues may ... be barred").

56.     In *Moser v. Roberts*, 185 S.W.3d 912, 915 (Tex. App.—Corpus Christi 2006, no pet), the plaintiff pleaded IIED in a case in which the complaint centered on her claims for slander, libel, and malicious prosecution.  Because those latter claims afforded her a remedy for any resulting emotional distress, the court of appeals held that IIED was not available to her as a remedy.  Similar to *Moser*, the claims Rafizadeh asserts in the Counterclaim afford him a remedy for any emotional distress under the torts which constitutes the gravamen of his complaint – trespass, conversion, and invasion of privacy.  *See City of Garland v. White*, 368 S.W.2d 12 (Tex. Civ. App.—Eastland 1963, writ refused n.r.e.) (allowing mental anguish damages for trespass); *Green Int'l v. Solis*, 951 S.W.2d 384, 391 (Tex. 1997) (allowing exemplary damages for conversion when the defendant acted with malice); and *Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex. 1973); *see also Beaumont v. Basham*, 205 S.W.3d 608, 616 (Tex. App.—Waco 2006,

pet denied)(allowing mental anguish damages for invasion of privacy).  In short, the "gravamen"

of the Counterclaim's allegations is the proper subject matter of causes of action other than the

intentional infliction tort.  As the Texas Supreme Court has made plain, if the latter "tort is to

remain viable where 'gaps' still remain, litigants and judges cannot entertain it as a catch-all

[remedy] that avoids the careful balancing behind alternate legal claims." *Creditwatch, Inc*., 157

S.W.3d at 818.

> **b.  Rafizadeh's cause of action for IIED cannot stand because the alleged conduct does not constitute extreme and outrageous conduct.**

57.    In any event, Rafizadeh cannot sustain a claim for IIED for the additional reason

that the alleged conduct was not "'so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community.'"  *Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 724 (Tex.

App. 2001) (citation omitted) (finding that taking of photographs of plaintiff's dead wife at

funeral home did not support intentional infliction claim).  "It is for the court to determine, in the

first instance, whether a defendant's conduct was extreme and outrageous" within the

contemplation of the tort.  *Hoffmann La Roche, Inc*., 144 S.W.3d at 445.

58.    The threshold for what constitutes extreme and outrageous conduct sufficient to

give rise to a claim for IIED is a difficult one to meet.  *Clayton v. Wisener*, 190 S.W.3d 685, 693

(Tex. App.—Tyler 2005, pet. denied).  Meritorious claims for IIED are relatively rare precisely

because most human conduct, even that which causes injury to others, cannot be fairly

characterized as extreme and outrageous.  *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788,

796 (Tex. 2006).  A defendant's conduct satisfies the extreme and outrageous requirement only if

it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting Restatement (Second) of Torts § 46 cmt. D 1965)); *see Texas Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002). Generally, liability for IIED has only been found in those cases in which a recitation of the facts to average member of the community would lead him to exclaim, "Outrageous!" *Foye v. Montes*, 9 S.W.3d 436, 440 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).[72] Courts consider both the parties' relationship and the conduct's context and in deciding whether alleged conduct was so extreme and outrageous as to permit recovery. *Sears*, 84 S.W.3d at 610-11.

59. Here, the parties' relationship is quite simple: ORIX was attempting to collect on the Fraud Judgment. After the bankruptcy filing, ORIX in co-prosecution with the Bankruptcy Trustee pursued recoveries on behalf of the estates, including the Fraud Judgment, in this adversary proceeding. Rafizadeh is trying to evade payment of the Fraud Judgment by transferring and secreting assets through a series of fraudulent conveyances to affiliated entities and individuals.

60. The context of the alleged conduct is not as simple. First, Rafizadeh alleges that ORIX's representative trespassed by taking Rafizadeh's trash, leaving cards attached to either the fence, front door, or a window at the Rafizadeh residence, and – someone in a red truck who Rafizadeh believes must have been ORIX or FGI – ran Cyrus Rafizadeh off the road[73].

---

[72] *See e.g., A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 383-84 (Tex. App. 2001) (media defendants' conduct in interviewing plaintiffs daughter and daughter's mother, who had kidnapped child and was in hiding, and in failing to notify plaintiff or authorities of their whereabouts did not support intentional infliction claim); *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 101–02 (Tex. App. 2003) (balanced against citizen's duty to report criminal activity, filing of criminal complaint, even when question exists as to whether defendant believed allegations to be true, is "not sufficiently outrageous to permit recovery of intentional infliction of emotional distress."); *accord Reeves v. Fox Television Network*, 983 F. Supp. 703, 711 (N.D. Ohio 1997) ("conduct in videotaping Plaintiffs encounter with the police and broadcasting a portion of that videotape on the 'COPS' television show" does not "constitute [] outrageous and extreme conduct, beyond all possible bounds of decency").

[73] *See Ex. D*, Schumann Depo. at 84–86.

61.     Under the Fourth Amendment to the United States Constitution, courts, including the United States Supreme Court, have routinely held that trash placed in a receptacle to which the public has access – such as in a dumpster or on the curb of a street – may be searched without a warrant because there is no reasonable expectation of privacy in trash.  *See California v. Greenwood*, 486 U.S. 35 (1988) (holding that there is no right of privacy in trash); *United States v. Vahalik*, 606 F.2d 99 (5th Cir. 1979) (holding that there is no reasonable expectation of privacy in garbage left at curb), cert. denied, 444 U.S. 1081 (1980).  In support of its ruling, the Supreme Court noted that "[s]ociety would not accept as reasonable...an expectation of privacy in trash left for collection in an area accessible to the public."  *California v. Greenwood*, *supra*, 486 U.S. at 41.  Significantly for this case, the Court also noted that "[i]t is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops and other members of the public."  *Id.*, 486 U.S. at 40.  Thus, as a matter of law, Rafizadeh could have no reasonable expectation of privacy in trash left in a dumpster accessible to the public.

62.     Taking Rafizadeh's allegations regarding ORIX and FGI's actions towards his wife and children as true – although they are anything but true – Texas courts also will not permit a plaintiff to pursue a claim for intentional infliction of emotional distress unless the defendant's conduct is "about or directed at" the plaintiff.  *Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 49 (Tex. App. 2001).  Rafizadeh does not and cannot show that his outrageous allegations - ORIX and FGI's ran Cyrus Rafizadeh off the road, tailed his son's friend and broke into 806 Main - was either "about or directed at" Rafizadeh.  As such, he has no standing under Texas law to maintain a cause of action for IIED based on these ridiculous scenarios.  *Id.*; *accord*

*Mineer v. Williams*, 82 F. Supp. 2d 702, 707 (E.D. Ky. 2000) (statements made in broadcast about plaintiff's son did not give rise to claim for IIED).

### c. Rafizadeh's cause of action for IIED cannot stand because there is no evidence that Rafizadeh's claimed emotional distress is severe.

63.     In addition, to prevail on his IIED claim, Rafizadeh must establish that his claimed emotional distress is severe.  *GTE Southwest, Inc*., 998 S.W.2d at 618; *Montemayor*, 208 S.W.3d at 658 n. 22.  "Severe emotional distress" means distress so severe that no reasonable person could be expected to endure it without undergoing unreasonable suffering.  *GTE Southwest, Inc*., 998 S.W.2d at 618; *Blanche v. First Nationwide Mort. Corp*., 74 S.W.3d 444, 454 (Tex. App.—Dallas 2002, no pet.).  Feelings of anger, depression and humiliation are insufficient evidence of severe distress.  *Montemayor*, 208 S.W.3d at 658 n. 22 (citing *Regan v. Lee*, 879 S.W.2d 133, 136-37 (Tex. App.—Houston [14th Dist.] 1994, no writ).  Likewise, Rafizadeh must present evidence of more than mere worry, anxiety, vexation, embarrassment, or anger.  *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995).

64.     Even if this Court were to disregard Rafizadeh's admissions that he has not suffered and is not claiming any emotional injury, and rely only upon his vague allegations in the Counterclaim and interrogatory responses, these "facts" do not, as a matter of law, amount to legally sufficient evidence of severe emotional distress necessary to support his IIED claim. *Compare Williams v. First Tennessee Nat, Corp*., 97 S.W.3d 798, 805 (Tex. App.—Dallas 2003, no pet.) (testimony that plaintiff was "in shock for awhile", that he was "emotionally reeling from being fired", that he lost his appetite during the month following his termination and that he was "cranky and despondent", did not set forth "severe emotional distress" as a matter of law); and *Montemayor*, 208 S.W.3d at 658 (testimony that plaintiff was, among other things, "stunned, shocked and could not talk", that she was "humiliated", felt "invaded, abused and scared," and

that "she could not sleep" was legally insufficient evidence that the distress suffered was severe emotional distress) with *Toles v. Toles*, 45 S.W.3d 252, 263 (Tex. App.—Dallas 2001, pet. denied) (testimony that husband's treatment of wife caused her to suffer an ulcer, caused her to feel "worthless and ashamed", "caused her to grind her teeth so hard that some are cracked" and testimony from wife's psychologist that she was "severely depressed", that she suffered from post-traumatic stress disorder as a result of husband's abuse and that she was in further need of therapy and counseling for more than two years amounted to legally sufficient evidence of severe emotional distress).

65.     Rafizadeh cannot offer any evidence that his distress was unendurable.  He presented no evidence that he received or required any psychiatric or medical attention as a result of his distress.  Thus, the testimony in this case constitutes legally insufficient evidence of severe distress and will not support a finding of IIED.  *Bruce*, 998 S.W.2d at 618; *Union Pac. R.R. Co. v. Loa*, 153 S.W.3d 162, 171–72 (Tex. App.—El Paso 2004, no pet.) (evidence that plaintiff felt "awful" and "terrible", "stressed", that he felt "withdrawn and no longer happy" but he failed to seek counseling or medical treatment constituted legally insufficient evidence of severe emotional distress).

### 5.     There is No Evidence to Support Rafizadeh's Claim for Conspiracy.

66.     A party alleging conspiracy must prove that (1) the defendant was a member of a combination of two or more persons; (2) the object of the combination was to accomplish a) an unlawful purpose; or b) a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) the plaintiff suffered injury as a proximate result of the wrongful act.  *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).

Conspiracy is not an independent tort or even a derivative tort.  Conspiracy is simply a way to extend liability beyond the primary actor to those who agreed to act toward a common goal.

67.     Rafizadeh's conspiracy claim fails because he has no credible summary judgment evidence that either ORIX or FGI participated in an underlying intentional tort.  Without an intentional tort, Rafizadeh has no conspiracy claim.  *Firestone Steel Prods. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996).

68.     Furthermore, because Rafizadeh's claims are barred by limitations, there can be no conspiracy claim.  *See Trammell Crow Co. v. Harkinson*, 944 S.W.2d 631, 632 (Tex. 1997).  His conspiracy claim also fails because Rafizadeh cannot prove one or more elements of each of his claims for trespass, conversion, IIED, or invasion of privacy..  *See, e.g., Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001) (summary judgment on fraud claim disposed of conspiracy claim).

69.     In addition, Rafizadeh's conspiracy claim fails because he has no evidence that either ORIX or FGI committed an unlawful, overt act.[74]  Rafizadeh alleges that FGI conspired with ORIX to make unlawful "pretextual telephone calls" to obtain telephone and financial information.  Again, Rafizadeh intentionally misconstrues the facts in an attempt to assign liability where none can be assigned.  The phone call that Rafizadeh relies on in his Counterclaim was simply an attempt to locate Father Bauta in order to serve a subpoena.[75]  Rafizadeh's unsupported conjecture is not enough to establish that FGI committed an unlawful, overt act to further the object or course of action necessary to prove a conspiracy between FGI and ORIX.

---

[74]  *See* Complaint ¶¶530-531.

[75]  *See Ex. H*, Frizell Aff. ¶ __.

70.     FGI's President, David Frizell made a total of two to four telephone calls to the Federal Correctional Center in Fort Worth, Texas in his attempts to determine the work schedule of Father Bauta so that he could serve him with a subpoena.[76]  Frizell told the person(s) who answered the calls that he was looking to meet with Fr. Bauta and was trying to determine when he would return to work.[77]  Frizell obtained no helpful information on Father Bauta.[78]

71.     Frizell used the word "pretext" in his invoice to avoid any confusion that he had just called Fr. Bauta for a telephone interview or for some other purpose.[79]  No FGI employee or contractor ever made any "pretextual calls" to any Rafizadeh family member or anyone else.[80]

72.     Thus, Rafizadeh cannot establish that FGI committed an underlying tort upon which to base his claim for conspiracy, it is impossible to claim that he suffered damage as a result of an alleged conspiracy involving ORIX or FGI, and there is no evidence that ORIX or FGI committed an unlawful, overt act to further the object or course of action necessary to prove a conspiracy.  ORIX and FGI are therefore entitled to summary judgment on Rafizadeh's conspiracy claim.

## IV.     CONCLUSION

73.     Rafizadeh's deposition and discovery responses exposed his phantasmal allegations as a sham.  Rafizadeh and his counsel knew or should have known that his claims were time barred when filed.  For the eight months this Counterclaim has been pending, Rafizadeh has shamelessly and disingenuously asserted damages and pressed for discovery from ORIX and FGI under delusive arguments, all the while knowing that he has suffered no injury or

---

[76] *See id.*

[77] *See id.*

[78] *See id.*

[79] *See id.* at ¶ 10.

[80] *See id.*

damage.  Indeed, ORIX and FGI's requests for evidence of Rafizadeh's purported damages have been met with a deafening silence that has reverberated throughout his written discovery responses and testimony, including his lack of any damages expert, his refusal to provide any medical records or other supporting documents, and his admissions that he has not suffered any "emotional harm or injury" and cannot identify or calculate any monetary damages.  Finally, Rafizadeh's cannot establish essential elements of each of his claims.  As such, this Court should not permit Rafizadeh to continue this mockery of a Counterclaim that was plainly brought for improper purposes and without any factual or legal foundation..

## V.     PRAYER

ORIX and FGI respectfully request that the Court (i) grant this Motion for Summary Judgment in its entirety; (ii) enter summary judgment that Counter-Plaintiff and Third-Party Plaintiff Rafizadeh take nothing on his claims; and (iii) award ORIX and FGI such other and further relief to which they may be justly entitled.

Dated:  January 7, 2009

Respectfully submitted,

By:_____*/s/ David C. Mattka*_____
    David C. Mattka
    State Bar No. 13231500
    Richard C. King, Jr.
    State Bar No. 24007491
    Munsch Hardt Kopf & Harr, P.C.
    One American Center
    600 Congress Ave., #2900
    Austin, Texas  78701
    Telephone: (512) 391-6100
    Facsimile:  (512) 391-6149

Randall A. Rios
State Bar No. 16935865
Lynn Chuang Kramer
State Bar No. 24036930
Munsch Hardt Kopf & Harr, P.C.
Bank of America Center
700 Louisiana, 46th Floor
Houston, Texas  77002
Telephone: (713) 222-1470
Facsimile:  (713) 222-1475

Nan Roberts Eitel
Louisiana Bar No. 19910
SD Texas Bar No.561266
Jones Walker Waechter Poitevent
Carrère & Denègre, LLP
The Watergate
2600 Virginia Avenue, NW, Suite 1113
Washington, DC  20037
Telephone: (202) 944-1105
Facsimile:  (202) 944-1109

R. Patrick Vance
Louisiana Bar No. 13008
S.D. Texas Bar No. 30331
Jones Walker Waechter Poitevent
Carrère & Denègre, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana  70170
Telephone: (504) 582-8000
Facsimile:  (504) 589-8302

COUNSEL FOR THIRD-PARTY DEFENDANTS
FRIZELL GROUP INTERNATIONAL, INC. AND
FRIZELL GROUP INTERNATIONAL, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document
has been served to the parties listed on the attached service list via electronic means as listed on
the ECF noticing system on January 7, 2009.

_____/s/ David C. Mattka_____
*Counsel for Third-Party Defendants Frizell*
*Group International, Inc. and Frizell Group*
*International, LLC*

**Service List**
Adversary Proceeding 07-03301

Rodney Tow
Tow & Koenig, PLLC
26219 Oak Ridge Drive
The Woodlands, Texas  77380
rtow@towkoenig.com
**Chapter 7 Trustee for the Estates of Cyrus II, LP, Bahar Development, Inc. and Mondona Rafizadeh**

Andrew R. Harvin
Peter B. Wells
Doyle, Restrepo, Harvin & Robbins, LLP
JPMorgan Chase Tower
600 Travis Street, Suite 4700
Houston, Texas  77002
aharvin@drhrlaw.com
**Counsel for Rodrick L. Hughes and Main & Marietta, LP**

Leonard A. Hirsch
Diamond McCarthy Taylor Finley & Lee LLP
1201 Elm Street, Suite 3400
Dallas, Texas  75270
lhirsch@diamondmccarthy.com
**Counsel for Rodney Tow, Chapter 7 Trustee for the Estates of Cyrus II, LP, Bahar Development, Inc. and Mondona Rafizadeh**

Edward L. Rothberg
Hugh M. Ray, III
Weycer Kaplan Pulaski and Zuber PC
1400 Summit Tower
11 Greenway Plaza
Houston, Texas  77046
erothberg@wkpz.com
hray@wkpz.com
**Co-Counsel for Schumann Rafizadeh**

Kyung S. Lee
Jason M. Rudd
Diamond McCarthy Taylor Finley & Lee LLP
Two Houston Center
909 Fannin, Suite 1500
Houston, Texas  77010
klee@diamondmccarthy.com
jrudd@diamondmccarthy.com
**Counsel for Rodney Tow, Chapter 7 Trustee for the Estates of Cyrus II, LP, Bahar Development, Inc. and Mondona Rafizadeh**

Jeffrey Wayne Glass
Attorney at Law
2401 Fountainview, Suite 1000
Houston, Texas  77057
jeff@jeffglasslaw.com
**Counsel for Azita Management, Inc. and Azita Berglund, Individually**

Barnet B. Skelton, Jr.
Barnet B. Skelton, Jr., PC
1111 Bagby Street, Suite 4700
Houston, Texas 77002
barnetbjr@msn.com
**Counsel for Universal Sourcing, LLC and Wellspring Sourcing Co., Limited**

Jon P. Bohn
Bohn & Ducloux
806 Main Street, Suite 1411
Houston, Texas  77002
jonbohn@yahoo.com
**Counsel for Super Future Equities, Inc.**

Stephen H. Kupperman
Barrasso Usdin Kupperman Freeman & Sarver
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
skupperman@barrassousdin.com
**Counsel for Rodrick L. Hughes and
Main & Marietta, LP**

John F. Higgins, IV
Thomas Andrew Woolley, III
Porter & Hedges LLP
1000 Main St, 36th Floor
Houston, Texas 77002-6336
jhiggins@porterhedges.com
twoolley@porterhedges.com
**Counsel for Schumann Rafizadeh, Flash
Vos, Inc., United Rafizadeh Family, L.L.P.,
Rafizadeh LLC, MBA Services, Inc.,
HOOBI, LP, HOOBIGP, LLC, HOAPT,
LP, HOAPTGP, LLC, COOB, LP,
COOBGP, LLC, ATOB, LP, ATOBGP,
LLC, KEYLD, LP, HEYLDGP, LLC,
KEYUT, LP, KEYUTGP, LLC and
KEOBGP, LLC**

Matt E. Rubin
2000 Bering Drive, Suite 909
Houston, TX 77057
mrubin@mrubinlaw.com
**Counsel for OneWorld Future PTY, Ltd.**

MHDocs 1880857_1 6167.43